# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **KAJEET, INC.,** | § | |
| | § | **C.A. No. 20-cv-1339-MN** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **NORTONLIFELOCK INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## PLAINTIFF'S BRIEF IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

DATED: December 23, 2020

Of Counsel:

Jonathan T. Suder
Michael T. Cooke
Corby R. Vowell
Richard A. Wojcio
FRIEDMAN, SUDER & COOKE
604 East 4th Street, Suite 200
Fort Worth, TX 76102
817-334-0400
Fax: 817-334-0401
jts@fsclaw.com
mtc@fsclaw.com
vowell@fsclaw.com
wojcio@fsclaw.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
Farnan LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.    SUMMARY OF THE ARGUMENT ............................................................................. 1

III.   STATEMENT OF FACTS ............................................................................................3

     A.    Technology of the Patent-in-Suit ....................................................................3

     B.    A Prior District Court Has Found the Claims Patent Eligible................................4

IV.   LEGAL STANDARDS ................................................................................................6

     A.    Rule 12(b)(6) Standards ...................................................................................6

     B.    Patent Eligibility Under 35 U.S.C. § 101 and *Alice* ................................................6

V.    ARGUMENT .............................................................................................................7

     A.    Representative Claim Analysis is Inappropriate ..............................................7

     B.    The Asserted Claims are Directed to Patent Eligible Subject Matter ....................8

          1.    Step One of the *Alice* Analysis ............................................................9

               a.    Federal Circuit Cases and Cases in this District Support Kajeet's Position ................................................................10

               b.    Cases Cited by Defendant are Distinguishable ............................13

          2.    Step Two of the *Alice* Analysis ............................................................16

               a.    The Court Should Follow Federal Circuit's BASCOM Analysis ..17

               b.    Cases Cited By Defendant are Inapposite ....................................19

VI.  CONCLUSION ..........................................................................................................20

**TABLE OF AUTHORITIES**

**Cases:**

*Aatrix Software, Inc. v. Green Shades Software, Inc.,*
    882 F.3d 1121 (Fed. Cir. 2018) .......................................................................16

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    573 U.S. 208 (2014).................................1, 5, 6, 7, 8, 9, 12, 13, 16, 18, 19, 20

*Ancora Techs. v. HTC America, Inc.,*
    908 F.3d 1343 (Fed. Cir. 2018).................................................................11, 12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)....................................................................................6, 11

*B# on Demand LLC v. Spotify Tech. S.A.,*
    2020 U.S. Dist. LEXIS, at *2 (D. Del. Sept. 8, 2020) ...................................15

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016)................................................5, 16, 17, 18, 19

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) .......................................................................16

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
    927 F.3d 1306 (Fed. Cir. 2019) .......................................................................18

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    954 F. Supp. 2d 509 (E.D. Tex. 2013) ("DDR Holdings I") ...........................10

*Enfish LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016)..........................................................2, 9, 12, 13

*Finjan, Inc. v. Blue Coat Sys.,*
    879 F.3d 1299 (Fed. Cir. 2018) .......................................................................16

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009)................................................................................6

*Innovative Global Sys., LLC,*
    2020 U.S. Dist. LEXIS 50657 (D. Del. 2020) .......................................9, 10, 11

iii

*Ironworks Patents, LLC v. Apple Inc.,*
    2018 U.S. Dist. LEXIS 98246 (D. Del. June 12, 2018) ....................................................13

*Jedi Techs., Inc. v. Spark Networks, Inc.,*
    2017 U.S. Dist. LEXIS 122313 (D. Del. Aug. 3, 2017) .....................................................7

*Kajeet, Inc. v. Qustodio, LLC*,
    2019 U.S. Dist. LEXIS 228067 (C.D. Cal. November 1, 2019)
    .........................................................................................1, 5, 6, 7, 8, 14, 15, 16, 18, 19

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    566 U.S. 66 (2012).........................................................................................................9, 16

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
    837 F.3d 1299 ...................................................................................................................8

*Money & Data Prot. Lizenz GMPH & Co. KG v. Duo Sec., Inc.,*
    2020 U.S. Dist. LEXIS 111068 (D. Del. June 24, 2020) ..................................................15

*Pivital IP LLC v. ActiveCampaign, LLC,*
    2020 U.S. Dist. LEXIS 188953 (D. Del. October 13, 2020) ...........................................20

*Research Corp. Techs., Inc. v. Microsoft Corp.,*
    627 F.3d 859 (Fed. Cir. 2010)...........................................................................................10

*SynKloud Techs., LLC v. HP Inc.,*
    2020 U.S. Dist. LEXIS 178524 (D. Del. September 29, 2020) ........................................20

*10x Genomics, Inc. v. Celsee, Inc.,*
    2019 U.S. Dist. LEXIS 188516 (D. Del. Oct. 30, 2019) ....................................................6

*Thales Visionix, Inc. v. U.S.,*
    850 F.3d 1343 (Fed. Cir. 2017) .........................................................................................9

