# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KAJEET, INC, *Plaintiff*, v. NORTONLIFELOCK INC., *Defendant*. | Civil Action No. 1:20-cv-01339-MN |

### DEFENDANT NORTONLIFELOCK INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF KAJEET, INC.'S ORIGINAL COMPLAINT

DATED: January 13, 2021

Of Counsel:

Manish K. Mehta (*admitted pro hac vice*)
Zaiba Baig (*admitted pro hac vice*)
Simeon Papacostas (*admitted pro hac vice)*
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone:  (312) 212-4949
Facsimile:   (312) 757-9192
Email: mmehta@beneschlaw.com
Email: zbaig@beneschlaw.com
Email:  spapacostas@beneschlaw.com

Charanjit Brahma (*admitted pro hac vice*)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
One Montgomery Tower, Suite 2700
San Francisco, CA 94104
Telephone: (628) 600-2241
Facsimile: (628) 221-5828
Email: cbrahma@beneschlaw.com

*Attorneys for NortonLifeLock, Inc.*

Kevin M. Capuzzi (DE No. 5462)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
Email: kcapuzzi@beneschlaw.com

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. THE *QUSTODIO* DECISION DOES NOT CONTROL IN THIS CASE ......................... 1

III. KAJEET FAILED TO PLEAD FACTS SUPPORTING PATENT ELIGIBILITY ............................................................................................................... 2

IV. THE NOTION OF ACCESS BASED ON POLICIES IS AN ABSTRACT IDEA ................................................................................................................................ 3

V. THERE IS NO INVENTIVE CONCEPT IN THE CLAIMS OR SPECIFICATION .............................................................................................................. 7

VI. A REPRESENTATIVE CLAIM ANALYSIS IS APPROPRIATE ................................ 10

VII. CONCLUSION ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ancora Techs., Inc. v. HTC America, Inc.*,
    908 F.3d 1343 (Fed. Cir. 2018)..................................................................................................5

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)..................................................................................................9

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)................................................................................................10

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018)..................................................................................................8

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020).........................................8

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)..................................................................................................5

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)..................................................................................................6

*Kajeet, Inc. v. Qustodio, LLC*,
    No. 18-cv-01519 JAK................................................................................................................1, 6

*Natera, Inc. v. ArcherDX, Inc.*,
    No. 20-125-LPS, 2020 WL 6043929 (D. Del. Oct. 13, 2020)................................................3, 7

*SynKloud Techs., LLC v. HP, Inc.*,
    No. 19-cv-01360-RJA, 2020 WL 5798725 (D. Del. Sept. 29, 2020) ....................................5, 6

*TMI Sols. LLC v. Bath & Body Works Direct, Inc.*,
    No. CV 17-965-LPS-CJB, 2018 WL 4660370 (D. Del. Sept. 28, 2018)................................10

*TrackTime, LLC v. Amazon.com, Inc.*,
    No. 18-1518 (MN), 2019 WL 2524779 (D. Del. June 19, 2019) .............................................2

*Uniloc USA, Inc. v. ADP, LLC*,
    772 Fed. Appx. 890 (Fed. Cir. 2019).....................................................................................6, 7

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017)..................................................................................................6

**Other Authorities**

Rule 12(b)(6).........................................................................................................................2, 3, 10

I.      INTRODUCTION

Kajeet bases its Opposition to Defendant's Motion to Dismiss ("Resp.") on two faulty premises: (1) that a prior court's denial of a motion to dismiss the '559 patent on the pleadings without prejudice should govern this case; and (2) that it ostensibly pled "detailed factual allegations" to support its argument that the claims meet both prongs of the *Alice* test. Neither has merit. To even make these arguments, Kajeet is forced to misstate both the law and the record, dooming its case. It also failed to demonstrate any differences in the claims that would preclude treating claim 27 as representative. All claims should be held invalid and its Complaint dismissed.

II.     THE *QUSTODIO* DECISION DOES NOT CONTROL IN THIS CASE

Kajeet opens by blatantly mischaracterizing the prior *Qustodio* decision, asking this Court to "reach the same conclusion as the district court in the prior case." Resp. at 1. According to Kajeet, the *Qustodio* court "held that claim 27 of the '559 patent is directed to patent eligible subject matter." Resp. at 1. It then titled a section of its Response, "A Prior District Court Has Found the Claims Patent Eligible." *Id*. at 4. These statements plainly mischaracterize that decision.