*Uniloc USA, Inc. v. ADP, LLC,*
    772 Fed. Appx. 890 (Fed. Cir. 2019) ...................................................................13, 14, 19

*Vaporstream, Inc. v. Snap, Inc.,*
    Case No. 2:17-cv-00220-MLH, 2017 U.S. Dist. LEXIS 32884
    (C.D. Cal. February 27, 2018) .........................................................................................17

*Visual Memory LLC v. Nvidia Corp.,*
    867 F.3d 1253 (Fed. Cir. 2017)........................................................................................13

**<u>Other:</u>**

35 U.S.C. § 101 ...................................................................................1, 5, 6, 8, 16, 18, 19

Rule 12(b)(6) ........................................................................................................6, 8

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Kajeet, Inc. ("Plaintiff" or "Kajeet") files this Response to NortonLifeLock Inc.'s ("Defendant" or "Norton") Motion to Dismiss Kajeet's Original Complaint ("Motion"). For the following reasons, the Court should find the claims of the Patent-in-Suit directed to patent eligible subject matter and deny Defendant's Motion.

## II.     SUMMARY OF THE ARGUMENT

In its Motion, Defendant argues that the claims of U.S. Patent No. 8,667,559 ("the '559 patent") are invalid under 35 U.S.C. § 101 for failure to claim patent eligible subject matter. Yet, it completely ignores the detailed factual allegations in the Complaint and the testimony of Kajeet's expert. Further, Defendant provides no adequate basis for this Court to find differently than a prior court that held the same claims asserted here to be valid under § 101.

Kajeet has litigated claims of the Patent-in-Suit in several other cases, resulting in favorable resolutions for Kajeet. On November 1, 2019, the district court in *Kajeet, Inc. v. Qustodio, LLC* (the "Qustodio case") held that claim 27 of the '559 patent is directed to patent eligible subject matter and denied Qustodio's motion to dismiss. *See Kajeet, Inc. v. Qustodio, LLC*, 2019 U.S. Dist. LEXIS 228067 at *46-47 (C.D. Cal. November 1, 2019). Kajeet specifically noted the *Qustodio* case and the testimony of its expert, Dr. Knutson, in the Complaint here and incorporated his testimony by reference. D.I. 1, at p. 14, fn. 2. Kajeet was deliberate and thorough in reciting all the factual allegations in its Complaint necessary to address the §101 issue such that this Court can reach the same conclusion as the district court in the prior case. Norton's counsel is well aware of the *Alice* ruling in the *Qustodio* case, and has been aware for some time, as they were lead counsel in that litigation. Yet, they only paid lip service to that ruling in the Motion.

1

Defendant's arguments in its Motion oversimplify and misstate the subject matter of the claims to admittedly discuss each only at a "high level of abstraction and untethered from the language of the claims."  *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). An objective review of the claimed subject matter and Patent-in-Suit shows that they are directed to systems and methods for effecting policy-based controls over communication devices addressing a problem rooted in computing and networking technology brought on by the rapid proliferation of computing devices in all aspects of modern society.  The claims are directed to much more than merely limiting access to functions based on policies as Defendants posit. (D.I. 13 at 9). Instead, they claim particular systems and methods effecting control of modern communications devices, which are generally portable and feature-rich, and comprise limitations defining particular manners of their use to provide control of mobile devices.  Each challenged claim is therefore patent eligible at Step One of *Alice.*

Beyond this, each comprises a specific and novel component arrangement for effecting policy-based controls over communication devices attached to and enabled by wireless networks. The challenged claims are rooted in computer functionality but also provide for improvements thereto in management of communications devices through improved security and effectiveness. By virtue of storing policies remotely from the controlled device, they are inaccessible to the controlled device for manipulation or deletion, thereby improving system effectiveness.  In fact, the claimed systems enable entirely new and novel functionality with respect to the control accommodated, allowing for control of both incoming and outgoing communications and providing greater granularity of policies.  As such, the claims are patent eligible under step two.

Defendant relies solely on unsupported argument to rebut the detailed allegations of the Complaint and expert declarations incorporated by reference therein, which must be taken as true

in deciding the Motion. Norton should not prevail as there is no evidence in the record upon which the Court could rely to refute the allegations of the Complaint. Further, Norton cannot controvert that the claims at issue capture the specific architecture in which policies are stored remotely from the computing device being controlled as identified in the Complaint and the Knutson Declarations.

## III.    STATEMENT OF FACTS

### A.    Technology of the Patent-in-Suit

Kajeet was founded in 2003 with the aim of developing solutions to an emerging technological problem - how to ensure safe operation of mobile communication devices by children and others. The known systems and methods for control prior to the time of invention were largely inadequate and relied upon removing access to the communication device to prevent disallowed usage or utilized policy-based controls in which the policies were stored locally within accessible portions of the device's memory. Policies are essentially rules that govern how and when users may utilize various functions of a mobile device. The prior systems were ineffective because the policies were locally accessible for manipulation or deletion and because each communication device to be controlled needed to be separately and independently configured. Kajeet addressed these shortcomings by storing usage policies remotely from the communication device(s). This arrangement improved operation of the systems through improved security from user manipulation while accommodating real-time control of one or more devices which could be grouped to apply a set of policies to each simultaneously.