Indeed, after invalidating two other patents in the same family under § 101, the *Qustodio* court merely found that Kajeet had "plausibly alleged" that the claim was "at least drawn to a non-conventional arrangement of claim elements," and denied a motion to dismiss "without prejudice to a later challenge to this claim and other claims of the '559 patent based upon a factual record." *See Kajeet, Inc. v. Qustodio, LLC*, No. 18-cv-01519 JAK (Exh. H[1]) at 20. Shortly after the ruling, the case settled. *See* Exh. I. While Kajeet complains that Norton "only paid lip service to that ruling," Resp. at 1, **there was no holding of patent eligibility**, let alone a final judgment. Indeed, the *Qustodio* court devoted a mere half a page to the '559 patent out of its entire discussion of

---

[1] Exhs. A-G refer to exhibits submitted with Norton's Opening Brief.

§101. *See* Exh. H at 20. Thus, not only can there be no preclusive effect, it is of little persuasive value, especially given the controlling case law Norton cited post-dating that decision.

### III. KAJEET FAILED TO PLEAD FACTS SUPPORTING PATENT ELIGIBILITY

Reading through the Response, one wonders if Kajeet was discussing a completely different patent than the '559 patent. As discussed at length in Norton's Motion, the '559 patent is directed to policy-based access management, which has been well-recognized as an abstract idea. *See* Mot. at 9-13. And because the patent merely relies upon routine steps and well-known, conventional network architecture to accomplish its stated goals, it lacks an inventive concept as well. *See id.* at 13-19. Kajeet ignores the actual focus of the '559 patent, and instead repeatedly argues that it claims an improvement to network architecture and security, a concept neither found in the patent nor the claims. *See, e.g.*, Resp. at 8, 17. As one example, Kajeet argues that the policies are "inaccessible" by the controlled device and "prevent[s] the user of the controlled device from accessing and manipulating the policies." Resp. at 11. Making the policies "inaccessible," however, is not found in the claims. Instead, the claims merely require that the policies are either stored remotely or not accessed while a decision is being ***made***. There is no limitation that requires or otherwise ensures that a user of a controlled device never accesses the policies to confer the alleged "security" benefit that Kajeet touts. Kajeet improperly assumes that the Court must accept its conclusory assertions as true while ignoring the claim language. But no matter how many times Kajeet tries to describe the patent as more than it is, that simply does not make it so.

Kajeet confirms its legally improper approach when it erroneously posits that Rule 12(b)(6) "requires that ***all allegations in the Complaint, including Plaintiff's explanation of the invention, be taken as true.***" Resp. at 8[2]. But this is ***not*** the law. *See, e.g.*, *TrackTime, LLC v. Amazon.com,*

---

[2] Unless otherwise indicated, all emphases are added.

*Inc.*, No. 18-1518 (MN), 2019 WL 2524779, at *5 (D. Del. June 19, 2019) (declining to credit conclusory allegations in a complaint regarding shortcomings in the prior art and how the patents resolved or overcame those shortcomings when dismissing case for failure to state a claim under § 101) (Noreika, J.). Kajeet's legal standards section conspicuously glosses over the requirement that a conclusory allegation need not be accepted as true. *See* Resp. at 6. Nor is this Court required to credit the conclusory testimony of Kajeet's paid expert, *i.e.*, exactly the type of ostensible "evidence" Kajeet attempts to offer here as "uncontested." Resp. at 9; *compare, e.g.*, *Natera, Inc. v. ArcherDX, Inc.*, No. 20-125-LPS, 2020 WL 6043929, at *8 (D. Del. Oct. 13, 2020) (Stark, J.) (finding that conclusory allegations in an expert's declaration "do not need to be credited").

Additionally, Kajeet's claim that "Norton's assertions in its Motion constitute nothing more than unsubstantiated argument because there is absolutely no evidence in the record supporting any of its positions" turns the burden of proof here on its head. *See* Resp. at 9. Norton's Motion is based on Kajeet's failure to allege facts sufficient to state a claim, the very purpose of filing a Rule 12(b)(6) motion. Kajeet apparently agrees that "unsubstantiated argument" should be discarded. But rather explaining why this Court should treat its own unsubstantiated argument as well-pleaded facts, Kajeet asks Norton to prove the negative, inviting legal error.

At bottom, the Response suffers from the same fatal flaw as its Complaint, namely that none of the conclusory assertions in support of the purported patent eligibility find even an iota of support anywhere in the patent specification or claims, let alone the recent § 101 jurisprudence.