Kajeet's efforts and ingenuity have yielded thirty-eight U.S. Patents, many of which share a common specification to that of the asserted patent in this case. The Patent-in-Suit discusses how the proliferation of cell phones and other communication devices in modern life

3

created the problem of providing adequate control over these devices, which typically accommodate a wide range of functionality accessible at any time from virtually anywhere.

Critically, the '559 patent notes that prior art methods of controlling use of computing devices (*i.e.*, removing access by taking the device away or disabling it) were unworkable because they deprived the user of allowable uses of the device to prevent disallowed uses. The patent specification makes clear that the problem to be solved is how to maintain effective control to prohibit certain uses while still allowing approved uses, all in the context of the user possessing the device at all times even when apart from or not in contact with the parent/administrator.

Kajeet's inventions provide access to desirable features, such as always allowing for calls to a parent, for example, while also preventing access to features deemed inappropriate because of cost (e.g., downloadable games or other applications), type of content (e.g., gambling or pornographic content), the time of day or night (e.g., during school hours or after bed time), and/or the device's location, among other criteria. The '559 patent discloses the use of policies defining acceptable and unacceptable uses of a mobile communication device based on a variety of contexts which are set by administrators (e.g., parents or teachers) at the server level to control use of one or more mobile communication devices. This represented an unconventional scheme that was neither well known nor routine for addressing a newly emerging problem in society. The inventions disclosed and claimed in the Patent-in-Suit provided for more robust control that was more resilient to manipulation and/or disablement by users of the controlled devices and, therefore, more effective than prior art systems and methods.

**B.      A Prior District Court Has Found the Claims Patent Eligible**

4

In the *Qustodio* case, Kajeet alleged that the defendant infringed claims of three separate patents, including the '559 patent.[1] The defendant, Qustodio, filed its first motion to dismiss based on § 101 at the pleadings stage in lieu of an answer as Norton has done here. Kajeet opposed that motion and explained in its briefing and through an expert declaration from Dr. Knutson that the inventions in the asserted patents were directed to improvements in computer technology, and that these improvements constituted an inventive concept. The district court did not rule on the merits of the § 101 issue though it did grant the motion to dismiss allowing Kajeet to refile. The court concluded that, based on the arguments and expert declaration presented by Kajeet, there were factual determinations at both step 1 and 2 of the *Alice* inquiry that would be necessary to determine patent eligibility. Exh. 1, at p. 8-9.

Kajeet amended its complaint in the *Qustodio* case to include express factual allegations based on the expert declaration provided by Dr. Knutson which Qustodio then moved to dismiss a second time. After substantial discovery had been conducted and claim construction had been briefed and argued, the district court issued an opinion in conjunction with its claim construction ruling denying Qustodio's motion with respect to claim 27 of the '559 patent. The district court left open the determination at step one of the *Alice* analysis of whether the claim was directed to an abstract idea. Focusing on step two of the *Alice* analysis and following the reasoning of the Federal Circuit in the *BASCOM*[2] case discussed at length *infra*, the court found:

> The new allegations of the [amended complaint] plausibly allege that this claim is at least drawn to a non-conventional arrangement of claim elements. This includes the requirement of the claim as to remote storage of policies on a server and the remote, realtime receipt and enforcement of decisions based on those policies through a communications network.

---

[1] In addition to the '559 patent, Kajeet asserted claims of U.S Patent Nos. 8,712,371 ("the '371 Patent"), and 8,630,612 ("the '612 Patent") against the defendant, Qustodio, LLC.

[2] *See BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016).

5

*Qustodio, LLC,* 2019 U.S. Dist. LEXIS 228067 at *46-47.[3]

The Complaint filed by Kajeet against Norton includes all of these same factual allegations regarding the improvements to computer technology and the inventive concepts that the district court relied on in *Qustodio* to deny the motion to dismiss. D.I. 1, at ¶¶ 33-39. Kajeet also incorporated by reference the testimony from Dr. Knutson's declaration into the Complaint.

## IV.   LEGAL STANDARDS

### A.    Rule 12(b)(6) Standards

To survive a motion to dismiss under Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *10x Genomics, Inc. v. Celsee, Inc.*, 2019 U.S. Dist. LEXIS 188516, *4 (D. Del. Oct. 30, 2019). This "does not impose a probability requirement at the pleading stage," but "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Id.*

### B.    Patent Eligibility Under 35 U.S.C. § 101 and *Alice*

The Court is well-versed in the law surrounding patent eligibility under 35 U.S.C. § 101, including the two-part inquiry established by *Alice* and its progeny. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 573 U.S. 208, 215 (2014).  With Section 101, "[a]t the motion to dismiss stage a

---

[3] The district court did find the claims of the '371 and '612 patents to be directed to ineligible subject matter because they did not embody the distributed architecture or remote storage of policies recited in claim 27 of the '559 patent.

patent claim can be found directed towards patent-ineligible subject matter if the only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *Jedi Techs., Inc. v. Spark Networks, Inc.*, 2017 U.S. Dist. LEXIS 122313 (D. Del. Aug. 3, 2017).