## IV.  THE NOTION OF ACCESS BASED ON POLICIES IS AN ABSTRACT IDEA

Kajeet's attempts to cast the focus and character of the claims as something more than an abstract idea are belied by the evidence it cites. Recognizing the flaws in its allegations and accompanying disclosures, Kajeet first attempts to convince this Court that the claims "are directed to much more than ***merely limiting access to functions based on policies***," and accuses Norton of

3

attempting "to reduce the invention's significant improvement . . . by arguing that the claims merely relate to '*the concept of access management*' and '*limiting access to functions based on policies*.'" Resp. at 2, 9. Kajeet then complains that Norton's description of the alleged invention is "incredibly generic and improper under the case law." *Id*. at 10. But Kajeet's assertions are undermined by its own words, such as when its Complaint **block quotes the patent** describing its purported invention as "***providing access*** to desirable features . . . while also ***preventing access*** to features deemed inappropriate," where that access is "***based upon policies*** defining acceptable and unacceptable uses of a mobile communication device." Complaint, ¶ 18. Kajeet also describes its claims as being "directed to systems and methods for ***effecting policy-based controls over communication devices.***" Motion, Exh. A at 13. As discussed extensively in the Motion, Kajeet's own characterizations merely describe the abstract idea of access management. Mot. at 9-13.

Kajeet next tries to convince this Court that "[t]here is absolutely nothing about the '559 patent that relates to human activity." Resp. at 10. This is a truly remarkable statement in light of the specification, which associates its claimed inventions with ***literal human activity***. The Complaint focuses on "mobile phone usage by kids," for example, as "one of the greatest conflicts that exist between parents/students and school administrators." Complaint, ¶ 17. It also quotes the patent as being directed to "the management of a phone by an administrator, such as a parent, guardian, financier, employer, supervisor, or responsible party, who can specifically control the use of the phone through management of its features and the wallets associated with the phone." *Id*. In fact, ***all*** the policies described in the patent mimic human activity. *See, e.g.*, Exh. B at 10:8-14:32 (describing implementations of the purported inventions via various examples of human activity involving "Daniel," "Eleanor," "Steve," "Ryan," "Jeff," and even "Grandma").

4

Kajeet also repeatedly attempts to argue that the claimed "[r]emote storage policy" limitations of the claims somehow "capture the distributed architecture scheme resulting in improved effectiveness of the claimed systems." Resp. at 10. But when pressed to explain **how** those limitations "improved effectiveness," Kajeet can only vaguely allege that the scheme "resulted in improved operation through at least increased resilience to undesirable access to policies to manipulate or delete them." *Id*. These so-called benefits are not found in the specification or the claims. *See, e.g.*, *SynKloud Techs., LLC v. HP, Inc.*, No. 19-cv-01360-RJA, 2020 WL 5798725, at *5-*8 (D. Del. Sept. 29, 2020) (finding remote access and retrieval of user information to be abstract idea and declining to credit patentee's alleged benefits of "synchronous operation" and "intuitiveness" where those benefits were not found in the claims or specification) (Andrews, J.). And in any event, the remote location of the policy does not change the "focus" or "character" of the claims, *i.e.*, access management regarding functions or features of a mobile device. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

Each case that Kajeet cites is distinguishable. For example, unlike the '559 patent, the patent in *Ancora Techs., Inc. v. HTC America, Inc.* was explicitly directed to improving security of prior art verification methods. 908 F.3d 1343, 1345 (Fed. Cir. 2018) ("Using BIOS memory, rather than other memory in the computer, improves computer security, **the patent indicates**, because successfully hacking BIOS memory . . . is much harder than hacking the memory used by the prior art to store license-verification information). That is, the stated goal of the patent in *Ancora* was discussed throughout its specification, which provided the court ample basis for its conclusion that the claims represented an improvement in technology. *Ancora*, 908 F.3d at 1345 (citing the patent's disclosure that "[i]t is important to note that the key is stored in a non-volatile portion of the BIOS, i.e., it cannot be removed or modified"). Unlike *Ancora*, the '559 patent never

5

once acknowledges or even discusses the so-called technological improvements to security found in the Complaint. *See, e.g.*, *SynKloud Techs.*, 2020 WL 5798725, at \*6, \*8 (declining to credit patentee's assertions where "[t]he specification does not describe any 'intuitiveness' problem with prior art user interfaces or how the recited display resolves any such problem" and where "the 'synchronous operation' described in the briefing [does not] appear supported by the claims").