## V.   **ARGUMENT**

### A.   **Representative Claim Analysis is Inappropriate**

Defendant argues that claim 27 of the '559 patent is representative of all of the other claims in the patent without any analysis of those other claims D.I. 12 at 12-13. Here, representative claim analysis is inappropriate because the remaining independent and dependent claims of each patent include additional, different limitations which are directed to specific, alternative embodiments having differing claim scope. In the *Qustodio* case, the court agreed and found it inappropriate to use a representative claim analysis or apply his ruling to other claims within the patents where those claims had not been asserted in the case or where they were not specifically addressed in the defendant's motion. *Qustodio, LLC*, 2019 U.S. Dist. LEXIS 228067 at *43-46.

The other independent claims in the '559 patent include additional limitations, such as those directed to routine updating of policies from a server during use. (*See* claims 13 and 22). These additional limitations are material and result in differing claim scope from the purportedly representative claims which impacts the *Alice* analysis. The dependent claims here also include further limitations, such as defining the type, character, and content of rules or policies applied within the claimed systems. The dependent claims are addressed to limitations specifying policy types, how they are configured, and how they are applied within the claimed systems. These further narrow the independent claims in manners that elaborate on how the claimed system operates and, as such, are not merely "insignificant pre- or post- solution activity" as Defendant

posits.  Limitations defining the type, character, and content of rules applied in a system such as those included in the dependent claims of the Patent-in-Suit have been found critical to the patent eligibility analysis.  See *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316.  In *McRO*, the Federal Circuit affirmed the patentability of the asserted claims, holding:

> By incorporating the specific features of the rules as claim limitations, claim 1 is limited to a specific process for automatically animating characters using particular information and techniques and does not preempt approaches that use rules of a different structure or different techniques.

*McRO,* 837 F.3d at 1316.  Here, similarly, the dependent claims are further confined to concrete implementations of the claimed systems that are patent eligible.  In other words, there is no risk of any type of preemption that would justify finding the claims patent ineligible.  For these reasons, it is improper to regard the three claims identified by Defendant as representative.  A separate *Alice* analysis is required for each claim of the Patent-in-Suit.  The Court should not extend Defendant's arguments to any claims beyond those specifically addressed in its Motion, leaving all remaining claims undisturbed.

### B.      The Asserted Claims are Directed to Patent Eligible Subject Matter

Norton's Motion argues that the asserted claims are ineligible subject matter by oversimplifying the inventions disclosed in the patent and ignoring the detailed allegations in the Complaint. One court has already found Kajeet's arguments persuasive declining to invalidate claim 27 of the '559 in a § 101 challenge. *See Qustodio, LLC,* 2019 U.S. Dist. LEXIS 228067 at *46-47. The Complaint recites specific factual allegations regarding the technology disclosed in the Patent-in-Suit, how the patented inventions describe improvements in computer technology, and how the inventions include an inventive step. What makes Defendant's position more tenuous is that it filed its motion under Rule 12(b)(6) which requires that all allegations in the Complaint, including Plaintiff's explanation of the invention, be taken as true.

Each allegation is further supported and reinforced by the opinions of Kajeet's expert, Dr. Knutson, whose declaration was incorporated by reference in the Complaint and is attached as Exhibit 2. *See* D.I. No. 1, at ¶ 38, fn. 2. Dr. Knutson's testimony is uncontested, and Defendant's Motion provides no evidence of the understanding of one of ordinary skill in the art on this issue. Norton's assertions in its Motion constitute nothing more than unsubstantiated argument because there is absolutely no evidence in the record supporting any of its positions.

### 1.      Step One of the *Alice* Analysis

"[A]ll inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)*.* "We must therefore ensure at step one that we articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix, Inc. v. U.S.*, 850 F.3d 1343, 1347 (Fed. Cir. 2017) (citing to *Alice*, 573 U.S. at 217). Claims directed to specific improvements in computing systems are patent eligible, ending the inquiry at the first step. *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