Kajeet itself underscores the difference between this case and *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017), when it admits that the court there "***relied on statements in the specification explaining the benefits of***" the claimed invention. Resp. at 13. Kajeet's reliance on *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) suffers from a similar flaw. While the Federal Circuit in each of those cases emphasized ***the specifications' disclosures regarding the improvements in computer functionality brought about by the claimed inventions***, the '559 patent specification is devoid of such touted benefits. *See Enfish*, 822 F.3d at 1333 (specification disclosed specific improvements); *Visual Memory*, 867 F.3d at 1259 (same).

In contrast, Kajeet's attempts to "distinguish" the cases Norton cited fall flat. Resp. at 13-16. Kajeet disparages the patent dismissed in *Uniloc USA, Inc. v. ADP, LLC* as merely claiming "network access technologies in which a client device attempts to access a network or resources on a network server and is either authorized to do so or denied access," but fails to explain why its own claimed "network architecture" is any different, let alone a distinguishing factor here[3]. *Id*. at 14. Kajeet also cannot align these claims to those found to be valid in *Uniloc* because the point of the distributed architecture claimed by the *Uniloc* '576 patent, for example, was to enable an application to launch based on both a "user set of the plurality of configurable preferences" and an

---

[3] Kajeet's misrepresentation of *Qustodio* again as a holding of validity to support its argument here is particularly puzzling, given its own admission that *Qustodio* "left open the determination at step one of the *Alice* analysis of whether the claim was directed to an abstract idea." Resp. at 5.

"administrator set of the plurality of configurable preferences." 772 Fed. Appx. 890, 898-99 (Fed. Cir. 2019). That is, the claimed benefits of the patents held patent eligible in *Uniloc* were described in the specification. *Id.* at 897-99. Kajeet then faults the patent in *B# on Demand LLC v. Spotify Tech. S.A.* for being "directed to the abstract idea of limiting access to distributed media based on predetermined rules," and the patent in *Money & Data Prot.* as covering "verification of identity to permit access to transactions," but again fails to explain how the '559 patent claims, directed to decision-making based on predetermined policies, are any different. Resp. at 15. Tellingly, Kajeet fails to even address other cited cases like *Prism Techs.*, where the Federal Circuit held controlling or restricting access to resources was an abstract idea, and similarly ignores *Dropbox*, *Recognicorp*, and *Natera*, which confirm that its conclusory assertions should be given no weight.

## V.    THERE IS NO INVENTIVE CONCEPT IN THE CLAIMS OR SPECIFICATION

There is no "distributed architecture" that imparts an inventive concept. Kajeet does not dispute that the claimed hardware is entirely conventional or that the claimed functions—"sending" and "receiving" over a "communication network" in "real-time," "enforcing a decision," and "enabling or disabling communication" —are routine computing functions. Mot. at 14-16. Instead, it rests its inventive concept argument on an arrangement it describes as a "distributed architecture with policies stored remotely from the device being managed." Resp. at 16. And while the concept of remotely stored policies is evident within the claims, the specification confirms that at the time of the patent, this was a well-understood, routine, and conventional concept.

As an initial matter, Kajeet's argument for why the claims impart an inventive concept is **identical** to its flawed argument for why the claimed concept is not abstract. *Compare* Resp. at 11-13 *with id.* at 16-17. Kajeet argues that the claims are not abstract because they are directed to "specific solutions in which the policies applied are stored remotely, and are, therefore, inaccessible by the controlled device." *Id*. at 11. It then makes the same argument as to step two

7

by alleging that "[t]he claims here describe a distributed architecture which policies stored remotely from the device being managed – an arrangement that was not known or routine at the time." *Id*. at 16. In other words, Kajeet is relying on the same concept—i.e., polices "stored remotely" —to sustain its arguments as to both prongs of the *Alice* test without further distinction. It is improper for Kajeet to rely on the basis as to why a claim is not abstract as the reason why it also imparts an inventive concept. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."). But this is precisely what Kajeet does here by failing to articulate what, other than the fact that the policies are remote from the managed device, supports an inventive concept that was not routine or conventional at the time of the alleged invention. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 775 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020) ("From the claims and the specification, it is clear that network communication is the only possible inventive concept. Because this is the abstract idea itself, this cannot supply the inventive concept at step two.").

In fact, the alleged network architecture was not at all inventive. The patent describes previously known policy-based access management that could implement remotely stored policies that are inaccessible to users: (1) the prepaid phone account, in which a "phone service provider shuts down access to its services" if a user depletes all of their funds; and (2) the Telecordia<sup>TM</sup> product, where "parental controls" over an account "can be set to limit that child's spending within a set of parameters." Exh. B at col. 2:27-41, col. 3:47-59. The specification also concedes that its ideas can be used with "any type of device that one could imagine that is capable ***of being remotely controlled by logical rules***," *id*. at col. 6:24-31, and further admits the invention could use "***any***

8

*type of device* that is subject to use by someone other than the administrator and that can be *in communication with an appropriate control network*." *Id*. at col. 6:15-24.