Step one initially requires identification of a patent ineligible concept underlying the claim (so that one may then determine the subject matter to which the claim is directed). *Innovative Global Sys., LLC,* 2020 U.S. Dist. LEXIS 50657 at *4-5 (D. Del. 2020). Defendant attempts to reduce the invention's significant improvement of providing a distributed architecture and component arrangement for effecting policy-based controls over communication devices by arguing that the claims merely relate to "the concept of access management" and "limiting access to functions based on policies". (D.I. 13 at 1, 9). The claims of the '559 patent are markedly different from the patents invalidated in the cases relied upon by Defendant in a number of important respects.  The inventions claimed in the '559 patent do not simply add a

general purpose computer or utilize existing computer processing capabilities to more efficiently accomplish a well-known task that could be performed within the human mind or through human interaction. Instead, the claims are drawn to a specific type of apparatus aimed at improving the actual functionality of the computer components themselves, thus having "functional and palpable applications in the field of computer technology." *See e.g. DDR Holdings, LLC v. Hotels.com, L.P.*, 954 F. Supp. 2d 509, 527 (E.D. Tex. 2013) ("*DDR Holdings I*") (citing *Research Corp Techs., Inc. v. Microsoft Corp.,* 627 F.3d 859, 868 (Fed. Cir. 2010)).  Defendant's description of the invention and its components are incredibly generic and improper under the case law. Defendant compares the claims of the '559 patent to concepts that "merely mimic[] human activity". (D.I. 13 at 12). There is absolutely nothing about the '559 patent that relates to human activity.

The claims of the '559 patent are not directed to an abstract concept because each: (1) is rooted in computing and network technology; (2) represents improvements in the security and effectiveness in how systems implementing policy-based control over communication devices operate; and, (3) are directed to specific implementations of such improved systems such that there is no risk of preemption.

### a.   Federal Circuit Cases and Cases in this District Support Kajeet's Position

Claims directed to specific implementations and improvements in operation of computer systems have been consistently found patent eligible. This Court's *Innovative Global Systems* opinion is instructive.  There the Court found that the claim was not merely directed to driver and vehicle operation logging and reporting, but rather a particular onboard system for a vehicle that continuously monitors certain data from a vehicle data bus and generates a log indicating driver compliance. *Innovative Global Sys., LLC,* 2020 U.S. Dist. LEXIS 50657 at *14. Similarly, here the asserted claims of the '559 patent are addressed to a specific configuration and

implementation of certain software and hardware network components to effectuate policy based control of network devices (e.g. communications from and to the device); namely, specific solutions in which the policies applied are stored remotely and are, therefore, inaccessible by the controlled device.  *Id.*  Remote policy storage is required by the express limitations of the challenged claims. D.I. 1 at ¶¶ 36; Exh. 2, at ¶ 22. These limitations capture the distributed architecture scheme resulting in improved effectiveness of the claimed systems. *Id.* The distributed arrangement advantageously accommodates policy application in real-time with device usage while preventing the user of the controlled device from accessing and manipulating the policies.  D.I. 1 at ¶¶ 35-36; Exh. 2, at ¶¶ 20, 24.

Thus, the claimed subject matter, when considered as a whole, recites more than the mere use of generic computer functionality, and provides an improvement to a technical field, meeting the guidelines for non-abstract subject matter under *Alice*.  D.I. 1 at ¶¶ 36-38; Exh. 2, at ¶¶ 20, 22.  Kajeet's Complaint captures this concept and these well pleaded factual allegations must be taken as true for the purposes of deciding the present Motion. *Ashcroft*, 556 U.S. at 678.  And, as in *Innovative Global Systems*, the limitations of the claims preclude any preemption of the entire field of policy-based controls, distributed architecture networks, or the like. *Innovative Global Sys., LLC,* 2020 U.S. Dist. LEXIS 50657 at *15.

Moreover, the asserted claims are addressed to the precise type of improvement identified by the Federal Circuit in a recent case conferring patent eligibility. *Ancora Techs. v. HTC America, Inc.*, 908 F.3d 1343, 1344 (Fed. Cir. 2018).  In *Ancora Techs.*, the Federal Circuit held that claims directed to a software-based scheme for controlling access to features are patent eligible because the embodiments claimed comprised "concrete assignment of specified functions among a computer's components **to improve computer security**."  *Id.* (emphasis

added).  The Federal Circuit noted that "[i]mproving security – here, against a computer's unauthorized use of a program – can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem."  *Id*. at 1348.  The improved security resulted from disposing license credentials in a different portion of a computer's memory whereby they would be less vulnerable to manipulation.  *Id*. at 1348-49.

*Ancora Techs.* follows a line of Federal Circuit cases applying the holding of *Enfish* to find patent eligibility at step one of *Alice*.  In *Enfish*, the Federal Circuit found claims directed to a self-referential logical model for a computer database as directed to patent eligible subject matter at step one. *Enfish*, 822 F.3d at 1337. The Court noted that the invention represented improvements over conventional computer databases resulting in increased flexibility, faster search times, and smaller memory requirements. *Id.* at 1337. The challenged claims were deemed "not simply directed to *any* form of storing tabular data, but instead [were] specifically directed to a *self-referential* table for a computer database" so that they functioned differently and better than conventional databases.  *Id.* (emphasis in original).  Importantly, the Court reasoned that "software can make non-abstract improvements to computer technology just as hardware improvements can… Therefore, we find it relevant to ask whether the claims are directed to an improvement in computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis." *Id.* at 1335. The court cautioned against "oversimplifying" computer-related inventions noting that "[m]uch of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes." *Enfish*, 822 F.3d at 1337-8.