Kajeet relies heavily on *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), to argue that its '559 patent also claims a "non-conventional, non-generic arrangement of known, conventional pieces," and therefore satisfies *Alice* step two. Resp. at 17-18. Attempting to draw a parallel between the remote internet content filtering system of *BASCOM* and the '559 patent, Kajeet asserts that its claims "similarly require that the policies be stored remotely from the controlled device and with no less specificity than that provided in the claims of *BASCOM*." *Id*. at 18. But unlike here, the patent specification in *BASCOM* explicitly recognized that the prior art configurations were "subject to be modified or thwarted by a computer literate end-user, such as a teenager or corporate employee." Exh. J at col. 2:1-3. That is, the specification identified the security problem that the *specific* claimed distributed architecture was designed to solve. *See, e.g.*, *BASCOM*, 827 F.3d at 1350 ("*[T]he patent describes* how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content."). By contrast, the only support for Kajeet's claimed "improvement" is its own conclusory allegations in its Complaint and declaration.[4] *See, e.g.*, Resp. at 20 ("Kajeet and its expert have explicitly identified the specific improvements that were not well known, conventional, or routine . . .").

---

[4] These conclusory allegations are undermined by earlier statements in the same Complaint. The Complaint first describes the purported problem to be solved by the '559 patent as "giving [children] ready access which they never had before to inappropriate content, contacts, sexting, online gaming, among other undesirable features and functionality," and notes that "[p]arents, as well as school administrators and others, have struggled with addressing **this newly created problem** ever since." Complaint, ¶ 12. The Complaint goes on in the next paragraph to say that the '559 patent "is addressed to specific systems and methods for addressing **this new problem**," i.e., the problem of managing access to certain features on a device. *Id*. at ¶ 13. In contrast to Kajeet's attorney-manufactured issue of "manipulation or deletion of policies by users," these problems are actually rooted in the specification.

9

## VI. A REPRESENTATIVE CLAIM ANALYSIS IS APPROPRIATE

Kajeet's contention that this Court should not treat claim 27 as representative, Resp. at 7, "does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Kajeet neither discusses any individual dependent claims nor explains how their additional limitations would affect the analysis. Its "blanket statement[s]" regarding those claims are not found in the Complaint, but even if they were, they do "not present[] any meaningful argument to differentiate the representative claims from other claims." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, No. CV 17-965-LPS-CJB, 2018 WL 4660370, at *6 (D. Del. Sept. 28, 2018). The Complaint repeatedly groups the dependent claims with their independent claims, Complaint, ¶¶ 34, 37, 38, 39, and concedes that claim 1 and its dependent claims "are directed to similarly configured systems and methods" as claim 27 and its dependent claims. *Id.*, ¶ 39. That claims 13 and 22 purportedly add the conventional step of updating policies from a server during use does not change the requirement that those policies be remotely stored, the only aspect of any claim that Kajeet alleges as being inventive. And the dependent claims do not add distinctive significance over the independent claims because the independent claims already encompass the concept of policy-based management. As just one example, claim 29 merely specifies that "the policy comprises a quality of service policy." *See* Exh. B. Likewise, the other dependent claims only specify a type of function claimed in the independent claims. Therefore, claim 27 is representative.

## VII. CONCLUSION

For the reasons discussed herein and in its opening brief, Norton respectfully requests that this Court dismiss Kajeet's Complaint for its failure to state a claim under Rule 12(b)(6).

DATED:  January 13, 2021

Of Counsel:

Manish K. Mehta (*admitted pro hac vice*)
Zaiba Baig (*admitted pro hac vice*)
Simeon Papacostas (*admitted pro hac vice)*
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone:  (312) 212-4949
Facsimile:   (312) 757-9192
Email: mmehta@beneschlaw.com
Email: zbaig@beneschlaw.com
Email: spapacostas@beneschlaw.com

Charanjit Brahma (*admitted pro hac vice*)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
One Montgomery Tower, Suite 2700
San Francisco, CA 94104
Telephone: (628) 600-2241
Facsimile: (628) 221-5828
Email: cbrahma@beneschlaw.com

*Attorneys for NortonLifeLock, Inc.*

 */s/ Kevin M. Capuzzi*
Kevin M. Capuzzi (DE No. 5462)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
Email: kcapuzzi@beneschlaw.com