Similarly, in *Visual Memory*, the Federal Circuit reversed a district court holding which found the challenged claims directed to ineligible subject matter, citing favorably to its prior decision in *Enfish*. *Visual Memory LLC v. Nvidia Corp.*, 867 F.3d 1253, 1258-59.(Fed. Cir. 2017). The challenged claims were directed to the use of conventional memory components within a computer and purported to improve upon existing memory hierarchical structures through implementation of a "programmable operational characteristic" which, effectively, tailored the allocation scheme of data to be stored based upon characteristics of a processor. The Federal Circuit disagreed with the district court's conclusion that the claims were directed to the "abstract idea of categorical data storage" instead concluding the claims were directed to "an improved computer memory system." *Id.* at 1257, 1259. The court relied on statements in the specification explaining the benefits of the memory structures claimed therein, such as "obviate[ing] the need to design a separate memory system for each type of processor, which proved to be costly and inefficient, and, at the same time, avoid the performance problems of prior art memory systems." *Id.,* at 1259.

Other courts in this District have found claims similar to those in the '559 patent to be patentable subject matter at step one of the *Alice* inquiry. *See Ironworks Patents, LLC v. Apple Inc.*, 2018 U.S. Dist. LEXIS 98246, at *8 (D. Del. June 12, 2018) (concluding that the claims were not directed to an abstract idea because they were "directed to tangible systems—a 'portable device' and a 'mobile station,' respectively—and include 'specific components that are configured to perform specific functions in response to specific events'") (citation omitted).

### b.    Cases Cited by Defendant are Distinguishable

The primary case cited by Defendant in support of its position on *Alice* step one is the *Uniloc* case in which the Federal Circuit addressed the patent eligibility of four different patents. *Uniloc USA, Inc. v. ADP, LLC*, 772 Fed. Appx. 890 (Fed. Cir. 2019). Defendant limits the arguments in its

Motion to the court's analysis of only one of the four patents, the '766 patent, which was held to be invalid. However, the technology claimed in the '766 patent is not analogous to that claimed in the '559 patent here and certainly less relevant that the Federal Circuit's analysis of one of the other four patents in the *Uniloc* opinion which was held to be patent eligible subject matter.

The Federal Circuit described the '766 patent as relating to a license management method that indicates a user's authorization to access an application. *Uniloc*, 772 Fed. Appx. at 901.The court found that the claims did not go beyond merely requiring the collection, analysis, and display of available information.  The '766 patent was not directed to a specific or improved "network architecture" that enabled user specific license management of applications over a network as stated by Defendant. (D.I. 13 at 10). This was Uniloc's characterization of the asserted claims which the Federal Circuit rejected finding that they were instead directed to a simple license management method in which information is collected about the identity of the user, tested against the user identity policy, with a resulting display of authorization. *Uniloc*, 772 Fed. Appx. at 901. The concepts claimed in the '766 patent were no different than other network access technologies in which a client device attempts to access a network or resources on a network server and is either authorized to do so or denied access. This is in stark contrast to the claims of the '559 patent which are directed to an improved distributed architecture for effecting policy control on mobile devices, as recognized by the court in its opinion in the *Qustodio* case and as pled explicitly in the Complaint. *Qustodio, LLC*, 2019 U.S. Dist. LEXIS 228067 at *45-47.

In the same case, the Federal Circuit addressed the patent eligibility of claims in the '578 patent that are directed to a similar distributed architecture to that disclosed in the '559 patent. The '578 patent relates to a network architecture providing an application server for distributing applications to client devices. *Uniloc*, 772 Fed. Appx. at 898. The claims involved distribution of an application launcher program to a user, and the patent described that administrator preferences were

stored on the server. *Id.* In finding the claims to be patent eligible, the Federal Circuit found that the claims were directed to more than just a functional claim using conventional technological components. *Id.* The Federal Circuited noted that the positioning of the components over the network allows the application to launch in response to a request from one of the plurality of authorized users. *Id.* Likewise, the court in the *Qustodio* case held claim 27 of the '559 patent valid because it was directed to a non-conventional arrangement of claim elements over a communications network, with the remote storage of policies on a server and receipt and enforcement of decisions at a client device based on those policies. *Qustodio, LLC*, 2019 U.S. Dist. LEXIS 228067 at *45-47

Further, the recent cases from this District upon which Defendant relies do not apply to the facts here. In *B# on Demand LLC v. Spotify Tech. S.A.*, the claims were directed to "transmitting encrypted digital media files to a user and limiting play based on authorization levels." *B# on Demand LLC v. Spotify Tech. S.A.*, 2020 U.S. Dist. LEXIS, at *2 (D. Del. Sept. 8, 2020). The court there found the claims included only generic computer components that did not improve the computer functionality and were directed to the abstract idea of limiting access to distributed media based on predetermined rules. *Id.*, at * 22, 33. Again, the claims in the '559 patent are not merely directed to the use of policies for limiting access. Rather, they describe the distributed architecture using specific configurations of components to improve the prior systems for controlling and managing computing devices.

Defendant's reliance on the *Money & Data Prot. Lizenz* case fares no better. *See Money & Data Prot. Lizenz GMPH & Co. KG v. Duo Sec., Inc*., 2020 U.S. Dist. LEXIS 111068 (D. Del. June 24, 2020). In that case the Court found the claims covered the abstract idea of authentication, and more specifically, to be generically directed to the "verification of identity to permit access to transactions." *Id.*, at *6. The claims here are directed to much more than merely permitting or limiting access to something. The weight of the case law and the specific facts of

this case demonstrate that the claims of the '559 patent are not directed to an abstract idea. For this reason alone, the Court should deny Defendant's Motion based on *Alice* step one.

### 2.        Step Two of the *Alice* Analysis

Even if the claims of the Patent-in-Suit were directed to an abstract idea, they still introduce an inventive concept embodied in an unconventional arrangement of components as prescribed by the Federal Circuit. *See BASCOM* 827 F.3d at 1343. The claims here describe a distributed architecture with policies stored remotely from the device being managed – an arrangement that was not known or routine at the time. D.I. 1, at ¶ 36. The district court in the *Qustodio* case agreed and followed the reasoning of the *BASCOM* case to deny the motion to dismiss on § 101 grounds. *Qustodio, LLC*, 2019 U.S. Dist. LEXIS 228067 at *46-47.

For claims directed to a judicial exception under step one, courts are to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d, 1299, 1303 (Fed. Cir. 2018) (quoting *Mayo*, 566 U.S. at 67). The "inventive concept" must be something sufficient to ensure that the claims amount to "significantly more" than the abstract idea itself. *Id.* (quoting *Mayo*, 566 U.S. at 72-73).  To satisfy this prong, the claims must include additional features which are significantly beyond "well understood, routine, conventional activity" or a simple "instruction to implement or apply the abstract idea on a computer." *Mayo,* 566 U.S. at 79; *BASCOM,* 827 F.3d at 1349. Whether the claim elements or the claimed combination are well-understood, routine, or conventional is a question of fact.  *Aatrix Software, Inc. v. Green Shades Software, Inc.,* 882 F.3d 1121, 1128 (Fed. Cir. 2018).[4] Courts have looked to the opinions of experts to aid in the determination of

---

[4] *See also Berkheimer v. HP Inc.,* 881 F.3d 1360, 1368 (Fed. Cir. 2018).

whether a claimed combination is well-understood, routine, or conventional. *Vaporstream, Inc. v. Snap, Inc.*, Case No. 2:17-cv-00220-MLH, 2017 U.S. Dist. LEXIS 32884 at *15 (C.D. Cal. February 27, 2018).

Kajeet's Complaint incorporates the declaration of Dr. Knutson discussing the onset of the problem addressed by the Patent-in-Suit, prior art systems and methods for addressing it, and Kajeet's claimed solutions as expert evidentiary support for the well-pleaded factual allegations in the Complaint. *See* Exh. 2, at ¶¶ 16-22. The component arrangement required by the challenged claims, combined with remote policy storage in the context of feature management of a computing device, was not well-known, routine, or conventional and, further, its use effected an improvement in the operation of mobile communication device control systems. D.I. 1 at ¶¶ 36-39; Exh. 2, at ¶¶ 29-30.

As described above and verified by Dr. Knutson, the claims of the Patent-in-Suit are directed to solving a problem arising from the rapid proliferation of mobile communications devices throughout society - a problem rooted in technology that requires a likewise technological solution. D.I. 1 at ¶¶ 12-17, 35-36. Exh. 2, at ¶¶ 19-20. Means for preventing excessive or inappropriate use of such communication devices, which remain in the possession of children potentially all day and night, were needed. *Id.* The claimed inventions address this technology-centric by improving the security, effectiveness, and robustness of management of mobile devices. D.I. 1 at ¶¶ 38; Exh. 2, at ¶ 24.

  **a.**  **The Court Should Follow Federal Circuit's BASCOM Analysis**

In the *BASCOM* case, the Federal Circuit reasoned that while "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself… an inventive concept can be found in the non-conventional and

non-generic arrangement of known, conventional pieces." *BASCOM*, 827 F.3d at 1349-50. And while the technological concepts and *Alice* step two analysis in the BASCOM case is likely the most relevant of the current Federal Circuit cases, it is notable that Defendant's Motion has no discussion or even mention of this case.

The Court held the claims at issue were directed to patentable subject matter at step two because the record established that "the installation of a filtering tool at a specific location, ***remote from the end-users***… cannot be said, as a matter of law, to have been conventional or generic." *Id.* at 1350 (emphasis added).  It was the improved distributed architecture for an Internet content filtering system that the court found to be patent eligible subject matter. *Id.* The literal language of the respective claims at issue in *BASCOM* described the remote location as "a remote ISP server" and as "[a]n ISP server… at a remote client computer."  *Id.*, at 1345-46.

Here, the challenged claims similarly require that the policies be stored remotely from the controlled device and with no less specificity than that provided in the claims of *BASCOM*. Further, the holding of *BASCOM* that the unconventional arrangement claimed was not well-understood, routine, or conventional at that time belies Defendant's assertion to the contrary. The court in the *Qustodio* case followed the *BASCOM* analysis and agreed that the factual allegations as set forth in the Complaint and in Dr. Knutson's declaration regarding the "inventive concept" of the asserted claims defeated the *Alice* challenge.  *Qustodio, LLC*, 2019 U.S. Dist. LEXIS 228067 at *46.[5] The fact that Kajeet included these same factual allegations in its Complaint here is sufficient for the Court to deny Defendant's Motion. However, it is also important to note that the court in the *Qustodio* case ruled in Kajeet's favor on the '559 patent

---

[5] *See also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) (holding "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to deny a motion to dismiss).

when taking up the §101 issue in conjunction with claim construction briefing and with a much more developed record rather than just at the pleadings stage where Plaintiff's allegations must be taken as true. *Qustodio, LLC,* 2019 U.S. Dist. LEXIS 228067 at *1-3.

    **b.**   **Cases Cited By Defendant are Inapposite**

   Defendant also cites to the *Uniloc* case in support of its position regarding step two of the *Alice* analysis but again only with reference to the '766 patent which was held invalid. Based on the description of the technology referenced above, the Federal Circuit found that nothing about the general computer components in the claims was even asserted as being unique or non-conventional from the way that those components ordinarily function. *Uniloc*, 772 Fed. Appx. at 902. Instead, the Court held that "[t]he licensing policy determines authorization to an application like a conventional licensing policy, the server stores and delivers the authorization information like a conventional server, and the notification notifies the user in a conventional way." *Id.*

   And in the same opinion, the Federal Circuit addressed step two with respect to the claims of the '578 patent finding that the positioning of the components and the way they interacted constituted an inventive concept. *Uniloc*, 772 Fed. Appx. at 899. In fact the Court based its analysis on step two on the *BASCOM* case finding the same similarities between the technology in BASCOM and the '578 patent as there are between BASCOM and the claims of the '559 patent as described above. In its analysis, the Federal Circuit described that: "The positioning of these components on the application server together with the application launcher on the client computer allows customization by both the administrator and the user in such a way as the installation can proceed on-demand with both sets of preferences. There has been no showing or determination that such a network architecture was conventional." *Id.* The same can be said for the claims here which cite a unique arrangement of components and distributed architecture that was not conventional, routine, or well understood.

   Further, the cases from this District to which Defendant cites in support of its step two analysis

are distinguishable from the facts of the present case.  In *Pivital IP LLC v. ActiveCampaign, LLC*, the claims were directed to a generic method of "encrypting a portion of a common e-mail so that only a subset of recipients can access the encrypted e-mail." *Pivital IP LLC v. ActiveCampaign, LLC*, 2020 U.S. Dist. LEXIS 188953, at *5 (D. Del. October 13, 2020). There, the court found that there was no inventive concept in its step two analysis because "the specification describes generic equipment and technology [and] nothing in the claims improve[s] or change[s] the functioning of a computer." *Id.*, at *7. Likewise, the holding in the *SynKloud Technologies* case can be distinguished from the claims asserted here because the claims were directed to generic computer components and the plaintiff failed "to identify any specific 'improvements' in its asserted combination of conventional pieces." *SynKloud Techs., LLC v. HP Inc.*, 2020 U.S. Dist. LEXIS 178524, at *25 (D. Del. September 29, 2020). In this case, Kajeet and its expert have explicitly identified the specific improvements that were not well known, conventional, or routine.

It is telling that Defendant failed to cite to the portion of the *Pivital IP* opinion from the court which held Interdigital's patent claims in a separate case to be patent eligible matter. *See Pivital IP*, 2020 U.S. Dist. LEXIS 188953, at *10. There, the court found that even if the claims had been directed to an abstract idea, the "complaint plausibly alleges that each of the six patents has an inventive concept that was not routine, conventional, and well understood..." *Id.*, at *9-10.  As described in detail above, Kajeet's complaint provides specific allegations about the inventive concepts embodied in the claims of the '559 patent such that *Alice* step two is met.

## VI.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion should be denied in its entirety.

DATED: December 23, 2020    Respectfully submitted,

Of Counsel:        Farnan LLP

Jonathan T. Suder       */s/ Michael J. Farnan*
Michael T. Cooke       Brian E. Farnan (Bar No. 4089)
Corby R. Vowell       Michael J. Farnan (Bar No. 5165)
Richard A. Wojcio       919 North Market Street, 12th Floor
FRIEDMAN, SUDER & COOKE  Wilmington, DE 19801
604 East 4th Street, Suite 200   (302) 777-0300
Fort Worth, TX 76102     bfarnan@farnanlaw.com
817-334-0400       mfarnan@farnanlaw.com
Fax: 817-334-0401
jts@fsclaw.com
mtc@fsclaw.com       *Attorneys for Plaintiff*
vowell@fsclaw.com
wojcio@fsclaw.com