# EXHIBIT  1

1

```
13:12:40          IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF DELAWARE


   KAJEET, INC.,                    )
                                    )
             Plaintiff,             )
                                    )  C.A. No. 19-2370(MN)
   v.                               )
                                    )
   GRYPHON ONLINE SAFETY, INC.,     )
                                    )
             Defendant.             )
   ─────────────────────────        )
   KAJEET, INC.,                    )
                                    )
             Plaintiff,             )
                                    )  C.A. No. 20-1339(MN)
   v.                               )
                                    )
   NORTON LIFELOCK, INC.,           )
                                    )
             Defendant.             )



                   Tuesday, February 23, 2021
                   10:00 a.m.
                   Motions Hearing (Remote)


                   844 King Street
                   Wilmington, Delaware


   BEFORE:  THE HONORABLE MARYELLEN NOREIKA
            United States District Court Judge


   APPEARANCES:


            FARNAN LLP
            BY:  ROSEMARY J. PIERGIOVANNI, ESQ.

                   -and-
```

2

```
   APPEARANCES (Cont'd):


            FRIEDMAN SUDOR & COOKE
            BY:  MIKE COOKE, ESQ.
            BY:  CORBY VOWELL, ESQ.


                   Counsel for the Plaintiff



            PAZUNIAK LAW OFFICE
            BY:  GEORGE PAZUNIAK, ESQ.

            -and-

            THE KUMAR LAW FIRM
            BY:  SANJEEV KUMAR, ESQ.


                   Counsel for the Defendant
                   Gryphon Online Safety, Inc.



            BENESCH FRIEDLANDER COPLAN & ARONOFF LLP
            BY:  KEVIN M. CAPUZZI, ESQ.
            BY:  CHARANJIT BRAHMA, ESQ.
            BY:  MANISH K. MEHTA, ESQ.


                   Counsel for the Defendant
                   Norton LifeLock, Inc.


                   ─ ─ ─ ─ ─ ─ ─ ─ ─
```

|       | 18 |                                                          |
|-------|----|----------------------------------------------------------|
| 09:51:51 | 19 |                                                        |
| 09:56:49 | 20 | THE COURT:  Good morning, counsel.  Can you hear       |
| 10:03:11 | 21 | me?                                                     |
| 10:03:12 | 22 | (All counsel said yes.)                                |
| 10:03:23 | 23 | All right.  So why don't we start with some            |
| 10:03:22 | 24 | introductions.                                         |
| 10:03:37 | 25 | MR. COOKE:  Your Honor, shall I proceed with           |

3

| 10:03:40 | 1  | introductions?                                        |
|----------|----|-------------------------------------------------------|
| 10:03:40 | 2  | THE COURT:  Yes.  Can you hear me?                    |
| 10:03:41 | 3  | MR. COOKE:  Yes.  This is Mike Cooke --               |
| 10:03:45 | 4  | MS. PIERGIOVANNI:  I think I'm having a phone          |
| 10:03:47 | 5  | problem.  I apologize.  This is Rosemary Piergiovanni.  Can |
| 10:03:53 | 6  | you hear me?                                           |
| 10:03:54 | 7  | MR. COOKE:  We can now.                               |
| 10:03:54 | 8  | THE COURT:  We can.                                   |
| 10:03:55 | 9  | MS. PIERGIOVANNI:  I apologize.  I was having          |
| 10:03:57 | 10 | something with my computer audio.  This is Rosemary   |
| 10:04:01 | 11 | Piergiovanni.  I have with me Michael Cooke and Corby Vowell |
| 10:04:05 | 12 | from Friedman, Sudor & Cooke.                         |
| 10:04:07 | 13 | MR. VOWELL:  Good morning, Your Honor.                |
| 10:04:09 | 14 | THE COURT:  Good morning.                             |
| 10:04:12 | 15 | MR. PAZUNIAK:  And, Your Honor, in the Gryphon         |
| 10:04:14 | 16 | case, this is George Pazuniak representing Gryphon.  And |
| 10:04:19 | 17 | with me is my co-counsel, Sanjeev Kumar.              |
| 10:04:25 | 18 | MR. KUMAR:  Good morning, Your Honor.                 |
| 10:04:26 | 19 | THE COURT:  Good morning.                             |
| 10:04:30 | 20 | MR. CAPUZZI:  And good morning, Your Honor.  In        |
| 10:04:31 | 21 | the Norton LifeLock cases, this is Kevin Capuzzi, Benesch |
| 10:04:34 | 22 | Friedlander.  My colleagues, Manish Mehla and Charanjit |
| 10:04:36 | 23 | Brahma are on the line as well.                       |
| 10:04:37 | 24 | THE COURT:  Good morning to all of you.               |
| 10:04:40 | 25 | Okay.  So we are here for the argument on the         |

4

| 10:04:42 | 1  | motions to dismiss filed in the two cases.  We're doing this |
|----------|----|-------------------------------------------------------|
| 10:04:47 | 2  | by Zoom.  That presents a few challenges, but I'm sure that |
| 10:04:50 | 3  | we can make it work.  I have the two patents in front of me |
| 10:04:54 | 4  | as well as the briefs and declarations submitted.  I also |
| 10:04:57 | 5  | have the three sets of slides submitted.  And I ask that you |
| 10:05:01 | 6  | identify slides by number when you refer to them.  I know |
| 10:05:05 | 7  | that you may show them to me on the screen, but it's helpful |
| 10:05:08 | 8  | for the record if you make clear what we're looking at. |
| 10:05:11 | 9  | With the patents or the brief or anything else that you may |
| 10:05:14 | 10 | refer me to that's not in the slide, please give me a minute |
| 10:05:17 | 11 | or two to get to the correct page so that I can follow your |
| 10:05:20 | 12 | arguments.                                            |
| 10:05:21 | 13 | I'm on the phone and there is often a delay when      |
| 10:05:25 | 14 | I start to ask a question such that the person talking |
| 10:05:28 | 15 | doesn't hear me and keeps talking.  I'll ask that you take a |
| 10:05:32 | 16 | breath or a pause every so often so that if I do have a |
| 10:05:35 | 17 | question, I can jump in and ask.                      |
| 10:05:37 | 18 | And finally, I will remind everyone on the phone     |
| 10:05:40 | 19 | that recording or broadcasting these proceedings is  |
| 10:05:42 | 20 | prohibited.                                           |
| 10:05:43 | 21 | Is there anything that we need to discuss before     |
| 10:05:46 | 22 | we begin?                                             |
| 10:05:50 | 23 | MR. COOKE:  Your Honor, this is Mike Cooke.  I        |
| 10:05:50 | 24 | have one question just so that counsel can follow.  Do you |
| 10:05:56 | 25 | have printed copies of the slide deck as well as something |

5

10:05:59 1 on your screen?

10:06:01 2 THE COURT: I have them on my screen.

10:06:04 3 MR. COOKE: Thank you.

10:06:06 4 THE COURT: All right. So with that, let me

10:06:10 5 hear from the Defendants, please.

10:06:19 6 MR. BRAHMA: Good morning, Your Honor. This is

10:06:22 7 Charanjit Brahma from Benesch Friedlander on behalf of

10:06:25 8 Norton LifeLock. And I think I will start with the argument

10:06:30 9 regarding the '559 Patent, the 101 issues there. Let me see

10:06:36 10 if I can share my screen here.

10:06:39 11 So hopefully you're seeing Norton LifeLock's

10:06:51 12 slide deck now, Your Honor. Is that correct?

10:06:53 13 THE COURT: I am, yes. Thank you.

10:06:55 14 MR. BRAHMA: Okay. So to begin with, as we've

10:07:01 15 noted in our brief, claim 27 of the '559 Patent is we

10:07:07 16 believe representative and to briefly touch on the

10:07:10 17 technology and summarize it for purposes of our discussion,

10:07:15 18 the claim is very broad. So this particular claim is for a

10:07:19 19 method, it relates to a system that involves three elements,

10:07:23 20 a user computing device, a remote server that houses a

10:07:28 21 policy, and then another remote computing device, that would

10:07:33 22 be a user's device which is accessed over a communications

10:07:36 23 network. That's all very basic. Those components are all

10:07:40 24 described very generically. And there is nothing specific

10:07:45 25 about that, what Kajeet has termed a distributed

6

10:07:49 1 architecture that appears to be novel. The user device

10:07:53 2 makes a request for a communication to the remote device.

10:07:58 3 The remote server which houses the policy either accepts or

10:08:04 4 rejects that request, and it sends that decision to the

10:08:08 5 user's computing device.

10:08:10 6 So to call that an architecture is a bit of a

10:08:15 7 stretch in the sense that none of these elements is

10:08:18 8 particularly defined with respect to, you know, in respect

10:08:24 9 to it relates to the other devices in at least the claimed

10:08:29 10 system.

10:08:30 11 Certainly there are figures in the specification

10:08:32 12 that provide more detail about particular embodiments, but

10:08:36 13 the claims are not so limited.

10:08:38 14 So if we look at the claim itself and how this

10:08:43 15 is to be accomplished, the decisions are made in real-time

10:08:47 16 so when the request is sent, that's when the decision is

10:08:50 17 made by the server. And I will preface this by saying this

10:08:55 18 is all according to Kajeet's description of the claims. So

10:09:00 19 it is their description of the claims that says that all of

10:09:04 20 the asserted claims require that the policy be stored

10:09:07 21 remotely on the server and not accessible to the device.

10:09:11 22 And that's what they're claiming is the unique or inventive

10:09:15 23 concept.

10:09:18 24 The patent acknowledges that the invention

10:09:23 25 isn't, you know, the creation of policy. Policy has

7

10:09:26 1 existed, policies are just a set of rules to determine when

10:09:29 2 a device will be able to access a particular resource,

10:09:32 3 whether it's another website or texting functionality or

10:09:36 4 something like that. So policies existed in the prior art.

10:09:40 5 They are not used here in anyway that is not -- that is

10:09:43 6 anything but conventional. The idea of having a parent or

10:09:50 7 an administrator set rules on the use of a device certainly

10:09:55 8 isn't new and that's exactly the type of human activity that

10:09:58 9 these claims seek to cover in a quite generic way.

10:10:04 10 There is no technical innovation other than as

10:10:07 11 Kajeet alleges moving these policies to the remote server.

10:10:13 12 It's also important to note that these claims

10:10:17 13 don't preclude the user from having access to the policies.

10:10:21 14 So Kajeet assigns a lot of purposes to this particular

10:10:28 15 structure or architecture, but those purposes aren't really

10:10:33 16 required by the claims, at least as broadly written.

10:10:39 17 So if we go to slide 4. They just wanted to

10:10:47 18 note from the beginning that while Kajeet emphasizes that

10:10:51 19 this is a Rule 12(b)(6) motion to dismiss, therefore, the

10:10:55 20 Court is required to accept certain allegations, this Court

10:10:58 21 has already found and the Federal Circuit has found that

10:11:02 22 allegations don't have to be accepted as true if they

10:11:05 23 contradict matters that are part of the --

10:11:09 24 THE COURT: Right. As I understood your

10:11:10 25 arguments, you were saying well, the specification is silent

8

10:11:14 1 on certain things. So that's not going to get you there

10:11:17 2 with me. Tell me what is contradicted.

10:11:23 3 MR. BRAHMA: Sure.

10:11:24 4 So the specification provides specific examples

10:11:26 5 of embodiments in which, for example, the user sets the

10:11:30 6 policies. So the idea that the user device can't access the

10:11:34 7 policies, you know, is something that Kajeet claims that

10:11:38 8 would exclude particular embodiments that are in the

10:11:41 9 specification. And there is nothing in the claim language

10:11:45 10 that says that the user can't access the policies that are

10:11:49 11 on the system. So that's one example.

10:11:52 12 Claim 23 in particular of the patent requires

10:11:57 13 that one or more policies further include third-party

10:12:04 14 established policies and those third-party established

10:12:09 15 policies can take precedent over the user -- excuse me.

10:12:12 16 That was claim 24.

10:12:13 17 Claim 23 says wherein the one or more policies

10:12:17 18 include user established policies. So some of these

10:12:21 19 examples of functionality that are attributed to this

10:12:25 20 particular architecture by Kajeet include vulnerabilities of

10:12:31 21 the policies to manipulation or deletion by the user.

10:12:36 22 That's inconsistent to saying that the user is the one

10:12:39 23 establishing and creating these policies on the remote

10:12:43 24 server.

10:12:45 25 THE COURT: Okay.

9

10:12:50 1    MR. BRAHMA:  So if we go to the -- sorry.

10:12:52 2    THE COURT:  Tell me again what examples are you

10:12:56 3 referring to in the specification?  I know you have claim

10:13:00 4 23.  But are there particular embodiments you're relying on

10:13:05 5 in the specification that you say contradicts the position?

10:13:09 6    MR. BRAHMA:  Yes.  There are different parts of

10:13:17 7 the specification that talk about users having the option to

10:13:24 8 set the policies.  So, for example, in column 14, it talks

10:13:37 9 about features being established and configured by the user.

10:13:41 10 This is around line 45.

10:13:46 11    And starting on line 49, it says the actual

10:13:49 12 users of the phone might also have the same or similar

10:13:52 13 options with respect to the feature manager as the

10:13:55 14 administrator.  But the administrator might have the ability

10:13:59 15 to override the user and/or prevent the user from doing

10:14:03 16 something in the future.  And that discussion and the

10:14:05 17 following discussion talks about the user setting their own

10:14:09 18 policies.  And the administrator -- a potential

10:14:13 19 administrator having the ability to override those user

10:14:17 20 policies with other policies of their own, but certainly

10:14:21 21 there are user established policies.

10:14:27 22    THE COURT:  Okay.

10:14:28 23    MR. BRAHMA:  And also if you look at claim 22,

10:14:32 24 and I don't know if this was intended by Kajeet to be one of

10:14:35 25 the claims that's asserted among -- that's included among

10

10:14:39 1 the asserted claims, but claim 22 explicitly talks about

10:14:44 2 policies that are on the device.  Now, granted those

10:14:50 3 policies are downloaded from the server, but claim 22 says

10:14:54 4 receiving from server an update to one or more policies

10:14:58 5 stored on the computing device.

10:15:02 6    So the idea that the architecture precludes user

10:15:09 7 access and, therefore, conveys this advantage of preventing

10:15:15 8 the user from manipulating or deleting the policies, that's

10:15:20 9 something that's created for the litigation.  That's not

10:15:23 10 described in the patent itself.  And that's really not

10:15:27 11 touted in the patent as an advantage because that wasn't

10:15:31 12 really a focus of the description in the specification.  The

10:15:35 13 specification talks about all kinds of policies that might

10:15:38 14 be neat or useful for a parent or an administrator or an

10:15:42 15 employer to implement, but that's different than conveying

10:15:46 16 the advantages, the cyber security type of advantages that

10:15:53 17 Kajeet now tries to read into the patent.

10:15:56 18    So moving forward to claim 4, in comparing claim

10:16:05 19 27, the other claims of the patent are roughly the same.

10:16:07 20 Claim 1 is for a storage medium that includes instructions

10:16:11 21 for implementing the method of claim 27.  If you look at

10:16:16 22 claim 5, dependent claims basically talk about different

10:16:21 23 types of content, or different types of policies.  None of

10:16:21 24 those should affect the session.

10:16:31 25    I wanted to jump ahead.  Let me look --

11

10:16:34 1    THE COURT:  Could I ask you to stop for a

10:16:37 2 second.  We are getting significant feedback and I am told

10:16:42 3 that it's from the line with the last numbers 2207.  Whoever

10:16:47 4 that is, could you please mute your phone.  We're still

10:17:02 5 getting static, so I'm going to ask everybody on the call to

10:17:06 6 mute your line unless you are speaking.  See if that helps.

10:17:13 7    Sorry.  Go ahead.  Please continue.

10:17:16 8    MR. BRAHMA:  So if we could move forward to the

10:17:23 9 step one analysis, so that is slide 9.  So these claims

10:17:31 10 cover the abstract idea or are directed to the abstract idea

10:17:35 11 of policy-based access management.

10:17:38 12    Moving to slide 10.

10:17:39 13    This is -- the patent itself acknowledges that

10:17:43 14 this is a computerized way of mimicking the human behavior

10:17:48 15 that parents or employers or other people would impose on

10:17:53 16 children or employees or other users of devices.  So, for

10:17:57 17 example, a parent could have a rule that a child can't text

10:18:02 18 after 9 o'clock.  That human activity is acknowledged in the

10:18:09 19 patent itself at column 1, line 66 to column 2, line 9.

10:18:16 20 That's when this system is trying to mimic.

10:18:21 21    And it should be noted that in noting that

10:18:26 22 *Bascom* is the most, or the closest case according to Kajeet,

10:18:31 23 that *Bascom* case found that step one was met, that there --

10:18:37 24    THE COURT:  I understand.  I understand that.

10:18:39 25 But they are arguing that this is an improvement in

12

10:18:43 1 technology, a la the *Enfish* line of cases and I think the

10:18:49 2 reason they gave me *Bascom* was because I only allowed

10:18:51 3 Plaintiffs to give me one case, so while Defendants can give

10:18:55 4 me one case that shows, you know, it's an abstract idea,

10:18:59 5 Plaintiffs have to make the strategic call which way they're

10:19:03 6 going to go on that.

10:19:04 7    I understand, I know, I read *Bascom* and I know

10:19:08 8 it was an abstract idea, but I don't think that's any type

10:19:11 9 of concession on the Plaintiff's part.  So you can move to

10:19:14 10 the next point.

10:19:15 11    MR. BRAHMA:  Sure.

10:19:17 12    And really the closest case in our view is

10:19:20 13 *ChargePoint*.  And *ChargePoint* dealt with claims in which

10:19:24 14 there was a remote system for controlling electric vehicle

10:19:28 15 charging stations.  The control was applied from a remote

10:19:32 16 server and the remote server turned the charging stations

10:19:36 17 off and on.  So it would send a signal that allowed the

10:19:42 18 charging stations to access electricity.

10:19:45 19    Similarly here, and if we look at -- this is

10:19:53 20 slide 12, a side-by-side comparison of the *ChargePoint* claim

10:19:58 21 and the Kajeet claim.  It's very a similar system in the

10:20:06 22 sense that while Kajeet's claim is directed to whether the

10:20:09 23 user's device will have access to a particular resource on

10:20:12 24 the internet or on the network.  *ChargePoint* was relating to

10:20:16 25 a distributed system for controlling whether that charging

13

10:20:20 1  station had access to electricity.  And those were based on
10:20:24 2  rules.  So those rules and policies are not inventive, those
10:20:32 3  rules and policies aren't related to changing how the
10:20:35 4  computer system works.  All of the components are -- in both
10:20:39 5  of those claims are being used for their ordinary function,
10:20:43 6  applying instructions or rules and making a decision about
10:20:48 7  whether a user device or a charging station has access to
10:20:51 8  something.
10:20:52 9          So nothing about claim 27 of the '559 Patent
10:20:57 10 changes how the actual computer system works.
10:21:01 11         And similarly if we look at *Uniloc*, I'll
10:21:07 12 actually move --
10:21:08 13         THE COURT:  Let's say I agree with you on the
10:21:10 14 abstract idea.  Tell me why, though, this needs to be
10:21:17 15 dismissed when we get to step two given the state of where
10:21:20 16 the -- given the state of where the law seems to be a la
10:21:27 17 *Berkheimer* and *Aatrix* and those types of cases.
10:21:32 18         MR. BRAHMA:  Well, so all of those cases I think
10:21:35 19 can be distinguished generally on the grounds that they're
10:21:39 20 talking about specific implementations.  And even if they're
10:21:45 21 relating in those cases to generic components, the way those
10:21:50 22 components are arranged together is what creates something
10:21:55 23 unique.  So if we look at a side-by-side comparison of the
10:22:05 24 *Bascom*, the *Bascom* claims, so this is slide 19.  You'll see
10:22:12 25 that the Kajeet claim 27 just has the basics.  Right?  So it

14

10:22:18 1  has the remote server.  It has a communication network.  It
10:22:22 2  has a user device.  In comparison, *Bascom* talks about a
10:22:26 3  specific server, this is an ISP server, so an internet
10:22:30 4  service provider server that is coupled to the client
10:22:34 5  computer and to the internet computer network and it
10:22:37 6  specifically assigns particular filtering elements and a
10:22:41 7  filtering scheme to each of the network accounts.
10:22:44 8          There is no discussion in the Kajeet claims of
10:22:49 9  that level of detail of a distributed architecture.  And I
10:22:57 10 will posit that what's described in claim 27 of the Kajeet's
10:23:00 11 patent is so broad that it doesn't rise to the level of an
10:23:08 12 architecture, it really talks about storing something in a
10:23:10 13 different place --
10:23:11 14         THE COURT:  Look, I understand that we're sort
10:23:14 15 of in a situation where one of the ways or perhaps the
10:23:18 16 better way to figure out these 101 issues is to compare a
10:23:23 17 claim here with a claim in a different case.  And that makes
10:23:30 18 sense to me, I guess, to some extent with respect to step
10:23:34 19 one.  But how helpful is it at step two to compare a claim
10:23:40 20 with another claim in a different case when we have
10:23:46 21 *Berkheimer* that says there can be factual issues?  I mean,
10:23:52 22 there can be factual things that differentiate the claim.
10:23:57 23 How helpful is this comparison at step two?
10:24:04 24         MR. BRAHMA:  Well, let me see if I understand
10:24:05 25 your question correctly, Your Honor.  If the question is

15

10:24:11 1  whether there are always going to be factual issues about
10:24:11 2  whether something in a particular claim, in this case
10:24:15 3  Kajeet's claim 27, would be an inventive concept.  I don't
10:24:24 4  think that's the case.  So I don't think *Berkheimer*
10:24:24 5  forecloses the possibility of resolving Section 101 issues
10:24:33 6  at the pleading stage.
10:24:35 7          And while I agree it can be difficult to compare
10:24:38 8  one claim from one case to another claim in another case,
10:24:43 9  because the inventions are obviously different, I think what
10:24:47 10 is clear is that the focus, the Court's focus has to remain
10:24:51 11 on the claims.  And where the claims are broad, that doesn't
10:24:55 12 necessarily create factual issues as to what's an inventive
10:25:00 13 concept or not.
10:25:01 14         The specification is -- the specification and
10:25:05 15 the claims describe the invention, and if as is the case
10:25:11 16 here those don't talk about how the use of a remote server
10:25:16 17 is some inventive concept, then there is really no factual
10:25:20 18 issue in dispute, even accepting whatever pleading
10:25:26 19 allegations need to be accepted.
10:25:29 20         And certainly as we've discussed, Kajeet's
10:25:35 21 allegations to the extent they contradict or are narrower
10:25:40 22 than what the claims actually allow don't need to be
10:25:44 23 accepted by this Court, even at the motion to dismiss stage.
10:25:57 24         So I know I'm over my fifteen minutes.  So with
10:26:01 25 the Court's indulgence, I'll pass it to Mr. Pazuniak.

16

10:26:07 1          THE COURT:  No, we're going to do one patent at
10:26:09 2  a time.
10:26:11 3          MR. BRAHMA:  Okay.
10:26:11 4          THE COURT:  And I assume you did the '559 for
10:26:14 5  both parties; right?
10:26:16 6          MR. BRAHMA:  I'll certainly -- that's my
10:26:18 7  understanding.  I'll let Mr. Pazuniak speak for himself,
10:26:23 8  though.
10:26:24 9          MR. PAZUNIAK:  Yes, that's correct, Your Honor.
10:26:25 10         THE COURT:  Then I want to hear from the
10:26:27 11 Plaintiff on '559 before we move to the next patent.
10:26:38 12         MR. COOKE:  Your Honor, I'm going to share my
10:26:40 13 screen if I can right now.  Are you able to see my screen,
10:26:54 14 Your Honor?
10:26:55 15         THE COURT:  Nope.  I can see you.
10:27:06 16         MR. COOKE:  How about now?
10:27:07 17         THE COURT:  Yes, I can.  Thank you.
10:27:09 18         MR. COOKE:  Thank you.
10:27:11 19         All right.  Let me scroll through a few things
10:27:20 20 --
10:27:20 21         THE COURT:  Let me start by asking you, is there
10:27:22 22 really a question about representativeness for purposes of
10:27:27 23 today?
10:27:31 24         MR. COOKE:  Your Honor, I think that we believe
10:27:33 25 that there are, but it's not the focus of our argument.

17

10:27:43 **1** THE COURT: And you would agree that if I were
10:27:45 **2** to say that claim 27 of the '559 or the '438 Patent would
10:27:53 **3** survive a motion to dismiss that that would be sufficient
10:27:57 **4** for me to say that all of the claims would survive: right?
10:28:02 **5** MR. COOKE: I believe that is correct, yes.
10:28:08 **6** THE COURT: All right. Go ahead.
10:28:10 **7** MR. COOKE: Sure.
10:28:11 **8** So a few things in terms of the feature
10:28:15 **9** management aspect of the invention. If I can --
10:28:19 **10** THE COURT: Your audio is not very good. You
10:28:22 **11** sort of are going in and out and I can't -- it sounds like
10:28:26 **12** you're mumbling so I can't really understand what you're
10:28:29 **13** saying.
10:28:30 **14** MR. COOKE: I'll turn the volume up. Is that
10:28:32 **15** better?
10:28:32 **16** THE COURT: It is for now.
10:28:34 **17** MR. COOKE: Okay. Please let me know if it's --
10:28:38 **18** THE COURT: It's doing it again. It's just not
10:28:42 **19** very good. When you get to the end there is a middle of the
10:28:46 **20** sentence, it sounds like you go under water.
10:28:49 **21** MR. COOKE: Okay. I'll try to move this
10:28:51 **22** microphone a little closer to me.
10:28:54 **23** THE COURT: That seems to be helpful.
10:28:56 **24** MR. COOKE: Right. Thank you.
10:28:58 **25** I hear the cracking.

18

10:29:02 **1** THE COURT: I hear that, too.
10:29:04 **2** MR. COOKE: Okay. So --
10:29:08 **3** THE COURT: Let me ask if anybody is not muted,
10:29:11 **4** could you mute your line, other than Mr. Cooke.
10:29:14 **5** Thank you. Go ahead.
10:29:17 **6** MR. COOKE: So feature management encompasses
10:29:23 **7** many --
10:29:24 **8** THE COURT: I can't understand you. I can't. I
10:29:26 **9** can't hear you. I can hear you saying words, but they're
10:29:31 **10** not really coming across very clearly.
10:29:34 **11** MR. COOKE: Your Honor, I guess the technology,
10:29:38 **12** I never experienced this before. Can you hear me now?
10:29:41 **13** THE COURT: I can hear you, but when you start
10:29:43 **14** talking in paragraphs or sentences, I just lose the ability
10:29:49 **15** to discern the words that you're saying because it sounds
10:29:54 **16** like you're going into a tunnel.
10:30:03 **17** MR. COOKE: Is this better if I speak in short
10:30:08 **18** sentences?
10:30:08 **19** THE COURT: That I could understand.
10:30:10 **20** MR. COOKE: All right. The feature management
10:30:15 **21** has a number of different aspects, including various points
10:30:19 **22** of time, resources to be achieved, that sort of thing. But
10:30:25 **23** let me go ahead and jump right to the particular issue. I
10:30:33 **24** think what happens in this particular issue is that we talk
10:30:38 **25** about step one on the '559. The defendants have a tendency

19

10:30:43 **1** to oversimplify the claims. And if they are going to -- or
10:30:50 **2** the invention in general, but certainly with respect to the
10:30:55 **3** claims. They basically want to describe the system, if you
10:30:59 **4** look at how they describe it, apart from the policies on the
10:31:07 **5** remote storage feature. When they do that, that allows them
10:31:11 **6** to arrive at a very high level simplified view of the
10:31:18 **7** claims.
10:31:18 **8** So what we are saying is that you need to look
10:31:22 **9** at as I have shown here on slide 6, that these basically
10:31:27 **10** have a specific component arrangement for policy controls
10:31:32 **11** where the policies are set remotely. And when it is viewed
10:31:36 **12** in that particular arrangement, that's where you receive
10:31:41 **13** certain benefits, among those which includes a reduced
10:31:47 **14** vulnerability to manipulation or deletion of the policies.
10:31:52 **15** And that would apply --
10:31:56 **16** THE COURT: What do you say to the point that
10:31:57 **17** was raised that nothing in the claims -- well, claim 22 I
10:32:02 **18** think allows some of the policies to be not remote, but
10:32:06 **19** claim 27, there is nothing that precludes a user from
10:32:15 **20** accessing the policies, or manipulating the policies.
10:32:20 **21** MR. COOKE: Yes, Your Honor. Let me speak to
10:32:22 **22** that.
10:32:23 **23** So with respect to -- first of all, with respect
10:32:28 **24** to claim 22 and 23, it is important to remember that this is
10:32:35 **25** one of thirty-eight patents. And this is a continuation of

20

10:32:39 **1** the original specification. So claims 22 and 23 are not by
10:32:47 **2** definition a part of the original specification. That's one
10:32:51 **3** point.
10:32:52 **4** The second point is that when it comes to this
10:32:57 **5** analysis on 101, you are aware, what matters is the claim
10:33:04 **6** we're particularly asserting. So we don't assert claim 22
10:33:08 **7** or 23 --
10:33:09 **8** THE COURT: Okay. So I get it, claim 22, let's
10:33:12 **9** assume I'm not going to look at claim 22. Claim 27 doesn't
10:33:18 **10** preclude the user from having access to the remote policies
10:33:21 **11** or changing the remote policies, does it?
10:33:25 **12** MR. COOKE: Well, the very last limitation, one
10:33:31 **13** limitation is based on a policy stored at the server, and
10:33:37 **14** then if you have claim 27 in front of you.
10:33:39 **15** THE COURT: I do.
10:33:40 **16** MR. COOKE: The last phrase is without storing
10:33:42 **17** the policy on the computing device. So you have this
10:33:48 **18** architecture where the user device is separate from this
10:33:55 **19** policy on a remote server and it says without storing the
10:34:00 **20** policy on the computing device.
10:34:04 **21** THE COURT: But that's not my question. My
10:34:07 **22** question was, I understand you're saying but it's remote,
10:34:11 **23** it's remote, and that's why it has these benefits where, you
10:34:17 **24** know, it can be less subject to being manipulated or changed
10:34:21 **25** by a user. But my question was, nothing in the claims

21

| | |
|---|---|
| 10:34:26 | 1  prevents the user from changing it in the remote location, |
| 10:34:30 | 2  does it? |
| 10:34:32 | 3  MR. COOKE:  Well, yes, that's the point is that |
| 10:34:38 | 4  -- think of it this way.  The entire context of invention, |
| 10:34:43 | 5  we can talk about parents and children or |
| 10:34:47 | 6  employer/employees, that's the point is that you have -- |
| 10:34:49 | 7  remember one of the features is you have it in what's called |
| 10:34:52 | 8  an administrator.  An administrator can be a parent, it |
| 10:34:56 | 9  could be a school administrator, it could be an employer. |
| 10:35:01 | 10  And they're setting the policies.  So when you set the |
| 10:35:05 | 11  policies there, you have this ability to prevent the user, |
| 10:35:10 | 12  for example, the child, the employee, from messing with the |
| 10:35:18 | 13  policy on the local unit. |
| 10:35:20 | 14  For example, if the policy was on the -- if the |
| 10:35:23 | 15  policy was set and stored at the local handset or the user |
| 10:35:27 | 16  device, then, for example, and it was in let's say |
| 10:35:34 | 17  nonvolatile, or volatile memory, they could turn it off and |
| 10:35:40 | 18  on or do something to mess with it.  But if the policy is |
| 10:35:43 | 19  stored elsewhere, they can't.  Or certainly it's reduced, |
| 10:35:52 | 20  the ability is reduced because it's away from the person who |
| 10:35:55 | 21  has access to the device. |
| 10:36:08 | 22  And so that's why we say the claim language we |
| 10:36:11 | 23  just discussed here, the decision being based on a policy |
| 10:36:15 | 24  stored at the server and without storing the policy to the |
| 10:36:21 | 25  server the claim itself demonstrates, and I'll skip the |

22

| | |
|---|---|
| 10:36:24 | 1  claim, the '438 Patent, that's why it suffices. |
| 10:36:31 | 2  Let me go back to this.  There are a number of |
| 10:36:35 | 3  reasons why step one, you could find that step one is not |
| 10:36:49 | 4  met.  Obviously the *IGS* case which was in your court.  But |
| 10:36:44 | 5  let me go to the *Ancora Technology* case very briefly.  I |
| 10:36:50 | 6  think that's important because in that particular situation, |
| 10:36:53 | 7  you basically had a situation where they're trying to |
| 10:37:01 | 8  determine whether one should be given access to the device |
| 10:37:04 | 9  or to certain license management features, license |
| 10:37:08 | 10  arrangements. |
| 10:37:09 | 11  And so what happened is that the typical way is |
| 10:37:15 | 12  that you might store these particular license features at |
| 10:37:22 | 13  the -- in a regular memory, but here, for example, they said |
| 10:37:28 | 14  well, we're going to basically store this in what's called |
| 10:37:37 | 15  BIOS, a memory that is not typically used for that purpose. |
| 10:37:42 | 16  THE COURT:  But isn't this different?  I mean, |
| 10:37:45 | 17  this one is -- is this really an improvement in the way the |
| 10:37:50 | 18  technology operates?  It seems to me it's more using |
| 10:37:54 | 19  technology to perform a human activity in perhaps a more |
| 10:37:58 | 20  efficient and secure way which seems to me to implicate step |
| 10:38:03 | 21  two, not step one a la *Enfish* that it's an improvement in |
| 10:38:09 | 22  the way the technology operates.  Right?  This is not a |
| 10:38:12 | 23  different -- it's not a new technology or an improvement in |
| 10:38:15 | 24  the technology: right? |
| 10:38:19 | 25  MR. COOKE:  Well, no, Your Honor, I would think |

23

| | |
|---|---|
| 10:38:21 | 1  step two is certainly a strong case.  But very briefly on |
| 10:38:26 | 2  step one, if you see here on the slide 10 that I have up, |
| 10:38:31 | 3  *Ancora* dealt with an improvement to computer security.  And |
| 10:38:36 | 4  the way they achieved that is by using the existing |
| 10:38:40 | 5  features.  Instead of whether having the permission or the |
| 10:38:43 | 6  grant to license was in typical memory, they put it in a |
| 10:38:48 | 7  separate existing type of memory called BIOS, it wasn't |
| 10:38:53 | 8  typically used for that purpose for authenticating or |
| 10:38:56 | 9  granting permission.  And the court said hey, you're using |
| 10:39:00 | 10  existing things and the BIOS has a nice function because |
| 10:39:04 | 11  it's harder to hack into BIOS memory.  So the fact that you |
| 10:39:10 | 12  used this known thing combined with regular memory -- |
| 10:39:15 | 13  THE COURT:  But wouldn't then the analogous |
| 10:39:19 | 14  situation be -- if you were really to be analogous to *Ancora* |
| 10:39:25 | 15  in the improvement in technology, wouldn't that be something |
| 10:39:28 | 16  here where you're embedding the policy into a place that |
| 10:39:32 | 17  wasn't typically used, but it's still on the user device, so |
| 10:39:35 | 18  you're able to achieve somehow the same security features |
| 10:39:42 | 19  while keeping it on the user device.  That seems to me more |
| 10:39:48 | 20  analogous than here where you're just saying because then |
| 10:39:52 | 21  you're changing the technology and improving it.  Here |
| 10:39:56 | 22  you're just moving it to a different place which seems to be |
| 10:40:00 | 23  more in the lines of doing something more in human |
| 10:40:04 | 24  activities. |
| 10:40:06 | 25  MR. COOKE:  Yes.  I guess I would respectfully |

24

| | |
|---|---|
| 10:40:10 | 1  -- I respectfully do see your point how that is closer, but |
| 10:40:14 | 2  we would just say it would be -- *Ancora* is similar enough |
| 10:40:18 | 3  that you would achieve this improved computer security |
| 10:40:24 | 4  enough with step one. |
| 10:40:25 | 5  Let me speak to step two here and let me go |
| 10:40:29 | 6  straight to that.  Let's talk about step two.  And I think |
| 10:40:47 | 7  to your point, Your Honor, a couple of points that you |
| 10:40:51 | 8  raised.  One is that -- well, first of all let me just say |
| 10:40:55 | 9  on *Bascom*, *Bascom* is the closest factual analog for step |
| 10:41:01 | 10  two.  And let's think about what happened in *Bascom*.  In |
| 10:41:05 | 11  *Bascom*, the inventor did not invent a network -- networks, a |
| 10:41:12 | 12  computer, connecting computers to a network, a filter or |
| 10:41:17 | 13  even customizable filters, didn't do any of that.  But when |
| 10:41:22 | 14  the *Bascom* venture put these existing filter elements at the |
| 10:41:27 | 15  remote server, a result of just positioning something of a |
| 10:41:34 | 16  benefit was achieved, a result was obtained by virtue of a |
| 10:41:41 | 17  nonconventional nongeneric arrangement of nonconventional |
| 10:41:45 | 18  pieces.  It was if you follow my cursers here a filtering |
| 10:41:50 | 19  tool at a specific location remote from end users.  And so |
| 10:41:55 | 20  that was enough. |
| 10:41:58 | 21  And that's what we have here.  We have basically |
| 10:42:01 | 22  instead of it's not the same, but it's similar, instead of |
| 10:42:05 | 23  having the filtering tool at a remote location, we have the |
| 10:42:11 | 24  policies at a remote location.  Instead of having the |
| 10:42:16 | 25  customizable feature focused on that as in *Bascom*, the |

25

10:42:21  1  customizable filter to the user, we have here that we're
10:42:25  2  focusing on is the security benefit of being away from the
10:42:31  3  user, which *Bascom* also spoke to as well.
10:42:36  4      So there we have the parallel of an inventive
10:42:45  5  concept because it's in an arrangement that's not
10:42:46  6  conventional. A different arrangement.
10:42:52  7      And to go to the point of the case procedurally
10:42:55  8  you were pointing to, Your Honor, the issue really comes
10:42:57  9  down to have we made a plausible specific allegation or
10:43:03 10  complaint? Yes. Is there support in the spec for a
10:43:10 11  plausible allegation of this theory -- excuse me, I
10:43:14 12  shouldn't say spec, I misspoke. The focus is on the claims.
10:43:20 13  Is there a plausible specific allegation in the claims?
10:43:24 14  Yes. We have talked about claim limitations. And, in fact,
10:43:28 15  Judge, I can pull up their slides and go one by one. I
10:43:32 16  won't do that to you, but when you look at their slides,
10:43:36 17  most of them don't highlight or do not model the user -- the
10:43:41 18  remote policy in a remote location on a remote server. They
10:43:46 19  omit that. They try to go to requesting, sending,
10:43:53 20  enforcing, but they don't highlight those things. And so
10:43:56 21  that's the point, they're trying to run away from this
10:43:59 22  benefit that this different arrangement goes.
10:44:02 23      Now, let's go one step further in terms of the
10:44:06 24  procedural stage. I think, Judge, you might want to ask
10:44:10 25  yourself, where is their expert declaration? This

26

10:44:16  1  declaration we filed for Dr. Knutson was two years ago.
10:44:23  2  That case was the *Custodio* case in California that Judge
10:44:31  3  Kronstadt ruled on.
10:44:31  4      THE COURT: I understand. You're not going to
10:44:34  5  get anywhere with me with saying where is their expert
10:44:37  6  declaration? Why would they put in one? They're saying on
10:44:42  7  a motion to dismiss your complaint including the patent is
10:44:44  8  insufficient. They don't need to generate an issue of fact
10:44:49  9  giving expert declarations. So why don't you move to
10:44:51 10  another point.
10:44:52 11      MR. COOKE: I guess back to this point, Your
10:44:53 12  Honor, the issue is when we're talking about the positioning
10:44:59 13  of arrangements, while they cite the *Uniloc* case which by
10:45:03 14  the way, Your Honor, is non-precedential to be unpublished,
10:45:08 15  but if they want to cite that, let's go ahead and go with
10:45:12 16  it. The *Uniloc* patent did cite a patent that was upheld --
10:45:16 17      THE COURT: What about the *Ericsson* case,
10:45:20 18  Gryphon cited that all over its papers and Plaintiff didn't
10:45:23 19  respond at all.
10:45:25 20      MR. COOKE: Your Honor, I guess part of that is
10:45:28 21  that we were limited on space, but also I think to be
10:45:34 22  diplomatic, it's somewhat shocking that they're actually
10:45:39 23  relying on this case. Let's think about -- here is why.
10:45:44 24  *Ericsson* -- in fact, there are a number of cases, we could
10:45:48 25  talk about *SpinCloud*, we could talk about one of the *Uniloc*

27

10:45:52  1  patents, we could talk about *Ericsson*, these basically all
10:45:55  2  are common in this sense.
10:45:58  3      So *Ericsson*, think about this, *Ericsson* was
10:46:01  4  basically saying I have a certain app feature on a phone, on
10:46:12  5  a wireless device, a mobile phone, an app feature that
10:46:16  6  wanted to access a computer, the services feature or the
10:46:22  7  services component. Okay? And so basically that's all it
10:46:27  8  did. All right? And so that was the gist of it. And then
10:46:37  9  there were certain limitations, let me get my cursor. It
10:46:40 10  basically said that's really it, you're just internal in
10:46:44 11  this device you're asking for one thing to ask some other
10:46:48 12  thing for permission to receive something. And so that's
10:46:52 13  why the court could say it was controlling accesses to
10:46:56 14  resources in a telecommunication system, that was it.
10:47:01 15      And then you had the court found these
10:47:05 16  components that were all the same so, for example, this
10:47:15 17  interceptor feature was deemed to be the same as another
10:47:18 18  feature, and it sort of collapsed, all it was doing was
10:47:23 19  we're asking for permission and receiving something.
10:47:27 20      Here where my cursor is, it was very easy to
10:47:30 21  hold the abstract directed to controlling access to or
10:47:35 22  limiting permission to resources, that was a natural easy
10:47:39 23  step. So in *Ericsson* what they tried to do is say well,
10:47:42 24  judge, it wasn't quite that easy. We have this
10:47:47 25  three-layered software, we had some software stacks that

28

10:47:52  1  were vertical, some were horizontal, and that was inventive.
10:47:57  2  But there the concept, as you can see my cursor here, the
10:48:03  3  concept was not captured in the claims. I'm on slide 20
10:48:07  4  still. It wasn't in the claims. And that's what failed.
10:48:10  5      Here in my last bullet point, the claims capture
10:48:15  6  this. We specifically speak of there is policies on a
10:48:22  7  remote server. And so *Ericsson* is really extremely
10:48:30  8  different and not persuasive at all. Think about *SpinCloud*,
10:48:37  9  they cite that one also. It was the device going out and
10:48:41 10  getting resources from a remote server. That was basically
10:48:45 11  a server for storage space, and giving resources from the
10:48:50 12  storage and bringing it back. Okay.
10:48:52 13      Let's talk about the *Uniloc* patent that was
10:48:54 14  invalidated. Well, it was basically the user device going
10:49:00 15  to some sort of server and saying may I have authentication
10:49:03 16  or permission to use the device, yes or no, bring it back --
10:49:09 17      THE COURT: All right. I think I understand.
10:49:11 18      MR. COOKE: It's like a filing cabinet.
10:49:14 19      THE COURT: I get it. I understand. Let's go
10:49:17 20  back, Mr. Brahma, anything that you wanted to say in reply
10:49:24 21  before we turn to Mr. Pazuniak?
10:49:27 22      MR. BRAHMA: I think the only thing I want to
10:49:29 23  emphasize, I think the Court is on this thread already, but
10:49:35 24  the claims are really just talking about storing the
10:49:37 25  policies in a different memory. It doesn't say that the

29

10:49:41 1 server memory is special. It doesn't say that it's, you

10:49:45 2 know, prevented from being modify by the user. It doesn't

10:49:52 3 even say that the policies are unique to a particular user

10:49:55 4 device. None of that is in the claims and for Kajeet to try

10:49:59 5 to read that into the claims now to try to save it from a

10:50:03 6 Section 101 ruling is inappropriate. That's not the purpose

10:50:07 7 of -- you know, they can submit an expert declaration, but

10:50:14 8 that doesn't allow the expert to change the claims and how

10:50:18 9 they read, how broadly they read, nor do the allegations in

10:50:22 10 their complaint change how broadly the claims read.

10:50:26 11         If the claims are interpreted according to the

10:50:30 12 breadth that was intended when they wrote them, there is

10:50:33 13 nothing special about this supposed distributed

10:50:39 14 architecture, there is nothing special about storing a

10:50:41 15 policy on a server.

10:50:44 16         What this patent really focuses on is coming up

10:50:49 17 with neat policies that allow administrators or parents to

10:50:53 18 do different things that control what is accessed.

10:50:57 19         I think in Mr. Cooke's argument just right at

10:50:59 20 the very end, he admitted that other patents that talk

10:51:04 21 about, you know, going to a server and asking for

10:51:07 22 authentication or making an access request, you know, he

10:51:12 23 acknowledged that those were found to be both abstract ideas

10:51:16 24 and not inventive concepts under the two-step *Alice* test.

10:51:21 25 And these claims are no different. All these claims require

30

10:51:24 1 is that the user device send a request to the remote server,

10:51:28 2 the remote server applies policies, policies that are

10:51:32 3 created by humans to determine whether that access request

10:51:35 4 should be permitted. And then it comes back with an up or

10:51:39 5 down decision that it sends to the user device, yes or no.

10:51:42 6 That's it. That's not similar to what was found in *Bascom*

10:51:46 7 to be an inventive arrangement of components. That's not

10:51:51 8 similar to what was found in these other claims with the

10:51:54 9 BIOS and the special memory, storing in a special memory so

10:51:59 10 that it's not volatile or not manipulatable by the user.

10:52:06 11 That's not what these claims are directed to. And I

10:52:08 12 appreciate that Mr. Cooke acknowledged that the claim

10:52:13 13 language is really what controls this determination.

10:52:15 14         THE COURT: All right. Let's hear on the '438

10:52:19 15 Patent.

10:52:20 16         MR. PAZUNIAK: Thank you, Your Honor. Can Your

10:52:39 17 Honor see the slides?

10:52:41 18         THE COURT: I can. Thank you.

10:52:43 19         MR. PAZUNIAK: If it may please the Court, this

10:52:46 20 is George Pazuniak for Gryphon on the '438 issues and other

10:52:53 21 Gryphon specific issues. I'll start with slide 3.

10:53:00 22         A couple of preliminary points, the '438 Patent

10:53:07 23 was not included in that custodial case that was relied on

10:53:10 24 by Kajeet in the briefing. And also the '438 Patent is not

10:53:22 25 included in the Knutson declaration that counsel just

31

10:53:32 1 stressed during the hearing. You can't just do what Kajeet

10:53:36 2 suggest which is just say hey, it's -- you know, the Knutson

10:53:43 3 declaration should be considered simply because it dealt

10:53:50 4 with related patents. The two patents are different and

10:53:53 5 they have to be considered separate.

10:53:55 6         THE COURT: Wait a second. Wait a second. You

10:54:00 7 essentially lumped the '559 and the '438 Patents together in

10:54:03 8 your 101 analysis and didn't make any distinctions in the

10:54:10 9 inquiry and the Plaintiff did the same in the briefing. So

10:54:13 10 I find it difficult to believe that you actually think that

10:54:17 11 I need to make a completely separate analysis here given the

10:54:21 12 way the parties have treated these patents in their papers.

10:54:25 13         MR. PAZUNIAK: Your Honor, in our paper, yes, we

10:54:29 14 did treat certain aspects together, but we also drew that

10:54:36 15 distinction, for example, regarding the custodial case and

10:54:41 16 others. Also, the commonality that we focused in on is the

10:54:49 17 commonality in the abstract ideas that are reflected in both

10:54:57 18 the '559 and '438 Patents. But we also stress that there

10:55:04 19 are significant differences between them, for example, the

10:55:09 20 remote server issue which is --

10:55:11 21         THE COURT: Right. But it seems to me that

10:55:15 22 Plaintiff says well, you need to read these claims to

10:55:17 23 include that, and that seems to me to be a claim

10:55:21 24 construction issue that would preclude me from granting your

10:55:26 25 motion.

32

10:55:26 1         MR. PAZUNIAK: Your Honor, let's turn to I think

10:55:34 2 it's slide 13 to address that immediately. Claim 27 of the

10:55:44 3 '438 Patent does not recite anything about remote server or

10:55:48 4 distributed architecture. If you go to the *Ericsson* case,

10:55:57 5 there is that section that counsel for Kajeet actually

10:56:05 6 referred to which is in that case the court considered the

10:56:08 7 argument of the patentee about a specific layered software

10:56:08 8 --

10:56:10 9         THE COURT: But you agree that if there is a

10:56:13 10 claim construction issue, I need to decide that at least at

10:56:17 11 this stage in the Plaintiff's favor; right?

10:56:21 12         MR. PAZUNIAK: I'm sorry, Your Honor, but I do

10:56:24 13 disagree because also in *Ericsson* --

10:56:27 14         THE COURT: Let's put it this way, I'm not going

10:56:30 15 to do a claim construction, the only way you're going to

10:56:33 16 get to a motion to dismiss, a successful motion to dismiss

10:56:38 17 is if you agree that whatever they say the claim

10:56:42 18 construction is, you should still win, so that's what you

10:56:47 19 need to address for me right now.

10:56:50 20         MR. PAZUNIAK: Your Honor, what I was actually

10:56:52 21 disagreeing with -- maybe I wasn't clear -- is that if you

10:56:58 22 accept *Ericsson*, the court applies a plain and ordinary

10:57:04 23 meaning to the claims unless a claim construction issue is

10:57:07 24 raised.

10:57:09 25         THE COURT: Right. And I think that I'm saying

33

10:57:13 1 as I read the papers, Plaintiffs have at least raised a

10:57:16 2 claim construction issue as to whether the remote server

10:57:20 3 should be read into the claims of the '438 Patent and *Bascom*

10:57:23 4 and *Cleveland Clinic*, et cetera, seem to say that I should

10:57:25 5 resolve that in the Plaintiff's favor.  So assume that there

10:57:30 6 is this issue and that I need to say that the remote aspect

10:57:38 7 should be part of -- the remote storage aspect should be

10:57:42 8 part of the '438 Patent.  How do you win then?

10:57:47 9 MR. PAZUNIAK:  Your Honor, I guess if Your Honor

10:57:49 10 starts with that proposition that there is a viable claim

10:57:54 11 construction issue, then I can't.  However, the question is

10:58:00 12 whether there is any viability to any claim construction

10:58:04 13 issues when you look at the actual language of claim 27,

10:58:09 14 which is on slide 13, you will see that the -- all the

10:58:16 15 devices, the communication device, the policy decider, the

10:58:21 16 policy enforcer, all of these are specified in the claim as

10:58:27 17 being on a communication network.  There are no other

10:58:32 18 restrictions in the claims about where anything is located.

10:58:40 19 So when you have a very specific requirement in

10:58:44 20 the claim as to where things are located, and there is

10:58:49 21 nothing that suggest that there is some other -- there is

10:58:54 22 differences in locations in the claim, I don't think that

10:58:58 23 there is a viable claim construction issue.  And so we have

10:59:06 24 to apply the plain and ordinary meaning and the plain and

10:59:11 25 ordinary meaning is it's on a communications network.  And

34

10:59:15 1 frankly all of those devices could be potentially in the

10:59:20 2 single processor since we're talking only about logical

10:59:27 3 structures here.  So given the plain language of the claim,

10:59:34 4 there is no other option.

10:59:37 5 So if I could, Your Honor, then go to claim 27,

10:59:48 6 which is slide 4, and looking at what is included in that

10:59:54 7 claim, there is nothing to it other than two abstract ideas.

11:00:02 8 And that is a system that comprises a policy decider and a

11:00:10 9 policy enforcer.  Both the policy decider and policy

11:00:15 10 enforcer are plainly abstract ideas.

11:00:22 11 If you then go to the *Ericsson* case, and I'm at

11:00:30 12 slide 8, and compare the invalidated *Ericsson* claim 5 with

11:00:37 13 Kajeet's claim 27 of the '438 Patent, you will see some very

11:00:42 14 direct relationships.  In Kajeet you have a managing in

11:00:52 15 real-time a communication device.  In *Ericsson* you had a

11:00:57 16 controlling access to a platform.  Those ideas can't be

11:01:01 17 distinguished.  You have a policy decider in Kajeet's claim

11:01:07 18 and you have a decision entity in *Ericsson's* claim.  You

11:01:13 19 have a policy enforcer in Kajeet's claim, and you have an

11:01:19 20 interception module related for -- in the *Ericsson* claim.

11:01:31 21 In other words, the two patents, Kajeet and *Ericsson's*,

11:01:35 22 their claims are functionally and fundamentally

11:01:42 23 indistinguishable.

11:01:42 24 So given that, there simply can't be any I think

11:01:49 25 really issue that the -- that claim 27 of the '438 embodies

35

11:01:57 1 patent ineligible abstract ideas.

11:02:02 2 So with that -- and one other point if I could

11:02:06 3 make on slide 10, claim 27 of the '438 Patent is

11:02:15 4 representative.  We believe that Kajeet had the burden to

11:02:20 5 demonstrate any significant differences between the claims.

11:02:25 6 And we cite the case for that.  Here they didn't really do

11:02:32 7 it as far as the '438 Patent, they mentioned only claim 30.

11:02:39 8 But claim 30 just adds -- is the same as claim 27, but it

11:02:44 9 simply adds just another abstraction which is a "geographic

11:02:49 10 locator device."  So we believe that claim 27 is

11:02:55 11 representative.

11:02:56 12 And with that, I would like to turn to step two

11:03:01 13 of the analysis.  And the relevant standard is set forth in

11:03:09 14 slide 12.  I cite this because the *Simio* case is the Federal

11:03:17 15 Circuit's most recent reported decision where they summarize

11:03:24 16 the *Alice* two standard.  And the critical facts or the

11:03:30 17 critical elements of the court's standard is that, you know,

11:03:37 18 whether a claim supplies an inventive concept that renders

11:03:42 19 it significantly more than an abstract idea is a question of

11:03:46 20 law, it's not a question of fact, but one of law.

11:03:50 21 The second critical point is that the abstract

11:03:56 22 ideas or other ineligible concepts cannot supply the

11:04:02 23 inventive concept.

11:04:05 24 So we then look again at claim 27.  And as we

11:04:15 25 discussed already, it doesn't really have anything there

36

11:04:19 1 that could support a legitimate argument that a remote

11:04:25 2 server is required, or some kind of distributed

11:04:34 3 architecture.

11:04:36 4 Then even though if you accept the claim

11:04:39 5 construction, and there is a separate remote server and

11:04:46 6 everything else, how does that really help Kajeet in step

11:04:57 7 two?  There is no inventive concept because a remote server

11:04:59 8 is still just an abstract idea.  It's just a server.  There

11:05:03 9 is nothing specific.  There is nothing particularly unique,

11:05:07 10 it's just a generic typical computer.

11:05:12 11 And then so you look at what exactly is it that

11:05:17 12 is in the complaint that even if we accept as true that

11:05:26 13 would support the fact that there is an inventive concept

11:05:31 14 here.  And we have to start with a critical point that

11:05:38 15 conclusory descriptions, generic overstatements or just

11:05:42 16 generic statements are not actually helpful even in a

11:05:47 17 12(b)(6).  The Court has to accept properly pled factual

11:05:54 18 allegations, not conclusory descriptions and issues of law.

11:06:01 19 So what did Kajeet actually say in its complaint

11:06:08 20 in support of the fact that there was an inventive concept?

11:06:15 21 That's in paragraphs 50 through 55 of their complaint.  And

11:06:20 22 obviously we can't recite all of them here right now, but if

11:06:25 23 you just look at -- there is nothing in those paragraphs

11:06:30 24 that is anything other than abstract.  They talk about

11:06:36 25 managing computing devices in real-time.  They talk about

37

```
11:06:40  1   security. They talk about a lot of things. But all of
11:06:43  2   these are abstract concepts. There is nothing there that
11:06:48  3   would meet the legal standard of having an inventive concept
11:06:55  4   that's something other than the abstract ideas themselves.
11:07:00  5          And the only other issues that they raise as we
11:07:04  6   pointed out is to rewrite the claims to require a remote
11:07:09  7   server and legal irrelevancies that the claimed concepts
11:07:14  8   were novel which, of course, doesn't make any difference.
11:07:18  9   If you have as the Federal Circuit has repeatedly stated, if
11:07:25 10   you have abstract ideas that those abstract ideas are novel
11:07:28 11   or nonobvious is irrelevant. We still have to find
11:07:33 12   something nonabstract.
11:07:34 13          And in this case, everything that is in the
11:07:38 14   claim of the inventive concept has to be in the claims, has
11:07:45 15   to be specifically in the claims. There is still nothing
11:07:49 16   there except a decider, an enforcer, and things on the
11:07:56 17   communication network. All abstract ideas after that.
11:08:05 18          Your Honor, that -- I don't want to take up --
11:08:09 19          THE COURT: You're running out of time and I
11:08:11 20   think you want to save something for later.
11:08:13 21          MR. PAZUNIAK: Yes. Your Honor, we also had
11:08:18 22   other issues, sort of the pleading issues and I don't know
11:08:24 23   if Your Honor wants to hear --
11:08:25 24          THE COURT: I know. You have five minutes left
11:08:27 25   and you can deal with those, but I want to deal with the 101
```

38

```
11:08:30  1   issues first. I want to hear from the Plaintiff on the '438
11:08:34  2   101 issues.
11:08:35  3          MR. PAZUNIAK: Okay.
11:08:38  4          MR. COOKE: Counsel, could you pull down --
11:08:41  5   thank you very much.
11:08:43  6          THE COURT: And Mr. Cooke, does Plaintiff agree
11:08:45  7   that the '438 Patent rises and falls with the '559 Patent?
11:08:51  8          MR. COOKE: Yes, Judge, I think that that should
11:08:54  9   be treated separately.
11:08:54 10          THE COURT: And does the Plaintiff maintain that
11:09:00 11   remote storage policy is required by claim 27 of the '438
11:09:06 12   Patent?
11:09:08 13          MR. COOKE: Yes. Although I would --
11:09:11 14          THE COURT: Isn't claim construction necessary
11:09:13 15   to resolve that issue?
11:09:15 16          MR. COOKE: Yes, at a minimum.
11:09:18 17          THE COURT: Okay.
11:09:20 18          MR. COOKE: Your Honor, let me start off with a
11:09:22 19   few things. And that is that when I hear their arguments,
11:09:31 20   Gryphon's argument and Norton's argument, they're sort of
11:09:34 21   saying this, a couple of things. One thing they're saying
11:09:38 22   is that well, we may have this server, it's having policies
11:09:46 23   and it's remote, but that's not good enough. You need to
11:09:54 24   say that it's got security purposes or a security benefit,
11:09:59 25   or it lessens manipulation. That's contrary to the law.
```

39

```
11:10:05  1   That's contrary to Cellspin and the Pebblebrook case that
11:10:15  2   we've cited where the Federal Circuit said look, you don't
11:10:18  3   have to list every advantage available in the spec, what
11:10:26  4   matters is the claims.
11:10:28  5          Now, let's use our best factual analogy.
11:10:32  6   Counsel previously just -- or just said that well, there is
11:10:36  7   nothing unique about having a server that's remote or
11:10:42  8   putting a policy there. That's what he said. It's not
11:10:46  9   unique, it existed. Look at Bascom. There was nothing
11:10:51 10   unique about filters. There was nothing unique about
11:10:56 11   customizable filters. There was nothing unique about
11:11:00 12   computers or networks. It was an existing technology, but
11:11:06 13   what was different was this known stuff where they put the
11:11:11 14   filters on the remote server. And because it was there, it
11:11:18 15   was able to take advantage of existing functionality.
11:11:24 16   That's what we have here. That's what we have here. That's
11:11:29 17   all we needed to say is that it's remote.
11:11:32 18          When they point to different parts of the claim,
11:11:36 19   the claim in Bascom and talk about filtering elements, that
11:11:45 20   already existed. That was the filtering stuff that already
11:11:48 21   existed in this environment of the internet service
11:11:55 22   provider. So it's error to try to say that there is more
11:11:58 23   required than the architecture said, it's error to try to
11:12:05 24   impute this manipulation or security device features
11:12:09 25   specific words in the body of the claim. The location or
```

40

```
11:12:16  1   arrangements is sufficient. And certainly at this
11:12:21  2   particular stage.
11:12:22  3          If I could say something about ChargePoint very
11:12:27  4   briefly, Your Honor, because it didn't come up in your
11:12:31  5   questioning of me earlier. And I want to mention this,
11:12:34  6   whether it's step one or step two purposes. In ChargePoint
11:12:40  7   all they did was they basically took these -- they were
11:12:46  8   networking these remote charges for cars, electronic charges
11:12:50  9   for cars and they said ey, let's take one of those and let's
11:12:56 10   network them together, put them together. That's far
11:13:00 11   different here than what we have here. We're basically
11:13:03 12   saying, we're talking like in Bascom, existing system,
11:13:07 13   existing components, and we're saying, we're not just
11:13:11 14   networking things, we're going to move a piece around to a
11:13:15 15   different spot. Remember, there is that part of the spec
11:13:19 16   that talks about misuse, we're concerned about misuse by the
11:13:26 17   student, for example, and so we're taking these existing
11:13:30 18   things and moving them around in this environment where
11:13:36 19   we're not just sending information back and forth, we're not
11:13:41 20   just plugging into network, we're basically having this
11:13:45 21   policy over here at the remote server control this device on
11:13:48 22   a number of different levels about what communications can
11:13:51 23   go out, what communications can be received, what data can
11:13:56 24   be accessed, how long, how little, whatever, while we're
11:13:59 25   simultaneously allowing some uses to be permitted and some
```

41

11:14:04 1 prohibited in this dynamic way.

11:14:07 2 As far as, Your Honor, I can go through the

11:14:13 3 particular elements of the '438 claim 27 and explain where

11:14:21 4 these are situations where there is a remote server, where

11:14:26 5 there is the policy on remote server, how it's different, a

11:14:32 6 different place than the user device or the communication

11:14:35 7 device, but based on as I am reading your comments right

11:14:39 8 now, at a minimum it's a claim construction issue, so I will

11:14:43 9 leave it at that.

11:14:44 10 And unless Mr. Vowell has something to add to

11:14:51 11 that, and then we may have some comments in response to the

11:14:55 12 direct infringement/indirect infringement allegations and

11:14:58 13 that sort of thing, he'll address those.

11:15:00 14 THE COURT: Yes. I do want to hear on those

11:15:08 15 issues.

11:15:14 16 MR. PAZUNIAK: Your Honor, this is George

11:15:20 17 Pazuniak again. Just one comment as to what was said about

11:15:28 18 claim 27 eligibility. On slide 7, we quote from *Ericsson*

11:15:35 19 that "controlling access to resources is exactly the sort of

11:15:41 20 process that can be performed by the human mind, et cetera.

11:15:45 21 And we have repeatedly found the concept of controlling

11:15:50 22 access to resources via software to be an abstract idea."

11:15:58 23 And that's *Ericsson* at 1327.

11:16:01 24 Everything that counsel has just talked about

11:16:05 25 seems to fall squarely within this ruling in *Ericsson* that

42

11:16:12 1 we're still talking only about controlling access.

11:16:19 2 With that, I would like to turn to the other

11:16:22 3 issues that we have, and that is the pleading deficiencies.

11:16:28 4 I first go to slide 19. And that is whether Kajeet has

11:16:37 5 complied with the requirement to plead either patent marking

11:16:43 6 or an exemption from patent marking.

11:16:47 7 The '438 Patent asserted claim 27 is plainly a

11:16:56 8 product claim. This Court in *Express Mobile* has made it

11:17:00 9 very plain and this is something that I believe most

11:17:04 10 complaints since then have followed, and that is whether or

11:17:09 11 not you have a 287 issue or not, you plead something, either

11:17:12 12 you plead that we didn't have to comply or you plead

11:17:16 13 compliance, but you have to have a pleading. And that's the

11:17:22 14 ruling in *Express Mobile* which of course relied on the

11:17:26 15 Federal Circuit's *Arctic Cat* decision.

11:17:33 16 As to the '559 Patent, Kajeet could not be

11:17:38 17 clearer because they in paragraph 43, they specifically said

11:17:43 18 that they are asserting claim 27 among others. So it's an

11:17:51 19 open-ended complaint and the openness means that the

11:17:59 20 pleading potentially includes claims 1 through 21 of the

11:18:05 21 '559 Patent which are all product claims. Therefore, given

11:18:08 22 the specific pleading of infringement and damages involving

11:18:18 23 a product claim and in the other case having product claims

11:18:25 24 among others, *Express Mobile* required the pleading and we

11:18:33 25 don't have that here.

43

11:18:35 1 As far as the direct infringement issues are

11:18:39 2 concerned, I'll be very quick because I understand that *Disc*

11:18:46 3 *Disease* limits the amount of information or facts that have

11:18:51 4 to be pleaded. But in this case, this is not exactly like

11:18:56 5 the *Disc Disease* case because for two reasons, one, it's a

11:19:04 6 little more complex than the very simple case in *Disc*

11:19:08 7 *Disease* because we have these totally generic fairly obtuse

11:19:16 8 claim limitations such as decider and an enforcer which is

11:19:21 9 not something that a person of ordinary skill in the art

11:19:25 10 would understand. I mean, they're coined terms. So because

11:19:30 11 of that, I think that this case is different than *Disc*

11:19:38 12 *Disease* as well as the other cases that have considered the

11:19:41 13 issue.

11:19:41 14 The second point is that in *Disc Disease* and

11:19:46 15 almost all the other cases that have been decided since

11:19:51 16 then, the actual products accused of infringement were very

11:19:58 17 clearly specified. In this case they're not. Gryphon's

11:20:05 18 products being accused of infringement are not identified by

11:20:11 19 model number or name, they're just fairly generically

11:20:14 20 described as any product that includes this element or that

11:20:19 21 element. So I think that because of these two differences,

11:20:25 22 *Disc Disease* does not apply and more specificity is

11:20:32 23 required.

11:20:34 24 That takes us to slide 21. The way the

11:20:42 25 complaint is written, Kajeet demands pre-suit damages for

44

11:20:48 1 inducement and contributory infringement. There is no other

11:20:52 2 way that the Kajeet complaint can be read. They simply say

11:20:58 3 they assert direct infringement, assert inducement, assert

11:21:03 4 contributory, and then they say we were damaged and we claim

11:21:09 5 damages. So there is nothing restricting the inducement and

11:21:14 6 contributory damages to only post-suit issues.

11:21:25 7 Given that, Kajeet was required to specifically

11:21:34 8 plead both that there was knowledge on Gryphon's part of the

11:21:42 9 patent and knowledge that the patent was being infringed.

11:21:50 10 Both of those --

11:21:51 11 THE COURT: All right. Mr. Pazuniak, you're

11:21:53 12 just about out of time, so you need to finish up.

11:21:56 13 MR. PAZUNIAK: Okay. And I will say and I will

11:21:58 14 finish with that, that pre-suit damages are absolutely --

11:22:05 15 the claim for pre-suit damages requires the pleading of the

11:22:09 16 intent.

11:22:09 17 And that's what I have, Your Honor. Thank you.

11:22:12 18 THE COURT: All right. Thank you.

11:22:21 19 MR. VOWELL: Your Honor, this is Corby Vowell on

11:22:24 20 behalf of the Plaintiff to address those remaining issues.

11:22:26 21 Can you hear me?

11:22:27 22 THE COURT: I can. Thank you.

11:22:28 23 MR. VOWELL: Thank you.

11:22:28 24 THE COURT: So tell me where in the complaint is

11:22:32 25 there any allegation that the accused Gryphon products meet

45

11:22:38 1 each and every limitation of claim 27 or any other claims.

11:22:43 2 MR. VOWELL: So as we put in our briefing,

11:22:45 3 paragraphs 20 to 30 describe and actually identify

11:22:51 4 specifically the accused products and then describe how they

11:22:56 5 work, how they meet each of the elements, how they operate

11:23:00 6 to have the things that we have been talking about today,

11:23:03 7 the remote server, the client devices manager, the software

11:23:09 8 that's on each of those pieces and how they work together to

11:23:12 9 actually control the device.

11:23:14 10 THE COURT: So you're saying some words there,

11:23:16 11 but that's not how I'm reading this complaint. Where is it

11:23:20 12 that they describe how they meet each and every element of a

11:23:23 13 claim? Look at the complaint and show me.

11:23:24 14 MR. VOWELL: So it's certainly not in claim

11:23:30 15 chart form or in, you know, in element-by-element

11:23:35 16 recitation. But if you start with paragraph 20, which

11:23:40 17 describes just generally who Gryphon is, paragraph 21

11:23:45 18 describes and identifies the Gryphon mesh WiFi security

11:23:50 19 router, that's the label for the product. There may be

11:23:53 20 different model numbers, but we certainly identify the

11:23:56 21 product itself. Paragraphs 22 and going forward

11:24:00 22 specifically talk about the router which in this case is

11:24:04 23 connected to a server. There is a Gryphon connect app that

11:24:09 24 is mentioned in claim -- I'm sorry, in paragraph 22 and

11:24:14 25 paragraph 23 that is the software that is on the individual

46

11:24:16 1 user's device that communicates. Paragraph 23 talks about

11:24:21 2 setting up the device and user profiles to establish usage

11:24:26 3 policies associated with the devices in the profiles.

11:24:29 4 Paragraph 24 talks about the Gryphon --

11:24:34 5 THE COURT: How is this claim specific? I get

11:24:39 6 it, it's a nice descriptor of how the products work, but

11:24:44 7 this doesn't seem to me to be very claim specific. You're

11:24:51 8 just telling me what the products do, not how it matches up

11:24:55 9 with the claims.

11:24:58 10 MR. VOWELL: Correct, it does not, you know,

11:25:03 11 directly correlate each element with the description. But

11:25:07 12 the description is sufficient to put -- and this is really

11:25:13 13 what matters, the description is sufficient to put Gryphon

11:25:15 14 on notice of why we think their products meet the

11:25:18 15 limitations of the claims. That's really --

11:25:21 16 THE COURT: All right. Let me just ask you this

11:25:23 17 since we're running out of time. Is Kajeet going after past

11:25:28 18 damages?

11:25:29 19 MR. VOWELL: Well, certainly with respect to the

11:25:33 20 '559 Patent and claim 27, which is a method claim, there are

11:25:36 21 no marking issues there, so we certainly are -- there are

11:25:40 22 other issues related to notice for whether it's contributory

11:25:44 23 or district infringement, but we certainly would be entitled

11:25:44 24 to past damages there.

11:25:49 25 With respect to apparatus claims in the '438

47

11:25:52 1 Patent like claim 27, there is an issue about past damages

11:25:57 2 with respect to whether or not we have put them on notice,

11:26:02 3 but --

11:26:03 4 THE COURT: Isn't the law pretty clear that you

11:26:05 5 have the burden to plead marking?

11:26:08 6 MR. VOWELL: Yes, it is.

11:26:10 7 THE COURT: And have you pleaded marking?

11:26:14 8 MR. VOWELL: We did not plead specifically that

11:26:17 9 we complied with the marking statute. Now, we have complied

11:26:21 10 with the marking statute, but we did not specifically plead

11:26:21 11 that in our papers affirmatively.

11:26:27 12 THE COURT: So can you -- so if I were to grant

11:26:32 13 the motion on that and give you leave to amend, are you

11:26:35 14 saying that you could plead it?

11:26:36 15 MR. VOWELL: Yes, we certainly -- our client has

11:26:41 16 taken significant measures to comply with the marking

11:26:44 17 statute and we could certainly replead that portion

11:26:49 18 adequately.

11:26:51 19 THE COURT: All right. Let me hear from the --

11:26:56 20 MR. VOWELL: Your Honor, just to be clear, with

11:26:58 21 respect to present damages or damages since the filing of

11:27:00 22 the complaint, there is no issue there with respect to the

11:27:06 23 past damages or the marking statute, so --

11:27:09 24 THE COURT: No, I understand, that's why I asked

11:27:11 25 you if you were going to plead pre-suit. Are you going

48

11:27:18 1 after pre-suit inducement?

11:27:23 2 MR. VOWELL: Well, we need to see the facts. We

11:27:27 3 don't know specifically when each of these parties became

11:27:30 4 aware of the patents, you know, when we filed the complaint,

11:27:33 5 but if it turns out that they found out earlier about the

11:27:36 6 patents or were on notice earlier then we might need to

11:27:41 7 address that and may be able to get past damages.

11:27:44 8 THE COURT: So the current inducement claim is

11:27:47 9 limited to just post-suit: is that correct?

11:27:52 10 MR. VOWELL: Yes. That's what we're aware of

11:27:54 11 right now.

11:27:55 12 THE COURT: Okay. Mr. Pazuniak, you have

11:28:00 13 thirty seconds.

11:28:01 14 MR. PAZUNIAK: Your Honor, if you look at those

11:28:06 15 paragraphs 20 through 30, nowhere is there any specific

11:28:10 16 identification of what products are being accused of

11:28:14 17 infringement, much less is there any correlation to any

11:28:18 18 claim elements.

11:28:19 19 Thank you, Your Honor.

11:28:21 20 THE COURT: All right. So I need a few minutes

11:28:34 21 here to look through some of the notes that I took during

11:28:40 22 the argument and make sure I can rule on these issues. So

11:28:48 23 let's take a break for let's say twenty minutes. I'll try

11:28:52 24 and be back as close to 11:50 as I can. I'll ask everyone

11:28:57 25 to get back on the line at 11:50 and I will give you my

49

| | |
|---|---|
| 11:29:04 | 1    ruling on the issues. |
| 11:29:06 | 2              Thank you. |
| 11:29:07 | 3              (A brief recess was taken.) |
| 11:46:21 | 4              THE COURT:  Thank you for the arguments today. |
| 11:56:38 | 5    They were helpful.  I am prepared to rule on the pending |
| 11:56:41 | 6    motions.  I will not be issuing a written opinion, but I |
| 11:56:45 | 7    will issue an order stating my rulings.  I want to emphasize |
| 11:56:48 | 8    that although I am not issuing a written opinion, we have |
| 11:56:51 | 9    followed a full and thorough process before making the |
| 11:56:54 | 10   decisions I am about to state.  There was briefing on the |
| 11:56:57 | 11   pending motions, there were additional submissions |
| 11:56:59 | 12   discussing what each party viewed as the most analogous case |
| 11:57:03 | 13   and there has been oral argument here today.  All of the |
| 11:57:07 | 14   submissions and the arguments have been considered. |
| 11:57:10 | 15             As to the law, I am not going to read into the |
| 11:57:12 | 16   record my understanding of Section 101 law or the applicable |
| 11:57:16 | 17   pleading standards.  I have a legal standard section that I |
| 11:57:20 | 18   have included in earlier orders, including in *Innovative* |
| 11:57:24 | 19   *Global Systems, LLC v. Keep Truckin, Inc.*, No. 19-641.  I |
| 11:57:29 | 20   incorporate that law and adopt it into my ruling today and I |
| 11:57:32 | 21   will also set it out in the order that I issue. |
| 11:57:35 | 22             Now as to my rulings.  There are two patents, |
| 11:57:38 | 23   U.S. Patent No. 8,667,559, which is asserted against both |
| 11:57:44 | 24   Gryphon and Norton, and U.S. Patent No. 7,899,438, which is |
| 11:57:47 | 25   asserted only against Gryphon.  The '559 Patent is a |

50

| | |
|---|---|
| 11:57:52 | 1    continuation of the '438 Patent.  The patents claim systems |
| 11:57:55 | 2    and methods for controlling access on a user's communication |
| 11:57:58 | 3    device and implementing rules for use of that communication |
| 11:58:02 | 4    device. |
| 11:58:04 | 5              Defendants have each moved to dismiss pursuant |
| 11:58:06 | 6    to Rule 12(b)(6), arguing that the asserted claims are |
| 11:58:10 | 7    directed to patent-ineligible subject matter.  And Gryphon |
| 11:58:13 | 8    has also moved to dismiss the claims of infringement on the |
| 11:58:16 | 9    basis that Plaintiff has failed to adequately state a claim. |
| 11:58:19 | 10             Taking those issues in turn, after reviewing the |
| 11:58:26 | 11   entire record, hearing argument, and applying the law as I |
| 11:58:29 | 12   understand it, I am going to deny the motions to the extent |
| 11:58:32 | 13   they are based on patent eligibility. |
| 11:58:35 | 14             As to the '559 Patent, Gryphon and Norton treat |
| 11:58:38 | 15   claim 27 as representative of all claims.  As to the '438 |
| 11:58:45 | 16   Patent, which is only asserted against Gryphon, Gryphon |
| 11:58:49 | 17   treats claim 27 as representative of all claims.  Gryphon, |
| 11:58:52 | 18   however, does not offer any significant analysis on the |
| 11:58:55 | 19   representativeness. |
| 11:58:56 | 20             Turning first to the '559 Patent, in the |
| 11:58:59 | 21   briefing, Norton argued that the abstract idea is: |
| 11:59:05 | 22   "limiting access to functions based on policies," whereas |
| 11:59:09 | 23   Gryphon suggested, without really clearly stating, that the |
| 11:59:14 | 24   abstract idea is "controlling access to devices."  Today, in |
| 11:59:18 | 25   an effort to streamline their arguments, Defendants argued |

51

| | |
|---|---|
| 11:59:21 | 1    that the abstract idea claimed in the '559 Patent is |
| 11:59:26 | 2    "policy-based access management," using claim 27 as the |
| 11:59:29 | 3    representative claim. |
| 11:59:30 | 4              Regardless of the various articulations, |
| 11:59:32 | 5    Defendants' argument is essentially that the claims are |
| 11:59:35 | 6    directed to limiting the access to or the functioning of a |
| 11:59:38 | 7    device.  In Defendants' view, this is nothing more than |
| 11:59:41 | 8    performing a human activity through use of generic computer |
| 11:59:45 | 9    components operating in a conventional way. |
| 11:59:48 | 10             Today in argument, Defendants cited *ChargePoint,* |
| 11:59:51 | 11   *Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019), as |
| 12:00:05 | 12   the most analogous case.  I know that in the briefing and |
| 12:00:05 | 13   here in arguing about the '438 Patent, Gryphon relied on |
| 12:00:09 | 14   *Ericsson* and I want to address that as well. |
| 12:00:12 | 15             *ChargePoint* involved network-connected charging |
| 12:00:15 | 16   stations for electric vehicles, and the specification |
| 12:00:17 | 17   explained that the prior art suffered from a lack of |
| 12:00:19 | 18   communication network that allowed utility companies, |
| 12:00:23 | 19   businesses and drivers to interact efficiently as it related |
| 12:00:26 | 20   to electricity needs.  The inventive communication network |
| 12:00:30 | 21   was touted as potentially providing the ability to manage |
| 12:00:35 | 22   electricity demands of vehicles and power grids by allowing |
| 12:00:37 | 23   interconnectivity.  And the specification described the |
| 12:00:41 | 24   claimed invention as a network system that allowed drivers |
| 12:00:44 | 25   to locate charging stations and pay for charging, and it |

52

| | |
|---|---|
| 12:00:48 | 1    also allowed utility companies to provide information |
| 12:00:51 | 2    relating to electricity demands. |
| 12:00:54 | 3              Against this backdrop, the Federal Circuit found |
| 12:00:56 | 4    the claims at issue to be directed to the abstract idea of |
| 12:00:59 | 5    network communication for device interaction.  In reaching |
| 12:01:02 | 6    this conclusion, the Federal Circuit rejected the contention |
| 12:01:05 | 7    that the claimed invention was an improvement in technology, |
| 12:01:09 | 8    particularly in light of the significant breadth of the |
| 12:01:11 | 9    claims and the fact that the focus of the claims was on |
| 12:01:14 | 10   facilitating business interactions.  In Defendants' view, |
| 12:01:18 | 11   the breadth of the claims of the '559 Patent renders them |
| 12:01:23 | 12   indistinguishable from *ChargePoint*, particularly given that |
| 12:01:27 | 13   the purported technological benefits touted by Plaintiff |
| 12:01:31 | 14   (*e.g.*, improved security) do not appear in the '559 Patent |
| 12:01:35 | 15   claims. |
| 12:01:35 | 16             As I mentioned, Gryphon relies heavily on |
| 12:01:38 | 17   *Ericsson, Inc. v. TCL Communication Technology Holdings,* |
| 12:01:44 | 18   *Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020), to argue that the |
| 12:01:49 | 19   claims, including those in the '438 Patent to be addressed |
| 12:01:52 | 20   in a few minutes, are directed to an abstract idea.  In |
| 12:01:56 | 21   Gryphon's view, the claims here are indistinguishable from |
| 12:02:00 | 22   that case.  In *Ericsson*, the claims were directed to a |
| 12:02:03 | 23   system for controlling access to a platform (*e.g.*, a mobile |
| 12:02:07 | 24   device), where the platform included various components, |
| 12:02:10 | 25   including an access controller, interception module and a |

**53**

| | |
|---|---|
| 12:02:14 | 1 |
combined decision entity / security access manager to
determine whether access to the controller should be
granted.  At step one, the Federal Circuit found that the
claims were directed to the abstract idea of "controlling
access to resources by receiving a request and determining
if the request for access should be granted."  It was the
court's view that the claims were drafted in largely
functional terms without any indication of how to control
such access, suggesting that the focus of the claims was
merely the abstract idea of controlling access to resources.
Moreover, according to the court, the claims were focused on
using computer components to perform an action that can
readily be done by humans (*i.e.*, limiting access to
something).  In Gryphon's view, the claims here are no
different - rather, the focus of the claims here is on a
request for access or permission to use a functionality on a
communication device, drafted largely in functional terms
and using only conventional computer technology.

Plaintiff argues that the invention claimed in
the '559 Patent is an improvement in the operation of
computers and not the use of computers as tools - *i.e.*, the
claims are directed to "improvements in the security and
effectiveness in how systems implementing policy-based
control over communication devices operate."  In particular,
Plaintiff argues that the claimed invention is "to a

**54**

specific configuration and implementation of certain
software and hardware network components to effectuate
policy-based control of network devices . . . namely,
specific solutions in which the policies applied are stored
remotely and are, therefore, inaccessible by the controlled
device."  Plaintiff is attempting to fit the claims of the
'559 Patent into the *Enfish* line of cases, where the Federal
Circuit has repeatedly held that certain improvements in the
way computers or technology operate fall outside the realm
of abstract ideas.

Plaintiff focuses largely on *Ancora
Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed.
Cir. 2018), which involved claims directed to methods of
limiting software execution on computers without permission
to run the software by using a key stored in BIOS.  There,
the Federal Circuit found that the claims were like those in
*Enfish*, *Data Engines*, etc., in that they were directed to a
specific way of improving how a computer operates and, in
particular, how it verifies permission to run software while
improving the computer's security in the process, thus
avoiding some of the problems with prior art methods - *e.g.*,
hackers could access, they were costly and they were not
easily obtainable by downloading, all of which were
described in the specification.

Focusing first on claim 27 of the '559 Patent,

**55**

unlike *Ancora*, *Enfish* and that line of cases, claim 27
viewed as a whole is not directed to an improvement in the
functioning of technology - rather, the focus of the claim
is on using generic technology to implement the abstract
idea of controlling access to and the functionality of a
user's communication device.  That is, claim 27 does not
seem analogous to *Ancora* because there, a verification
structure was embedded into the computer BIOS, which was not
ordinarily used for software verification, and that improved
security as BIOS is much harder to hack, whereas here
policies for controlling access to functionality that were
used before are apparently now stored elsewhere to prevent
user interference with the policies.  This case feels to me,
and I think during argument Plaintiff largely agreed, like
it is much more akin to using technology as a tool to modify
human behavior rather than being an improvement in the
technical operation of those access controls.  This
conclusion is bolstered by the fact that the prior art
problems highlighted by the specification are largely rooted
in human behavior and not necessarily technological
shortcomings.

I agree with Defendants that the invention in
claim 27 of the '559 Patent is much more akin to the claims
at issue in *ChargePoint* and *Ericsson*.  As I've already
discussed, the claims at issue in those cases were focused

**56**

on using technology to render a human activity easier or
more efficient - enhancing network connectivity of various
entities in *ChargePoint* and limiting access to a
communication platform in *Ericsson*.  Moreover, those claims
were broad and drafted in largely functional terms,
suggesting that the focus of the claims at issue was largely
on a result rather than how to achieve that result - an
indicator that a claim is directed to an abstract idea.
Here, claim 27 of the '559 Patent is drafted broadly, and
the purported security-based improvement is not readily
evident from the claim language.  Rather, viewing the claim
as a whole and against the behavior-based prior art problems
highlighted in the specification, the claim is more focused
on modifying human activity than improving technological
operation.  That is, the focus of claim 27 is not to an
improvement in the relevant technology (security or
otherwise), but rather to a general way of limiting access
to a device using computers as tools.

In sum, I find that claim 27 of the '559 Patent
is directed to the abstract idea of controlling access to
and the functionality of a device.  Although there was some
dispute in the briefing as to representativeness, Plaintiff
agreed today that the claims of the '559 Patent rise and
fall together for purposes of this motion.  That is, there
is no dispute about claim 27 being representative of the

57

12:08:31 1 claims at issue, and I also find that the claims are
12:08:33 2 substantially similar and linked to the same abstract idea.
12:08:38 3 Thus, when viewing the claims as a whole and looking to
12:08:41 4 their purported improvement over the prior art, I find the
12:08:45 5 claims of the '559 Patent to be directed to the abstract
12:08:48 6 idea of controlling access to and the functionality of a
12:08:52 7 device.
12:08:53 8          Turning to step two of the analysis, Defendants
12:08:57 9 argue that the claims of the '559 Patent use only generic
12:09:01 10 computer and networking components performing conventional
12:09:04 11 computer functions and that this is insufficient to confer
12:09:08 12 an inventive concept.
12:09:10 13          Plaintiff asserts that the '559 Patent claims
12:09:11 14 recite an unconventional arrangement of components
12:09:15 15 sufficient to confer and inventive concept to the otherwise
12:09:18 16 abstract idea of controlling access to devices.  In
12:09:21 17 particular, Plaintiff emphasizes the remote storage of
12:09:24 18 access and control policies as something other than well
12:09:28 19 known, routine or conventional.  According to Plaintiff,
12:09:31 20 this unconventional manner of storing policies for access
12:09:36 21 and control away from the device itself improved the
12:09:40 22 security and effectiveness of the control of such devices
12:09:43 23 because it prevented the user from interfering with the
12:09:46 24 control policies.  In support of these arguments, Plaintiff
12:09:49 25 points to allegations in its complaints and the expert

58

12:09:51 1 declaration of Dr. Knutson, which was incorporated by
12:09:56 2 reference into Plaintiff's complaints.  In its complaints,
12:09:59 3 Plaintiff includes a number of allegations that plausibly
12:10:02 4 suggest this remote storage feature was unconventional and
12:10:05 5 offered security advantages over prior methods of
12:10:09 6 controlling access to devices.
12:10:11 7          It is worth noting here that another court in
12:10:14 8 the Central District of California has looked at claim 27 of
12:10:17 9 the '559 Patent through the lens of Section 101 at the
12:10:21 10 motion to dismiss stage and concluded that Plaintiff had
12:10:25 11 eventually pleaded enough to survive at step two of the
12:10:27 12 *Alice / Mayo* inquiry.  That pleading, which was an amended
12:10:32 13 complaint filed in response to dismissal under Section 101,
12:10:36 14 included similar allegations of unconventionality with
12:10:41 15 respect to the remote storage feature and included the
12:10:46 16 Knutson declaration that Plaintiff relies on here.  The
12:10:48 17 California court found those allegations sufficient to
12:10:51 18 survive a motion to dismiss, particularly because the
12:10:54 19 allegations plausibly suggested an unconventional
12:10:57 20 arrangement of claim elements in claim 27 of the '559 Patent
12:11:01 21 - *i.e.*, remote storage of control policies and real-time
12:11:04 22 receipt and enforcement of control decisions.
12:11:07 23          I agree.  Plaintiff's complaints include
12:11:11 24 plausible factual allegations that the claimed invention
12:11:15 25 improves upon the prior conventional systems by remotely

59

12:11:18 1 storing policies for controlling access to the computing
12:11:21 2 device.  The complaints explain how this feature was
12:11:24 3 unconventional and offers specific advantages to the
12:11:29 4 resultant system over the prior systems.  And the complaints
12:11:33 5 incorporate the expert declaration of Dr. Knutson, who
12:11:37 6 explains the unconventionality of this remote storage and
12:11:40 7 the purported benefits that flow from it.  There is nothing
12:11:43 8 in the '559 Patent that contradicts these allegations.
12:11:48 9          Under *Berkheimer*, whether the claim elements and their
12:11:50 10 ordered combination is simply well known, routine and
12:11:54 11 conventional is a question of fact and, in this case,
12:11:57 12 because there are plausible factual allegations as to the
12:12:00 13 unconventionality of the remote storage of access policies,
12:12:03 14 there is a factual dispute that precludes dismissal.
12:12:06 15          I do not agree that Plaintiff's pleading must
12:12:10 16 point to portions of the specification that support its
12:12:13 17 contention that certain limitations are *not* well understood,
12:12:16 18 routine or conventional.  At a motion to dismiss, *Aatrix*
12:12:23 19 requires me to resolve any plausibly alleged factual issues
12:12:27 20 in favor of the patentee at step two.  This means that if
12:12:31 21 Plaintiff includes in its complaint plausible factual
12:12:33 22 allegations that support the conclusion that the claim
12:12:35 23 elements or their ordered combination were not well
12:12:38 24 understood, routine or conventional and there is nothing in
12:12:41 25 the record that I can properly consider on a motion to

60

12:12:43 1 dismiss that contradicts those allegations, then those
12:12:46 2 factual issues must be decided in favor of Plaintiff.
12:12:49 3          Thus, at step two, I cannot conclude that the
12:12:52 4 claim elements or their ordered combination are well known,
12:12:55 5 routine or conventional activities known in the art, thereby
12:13:01 6 failing to confer an inventive concept.  Given the
12:13:04 7 constraints of *Berkheimer* and *Aatrix*, I cannot resolve this
12:13:07 8 question today in light of Plaintiff's plausible factual
12:13:10 9 allegations in the complaints that are uncontradicted by the
12:13:14 10 '559 Patent and anything else I can properly consider at
12:13:16 11 this stage.  Defendants' motions as related to the '559
12:13:21 12 Patent are denied with leave to renew at summary judgment to
12:13:25 13 the extent there are no factual issues precluding resolution
12:13:28 14 of the Section 101 issues at that time.
12:13:31 15          Turning now to the '438 Patent, which is only
12:13:33 16 asserted against Gryphon, I reach the same conclusion for
12:13:37 17 the reasons I just explained for the '559 Patent.  I do so
12:13:40 18 because the parties largely analyze the two patents together
12:13:49 19 under Section 101.  Gryphon essentially lumps the '559 and
12:13:53 20 '438 Patents together in its Section 101 analysis, with no
12:13:53 21 distinctions made at step one of the *Alice / Mayo* inquiry.
12:13:55 22 Plaintiff followed suit, arguing that the claims of the '559
12:13:59 23 and '438 Patents pass step one without making any
12:14:03 24 distinctions between the two patents.  At step two, Gryphon
12:14:07 25 does attempt to argue that there is a meaningful difference

61

12:14:10 1  in the '438 Patent, namely that there is no requirement for
12:14:13 2  remote storage of control policies.  But Plaintiff argues
12:14:16 3  that its expert declaration for the '559 Patent is "equally
12:14:20 4  applicable" to claim 27 of the '438 Patent.  And Plaintiff
12:14:25 5  argued in its briefing and here today that claim 27 of the
12:14:28 6  '438 Patent has the same remote storage requirement as in
12:14:33 7  the '559 Patent.  Gryphon disputes that there is any such
12:14:38 8  requirement in the '438 Patent claims.  Therefore, at least
12:14:42 9  claim construction appears to be necessary before reaching a
12:14:45 10 conclusion at step two for the '438 Patent.  And if I were
12:14:49 11 to resolve this claim construction dispute in Plaintiff's
12:14:52 12 favor, the same factual issues that prevented dismissal for
12:14:55 13 the '559 Patent would also preclude me from dismissing as to
12:14:59 14 the '438 Patent.  Gryphon's counsel conceded that today
12:15:03 15 during the argument.  Therefore, although the claims of the
12:15:07 16 '438 Patent are directed to the same abstract idea as in the
12:15:11 17 '559 Patent, on this record I cannot resolve the question of
12:15:14 18 whether the claim elements or their ordered combination are
12:15:17 19 simply well understood, routine or conventional activities.
12:15:22 20 Gryphon's motion as it relates to the '438 Patent is
12:15:25 21 therefore also denied with leave to renew at summary
12:15:30 22 judgment to the extent there are no factual issues
12:15:32 23 precluding resolution of the Section 101 issues at that
12:15:35 24 time.
12:15:35 25         So that is my ruling on the 101 motions.  Next,

62

12:15:39 1  we have Gryphon's motion to dismiss for failure to state a
12:15:42 2  claim.  Specifically, Gryphon moves to dismiss the claims of
12:15:47 3  direct and indirect infringement as to claim 27 of the '559
12:15:52 4  Patent, which is a method claim and the only asserted claim
12:15:54 5  called out in the Complaint, as well as to claim 27 of the
12:15:59 6  '438 Patent.  Plaintiff accuses "all versions of the Gryphon
12:16:06 7  Mesh WiFi Security Router products and services" of
12:16:10 8  infringing these claims.  I am going to grant this part of
12:16:14 9  the motion.
12:16:14 10        The relevant pleading standard for direct
12:16:17 11 infringement can be found in *Disc Disease*.  I have on
12:16:20 12 several occasions noted that *Disc Disease* sets forth a
12:16:23 13 relatively low threshold for adequately pleading direct
12:16:27 14 infringement.  Here, however, Plaintiff has failed to meet
12:16:30 15 even that relatively low bar.  Nowhere in Plaintiff's
12:16:33 16 complaint is there any allegation that the accused Gryphon
12:16:36 17 products meet each and every limitation of claim 27 (or any
12:16:40 18 other claim) of the two asserted patents.  And there is no
12:16:44 19 attempt to map the accused products onto the limitations of
12:16:48 20 the asserted claims.  Indeed, the only allegation that
12:16:52 21 Plaintiff sets forth is a recitation of the activities from
12:16:56 22 35 U.S.C. § 271(a) purportedly attributable to Gryphon and
12:17:02 23 that the accused products "practice" or "embody" the
12:17:05 24 identified claims.  Plaintiff's allegations have failed to
12:17:08 25 rise to the threshold required by *Disc Disease* and the

63

12:17:11 1  claims of direct infringement will be dismissed.  Plaintiff
12:17:14 2  will be given leave to amend but, to the extent Plaintiff
12:17:18 3  alleges Gryphon's products infringe method claims, those
12:17:23 4  allegations shall be limited to "use" under § 271(a) as the
12:17:28 5  law is clear that making, selling, offering to sell or
12:17:30 6  importing a product cannot directly infringe a method claim.
12:17:34 7          As to induced and contributory infringement, a
12:17:37 8  prerequisite to stating a claim of indirect infringement is
12:17:40 9  that Plaintiff plausibly allege the requisite underlying act
12:17:44 10 of direct infringement has occurred.  Because Plaintiff has
12:17:47 11 failed to adequately plead an underlying act of direct
12:17:52 12 infringement, the claims of indirect infringement must also
12:17:55 13 be dismissed.
12:17:56 14        Gryphon's motion to dismiss as it relates to the
12:18:00 15 *Iqbal / Twombly* issues is therefore granted and Plaintiff
12:18:04 16 shall have 21 days to file an amended pleading.  I will note
12:18:07 17 that Plaintiff's pleading was pretty lacking in many
12:18:10 18 respects.  Prior to filing any amended pleading, Plaintiff
12:18:13 19 should carefully review the elements of each cause of action
12:18:17 20 asserted and include factual allegations to render it
12:18:20 21 plausible that Gryphon is liable for the acts accused.  And
12:18:23 22 because dismissal is warranted on other grounds, I do not
12:18:26 23 reach the issue of failure to plead marking - but as we
12:18:30 24 discussed here today, it is Plaintiff's burden to do so, and
12:18:35 25 Plaintiff should review the relevant law and plead marking

64

12:18:38 1  to the extent it is appropriate in any amended pleading.
12:18:43 2          Those are my rulings on the motions.  Is there
12:18:48 3  anything else that we need to discuss on the phone today?
12:18:57 4          MR. BRAHMA:  Your Honor, this is Charanjit
12:18:59 5  Brahma for Norton.  The one question that I had in light of
12:19:01 6  the Court's rulings, does the Court want the Defendants in
12:19:04 7  these two cases as well as the other more recently filed
12:19:08 8  pending cases in this Court to work on a new consolidated
12:19:13 9  schedule so that there is one Markman hearing?
12:19:17 10         THE COURT:  I do want to have a consolidated
12:19:20 11 schedule so that there is only one Markman hearing, yes,
12:19:23 12 please.
12:19:27 13         MR. BRAHMA:  Thank you.
12:19:30 14         THE COURT:  Anything else?
12:19:34 15         MR. COOKE:  This is Mike Cooke.  Not from the
12:19:34 16 Plaintiff.
12:19:37 17         MR. PAZUNIAK:  And not from Gryphon, Your Honor.
12:19:40 18 Thank you.
12:19:40 19         THE COURT:  All right.  Thank you very much,
12:19:42 20 everyone.  Have a good day.
21          (Motions hearing concluded at 12:19 p.m.)
22
23          I hereby certify the foregoing is a true and
accurate transcript from my stenographic notes in the proceeding.
24
25          /s/ Dale C. Hawkins
            Official Court Reporter
            U.S. District Court

**'**

**'438** [37] - 17:2, 22:1, 30:14, 30:20, 30:22, 30:24, 31:7, 31:18, 32:3, 33:3, 33:8, 34:13, 34:25, 35:3, 35:7, 38:1, 38:7, 38:11, 41:3, 42:7, 46:25, 50:1, 50:15, 51:13, 52:19, 60:15, 60:20, 60:23, 61:1, 61:4, 61:6, 61:8, 61:10, 61:14, 61:16, 61:20, 62:6

**'559** [42] - 5:9, 5:15, 13:9, 16:4, 16:11, 17:2, 18:25, 31:7, 31:18, 38:7, 42:16, 42:21, 46:20, 49:25, 50:14, 50:20, 51:1, 52:11, 52:14, 53:20, 54:7, 54:25, 55:23, 56:9, 56:19, 56:23, 57:5, 57:9, 57:13, 58:9, 58:20, 59:8, 60:10, 60:11, 60:17, 60:19, 60:22, 61:3, 61:7, 61:13, 61:17, 62:3

**/**

**/s** [1] - 64:24

**1**

**1** [3] - 10:20, 11:19, 42:20
**10** [3] - 11:12, 23:2, 35:3
**101** [16] - 5:9, 14:16, 15:5, 20:5, 29:6, 31:8, 37:25, 38:2, 49:16, 58:9, 58:13, 60:14, 60:19, 60:20, 61:23, 61:25
**10:00** [1] - 1:15
**11:50** [2] - 48:24, 48:25
**12** [2] - 12:20, 35:14
**12(b)(6** [2] - 7:19, 50:6
**12(b)(6)** [1] - 36:17
**12:19** [1] - 64:21
**13** [2] - 32:2, 33:14
**1317** [1] - 52:18
**1327** [1] - 41:23
**1343** [1] - 54:12
**14** [1] - 9:8
**19** [2] - 13:24, 42:4

**19-2370(MN** [1] - 1:5
**19-641** [1] - 49:19

**2**

**2** [1] - 11:19
**20** [4] - 28:3, 45:3, 45:16, 48:15
**20-1339(MN** [1] - 1:10
**2018** [1] - 54:13
**2019** [1] - 51:11
**2020** [1] - 52:18
**2021** [1] - 1:15
**21** [4] - 42:20, 43:24, 45:17, 63:16
**22** [11] - 9:23, 10:1, 10:3, 19:17, 19:24, 20:1, 20:6, 20:8, 20:9, 45:21, 45:24
**2207** [1] - 11:3
**23** [9] - 1:15, 8:12, 8:17, 9:4, 19:24, 20:1, 20:7, 45:25, 46:1
**24** [2] - 8:16, 46:4
**27** [46] - 5:15, 10:19, 10:21, 13:9, 13:25, 14:10, 15:3, 17:2, 19:19, 20:9, 20:14, 32:2, 33:13, 34:5, 34:13, 34:25, 35:3, 35:8, 35:10, 35:24, 38:11, 41:3, 41:18, 42:7, 42:18, 45:1, 46:20, 47:1, 50:15, 50:17, 51:2, 54:25, 55:1, 55:6, 55:23, 56:9, 56:15, 56:19, 56:25, 58:8, 58:20, 61:4, 61:5, 62:3, 62:5, 62:17
**271(a** [2] - 62:22, 63:4
**287** [1] - 42:11

**3**

**3** [1] - 30:21
**30** [4] - 35:7, 35:8, 45:3, 48:15
**35** [1] - 62:22

**4**

**4** [3] - 7:17, 10:18, 34:6
**43** [1] - 42:17
**45** [1] - 9:10
**49** [1] - 9:11

**5**

**5** [2] - 10:22, 34:12
**50** [1] - 36:21
**55** [1] - 36:21

**6**

**6** [1] - 19:9
**66** [1] - 11:19

**7**

**7** [1] - 41:18
**7,899,438** [1] - 49:24
**759** [1] - 51:11

**8**

**8** [1] - 34:12
**8,667,559** [1] - 49:23
**844** [1] - 1:17

**9**

**9** [3] - 11:9, 11:18, 11:19
**908** [1] - 54:12
**920** [1] - 51:11
**955** [1] - 52:18

**A**

**a.m** [1] - 1:15
**Aatrix** [3] - 13:17, 59:18, 60:7
**ability** [6] - 9:14, 9:19, 18:14, 21:11, 21:20, 51:21
**able** [5] - 7:2, 16:13, 23:18, 39:15, 48:7
**absolutely** [1] - 44:14
**abstract** [36] - 11:10, 12:4, 12:8, 13:14, 27:21, 29:23, 31:17, 34:7, 34:10, 35:1, 35:19, 35:21, 36:8, 36:24, 37:2, 37:4, 37:10, 37:17, 41:22, 50:21, 50:24, 51:1, 52:4, 52:20, 53:4, 53:10, 54:10, 55:4, 56:8, 56:20, 57:2, 57:5, 57:16, 61:16
**abstraction** [1] - 35:9
**accept** [5] - 7:20, 32:22, 36:4, 36:12, 36:17
**accepted** [3] - 7:22, 15:19, 15:23

**accepting** [1] - 15:18
**accepts** [1] - 6:3
**access** [50] - 7:2, 7:13, 8:6, 8:10, 10:7, 11:11, 12:18, 12:23, 13:1, 13:7, 20:10, 21:21, 22:8, 27:6, 27:21, 29:22, 30:3, 34:16, 41:19, 41:22, 42:1, 50:2, 50:22, 50:24, 51:2, 51:6, 52:23, 52:25, 53:1, 53:2, 53:5, 53:6, 53:9, 53:10, 53:13, 53:16, 54:22, 55:5, 55:11, 55:17, 56:3, 56:17, 56:20, 57:6, 57:16, 57:18, 57:20, 58:6, 59:1, 59:13
**accessed** [3] - 5:22, 29:18, 40:24
**accesses** [1] - 27:13
**accessible** [1] - 6:21
**accessing** [1] - 19:20
**accomplished** [1] - 6:15
**according** [5] - 6:18, 11:22, 29:11, 53:11, 57:19
**accounts** [1] - 14:7
**accurate** [1] - 64:23
**accused** [9] - 43:16, 43:18, 44:25, 45:4, 48:16, 62:16, 62:19, 62:23, 63:21
**accuses** [1] - 62:6
**achieve** [3] - 23:18, 24:3, 56:7
**achieved** [3] - 18:22, 23:4, 24:16
**acknowledged** [3] - 11:18, 29:23, 30:12
**acknowledges** [2] - 6:24, 11:13
**act** [2] - 63:9, 63:11
**action** [2] - 53:12, 63:19
**activities** [4] - 23:24, 60:5, 61:19, 62:21
**activity** [6] - 7:8, 11:18, 22:19, 51:8, 56:1, 56:14
**acts** [1] - 63:21
**actual** [4] - 9:11, 13:10, 33:13, 43:16
**add** [1] - 41:10
**additional** [1] - 49:11
**address** [6] - 32:2, 32:19, 41:13, 44:20, 48:7, 51:14

**addressed** [1] - 52:19
**adds** [2] - 35:8, 35:9
**adequately** [4] - 47:18, 50:9, 62:13, 63:11
**administrator** [9] - 7:7, 9:14, 9:18, 9:19, 10:14, 21:8, 21:9
**administrators** [1] - 29:17
**admitted** [1] - 29:20
**adopt** [1] - 49:20
**advantage** [4] - 10:7, 10:11, 39:3, 39:15
**advantages** [4] - 10:16, 58:5, 59:3
**affect** [1] - 10:24
**affirmatively** [1] - 47:11
**ago** [1] - 26:1
**agree** [9] - 13:13, 15:7, 17:1, 32:9, 32:17, 38:6, 55:22, 58:23, 59:15
**agreed** [2] - 55:14, 56:23
**ahead** [6] - 10:25, 11:7, 17:6, 18:5, 18:23, 26:15
**akin** [2] - 55:15, 55:23
**Alice** [9] - 29:24, 35:16, 58:12, 60:21
**allegation** [6] - 25:9, 25:11, 25:13, 44:25, 62:16, 62:20
**allegations** [21] - 7:20, 7:22, 15:19, 15:21, 29:9, 36:18, 41:12, 57:25, 58:3, 58:14, 58:17, 58:19, 58:24, 59:8, 59:12, 59:22, 60:1, 60:9, 62:24, 63:4, 63:20
**allege** [1] - 63:9
**alleged** [1] - 59:19
**alleges** [2] - 7:11, 63:3
**allow** [3] - 15:22, 29:8, 29:17
**allowed** [5] - 12:2, 12:17, 51:18, 51:24, 52:1
**allowing** [2] - 40:25, 51:22
**allows** [2] - 19:5, 19:18
**almost** [1] - 43:15
**amend** [2] - 47:13, 63:2
**amended** [4] - 58:12, 63:16, 63:18, 64:1

**America** [1] - 54:12
**amount** [1] - 43:3
**analog** [1] - 24:9
**analogous** [6] - 23:13, 23:14, 23:20, 49:12, 51:12, 55:7
**analogy** [1] - 39:5
**analysis** [8] - 11:9, 20:5, 31:8, 31:11, 35:13, 50:18, 57:8, 60:20
**analyze** [1] - 60:18
**Ancora** [7] - 22:5, 23:3, 23:14, 24:2, 54:11, 55:1, 55:7
**anyway** [1] - 7:5
**apart** [1] - 19:4
**apologize** [2] - 3:5, 3:9
**app** [3] - 27:4, 27:5, 45:23
**apparatus** [1] - 46:25
**appear** [1] - 52:14
**APPEARANCES** [2] - 1:22, 2:1
**applicable** [2] - 49:16, 61:4
**applied** [2] - 12:15, 54:4
**applies** [2] - 30:2, 32:22
**apply** [3] - 19:15, 33:24, 43:22
**applying** [2] - 13:6, 50:11
**appreciate** [1] - 30:12
**appropriate** [1] - 64:1
**architecture** [12] - 6:1, 6:6, 7:15, 8:20, 10:6, 14:9, 14:12, 20:18, 29:14, 32:4, 36:3, 39:23
**Arctic** [1] - 42:15
**argue** [3] - 52:18, 57:9, 60:25
**argued** [3] - 50:21, 50:25, 61:5
**argues** [3] - 53:19, 53:25, 61:2
**arguing** [4] - 11:25, 50:6, 51:13, 60:22
**argument** [15] - 3:25, 5:8, 16:25, 29:19, 32:7, 36:1, 38:20, 48:22, 49:13, 50:11, 51:5, 51:10, 55:14, 61:15
**arguments** [7] - 4:12, 7:25, 38:19, 49:4, 49:14, 50:25, 57:24

**ARONOFF** [1] - 2:14
**arranged** [1] - 13:22
**arrangement** [9] - 19:10, 19:12, 24:17, 25:5, 25:6, 25:22, 30:7, 57:14, 58:20
**arrangements** [3] - 22:10, 26:13, 40:1
**arrive** [1] - 19:6
**art** [8] - 7:4, 43:9, 51:17, 54:21, 55:18, 56:12, 57:4, 60:5
**articulations** [1] - 51:4
**aspect** [3] - 17:9, 33:6, 33:7
**aspects** [2] - 18:21, 31:14
**assert** [4] - 20:6, 44:3
**asserted** [13] - 6:20, 9:25, 10:1, 42:7, 49:23, 49:25, 50:6, 50:16, 60:16, 62:4, 62:18, 62:20, 63:20
**asserting** [2] - 20:6, 42:18
**asserts** [1] - 57:13
**assigns** [2] - 7:14, 14:6
**associated** [1] - 46:3
**assume** [3] - 16:4, 20:9, 33:5
**attempt** [2] - 60:25, 62:19
**attempting** [1] - 54:6
**attributable** [1] - 62:22
**attributed** [1] - 8:19
**audio** [2] - 3:10, 17:10
**authenticating** [1] - 23:8
**authentication** [2] - 28:15, 29:22
**available** [1] - 39:3
**avoiding** [1] - 54:21
**aware** [3] - 20:5, 48:4, 48:10

---

## B

**backdrop** [1] - 52:3
**bar** [1] - 62:15
**Bascom** [19] - 11:22, 11:23, 12:2, 12:7, 13:24, 14:2, 24:9, 24:10, 24:11, 24:14, 24:25, 25:3, 30:6, 33:3, 39:9, 39:19, 40:12
**based** [12] - 11:11, 13:1, 20:13, 21:23,

41:7, 50:13, 50:22, 51:2, 53:23, 54:3, 56:10, 56:12
**basic** [1] - 5:23
**basics** [1] - 13:25
**basis** [1] - 50:9
**became** [1] - 48:3
**BEFORE** [1] - 1:20
**begin** [2] - 4:22, 5:14
**beginning** [1] - 7:18
**behalf** [2] - 5:7, 44:20
**behavior** [4] - 11:14, 55:16, 55:20, 56:12
**behavior-based** [1] - 56:12
**benefit** [4] - 24:16, 25:2, 25:22, 38:24
**benefits** [4] - 19:13, 20:23, 52:13, 59:7
**BENESCH** [1] - 2:3
**Benesch** [2] - 3:21, 5:7
**Berkheimer** [5] - 13:17, 14:21, 15:4, 59:9, 60:7
**best** [1] - 39:5
**better** [3] - 14:16, 17:15, 18:17
**between** [3] - 31:19, 35:5, 60:24
**BIOS** [8] - 22:15, 23:7, 23:10, 23:11, 30:9, 54:15, 55:8, 55:10
**bit** [1] - 6:6
**body** [1] - 39:25
**bolstered** [1] - 55:18
**BRAHMA** [16] - 2:15, 5:6, 5:14, 8:3, 9:1, 9:6, 9:23, 11:8, 12:11, 13:18, 14:24, 16:3, 16:6, 28:22, 64:4, 64:13
**Brahma** [4] - 3:23, 5:7, 28:20, 64:5
**breadth** [3] - 29:12, 52:8, 52:11
**break** [1] - 48:23
**breath** [1] - 4:16
**brief** [3] - 4:9, 5:15, 49:3
**briefing** [8] - 30:24, 31:9, 45:2, 49:10, 50:21, 51:12, 56:22, 61:5
**briefly** [4] - 5:16, 22:5, 23:1, 40:4
**briefs** [1] - 4:4
**bring** [1] - 28:16
**bringing** [1] - 28:12
**broad** [4] - 5:18,

14:11, 15:11, 56:5
**broadcasting** [1] - 4:19
**broadly** [4] - 7:16, 29:9, 29:10, 56:9
**bullet** [1] - 28:5
**burden** [3] - 35:4, 47:5, 63:24
**business** [1] - 52:10
**businesses** [1] - 51:19
**BY** [8] - 1:24, 2:3, 2:3, 2:8, 2:10, 2:14, 2:15, 2:15

---

## C

**C.A** [2] - 1:5, 1:10
**cabinet** [1] - 28:18
**California** [3] - 26:2, 58:8, 58:17
**cannot** [5] - 35:22, 60:3, 60:7, 61:17, 63:6
**capture** [1] - 28:5
**captured** [1] - 28:3
**CAPUZZI** [2] - 2:14, 3:20
**Capuzzi** [1] - 3:21
**carefully** [1] - 63:19
**cars** [2] - 40:8, 40:9
**case** [43] - 3:16, 11:22, 11:23, 12:3, 12:4, 12:12, 14:17, 14:20, 15:2, 15:4, 15:8, 15:15, 22:4, 22:5, 23:1, 25:7, 26:2, 26:13, 26:17, 26:23, 30:23, 31:15, 32:4, 32:6, 34:11, 35:6, 35:14, 37:13, 39:1, 42:23, 43:4, 43:5, 43:6, 43:11, 43:17, 45:22, 49:12, 51:12, 52:22, 55:13, 59:11
**cases** [14] - 3:21, 4:1, 12:1, 13:17, 13:18, 13:21, 26:24, 43:12, 43:15, 54:7, 55:1, 55:25, 64:7, 64:8
**Cat** [1] - 42:15
**Cellspin** [1] - 39:1
**Central** [1] - 58:8
**certain** [10] - 7:20, 8:1, 19:13, 22:9, 27:4, 27:9, 31:14, 54:1, 54:8, 59:17
**certainly** [16] - 6:11, 7:7, 9:20, 15:20, 16:6, 19:2, 21:19,

23:1, 40:1, 45:14, 45:20, 46:19, 46:21, 46:23, 47:15, 47:17
**certify** [1] - 64:23
**cetera** [2] - 33:4, 41:20
**challenges** [1] - 4:2
**change** [2] - 29:8, 29:10
**changed** [1] - 20:24
**changes** [1] - 13:10
**changing** [4] - 13:3, 20:11, 21:1, 23:21
**CHARANJIT** [1] - 2:15
**Charanjit** [3] - 3:22, 5:7, 64:4
**ChargePoint** [10] - 12:13, 12:20, 40:3, 40:6, 51:10, 51:15, 52:12, 55:24, 56:3
**chargePoint** [1] - 12:24
**charges** [2] - 40:8
**charging** [8] - 12:15, 12:16, 12:18, 12:25, 13:7, 51:15, 51:25
**chart** [1] - 45:15
**child** [2] - 11:17, 21:12
**children** [2] - 11:16, 21:5
**Cir** [3] - 51:11, 52:18, 54:13
**Circuit** [7] - 7:21, 37:9, 39:2, 52:3, 52:6, 53:3, 54:8, 54:16
**Circuit's** [2] - 35:15, 42:15
**cite** [6] - 26:13, 26:15, 26:16, 28:9, 35:6, 35:14
**cited** [3] - 26:18, 39:2, 51:10
**Claim** [2] - 8:12, 8:17
**claim** [143] - 5:15, 5:18, 6:14, 8:9, 8:16, 9:3, 9:23, 10:1, 10:3, 10:18, 10:20, 10:21, 10:22, 12:20, 12:21, 12:22, 13:9, 13:25, 14:10, 14:17, 14:19, 14:20, 14:22, 15:2, 15:3, 15:8, 17:2, 19:17, 19:19, 19:24, 20:5, 20:6, 20:8, 20:9, 20:14, 21:22, 21:24, 21:25, 25:14, 30:12, 31:23, 32:2, 32:10, 32:15, 32:17, 32:23, 33:2, 33:10, 33:12, 33:13, 33:16, 33:20, 33:22, 33:23,

34:3, 34:5, 34:7, 34:12, 34:13, 34:17, 34:18, 34:19, 34:20, 34:25, 35:3, 35:7, 35:8, 35:10, 35:18, 35:24, 36:4, 37:14, 38:11, 38:14, 39:18, 39:19, 39:25, 41:3, 41:8, 41:18, 42:7, 42:8, 42:18, 42:23, 43:8, 44:4, 44:15, 45:1, 45:13, 45:14, 45:24, 46:5, 46:7, 46:20, 47:1, 48:8, 48:18, 50:1, 50:9, 50:15, 50:17, 51:2, 51:3, 54:25, 55:1, 55:3, 55:6, 55:23, 56:8, 56:9, 56:11, 56:13, 56:15, 56:19, 56:25, 58:8, 58:20, 59:9, 59:22, 60:4, 61:4, 61:5, 61:9, 61:11, 61:18, 62:2, 62:3, 62:4, 62:5, 62:17, 62:18, 63:6, 63:8
**claimed** [8] - 6:9, 37:7, 51:1, 51:24, 52:7, 53:19, 53:25, 58:24
**claiming** [1] - 6:22
**claims** [104] - 6:13, 6:18, 6:19, 6:20, 7:9, 7:12, 7:16, 8:7, 9:25, 10:1, 10:19, 10:22, 11:9, 12:13, 13:5, 13:24, 14:8, 15:11, 15:15, 15:22, 17:4, 19:1, 19:3, 19:7, 19:17, 20:1, 20:25, 25:12, 25:13, 28:3, 28:4, 28:5, 28:24, 29:4, 29:5, 29:8, 29:10, 29:11, 29:25, 30:8, 30:11, 31:22, 32:23, 33:3, 33:18, 34:22, 35:5, 37:6, 37:14, 37:15, 39:4, 42:20, 42:21, 42:23, 45:1, 46:9, 46:15, 46:25, 50:6, 50:8, 50:15, 50:17, 51:5, 52:4, 52:9, 52:11, 52:15, 52:19, 52:21, 52:22, 53:4, 53:7, 53:9, 53:11, 53:14, 53:15, 53:22, 54:6, 54:13, 54:16, 55:23, 55:25, 56:4, 56:6, 56:23, 57:1, 57:3, 57:5, 57:9, 57:13,

60:22, 61:8, 61:15, 62:2, 62:8, 62:20, 62:24, 63:1, 63:3, 63:12
**clear** [6] - 4:8, 15:10, 32:21, 47:4, 47:20, 63:5
**clearer** [1] - 42:17
**clearly** [3] - 18:10, 43:17, 50:23
**Cleveland** [1] - 33:4
**client** [3] - 14:4, 45:7, 47:15
**Clinic** [1] - 33:4
**close** [1] - 48:24
**closer** [2] - 17:22, 24:1
**closest** [3] - 11:22, 12:12, 24:9
**co** [1] - 3:17
**co-counsel** [1] - 3:17
**coined** [1] - 43:10
**collapsed** [1] - 27:18
**colleagues** [1] - 3:22
**column** [3] - 9:8, 11:19
**combination** [4] - 59:10, 59:23, 60:4, 61:18
**combined** [2] - 23:12, 53:1
**coming** [2] - 18:10, 29:16
**comment** [1] - 41:17
**comments** [2] - 41:7, 41:11
**common** [1] - 27:2
**commonality** [2] - 31:16, 31:17
**communicates** [1] - 46:1
**Communication** [1] - 52:17
**communication** [16] - 6:2, 14:1, 33:15, 33:17, 34:15, 37:17, 41:6, 50:2, 50:3, 51:18, 51:20, 52:5, 53:17, 53:24, 55:6, 56:4
**communications** [4] - 5:22, 33:25, 40:22, 40:23
**companies** [2] - 51:18, 52:1
**compare** [4] - 14:16, 14:19, 15:7, 34:12
**comparing** [1] - 10:18
**comparison** [4] - 12:20, 13:23, 14:2,

14:23
**Complaint** [1] - 62:5
**complaint** [17] - 25:10, 26:7, 29:10, 36:12, 36:19, 36:21, 42:19, 43:25, 44:2, 44:24, 45:11, 45:13, 47:22, 48:4, 58:13, 59:21, 62:16
**complaints** [8] - 42:10, 57:25, 58:2, 58:23, 59:2, 59:4, 60:9
**completely** [1] - 31:11
**complex** [1] - 43:6
**compliance** [1] - 42:13
**complied** [3] - 42:5, 47:9
**comply** [2] - 42:12, 47:16
**component** [2] - 19:10, 27:7
**components** [13] - 5:23, 13:4, 13:21, 13:22, 27:16, 30:7, 40:13, 51:9, 52:24, 53:12, 54:2, 57:10, 57:14
**comprises** [1] - 34:8
**computer** [17] - 3:10, 13:4, 13:10, 14:5, 23:3, 24:3, 24:12, 27:6, 36:10, 51:8, 53:12, 53:18, 54:18, 55:8, 57:10, 57:11
**computer 's** [1] - 54:20
**computerized** [1] - 11:14
**computers** [7] - 24:12, 39:12, 53:21, 54:9, 54:14, 56:18
**computing** [8] - 5:20, 5:21, 6:5, 10:5, 20:17, 20:20, 36:25, 59:1
**conceded** [1] - 61:14
**concept** [18] - 6:23, 15:3, 15:13, 15:17, 25:5, 28:2, 28:3, 35:18, 35:23, 36:7, 36:13, 36:20, 37:3, 37:14, 41:21, 57:12, 57:15, 60:6
**concepts** [4] - 29:24, 35:22, 37:2, 37:7
**concerned** [2] - 40:16, 43:2
**concession** [1] - 12:9
**conclude** [1] - 60:3

**concluded** [2] - 58:10, 64:21
**conclusion** [5] - 52:6, 55:18, 59:22, 60:16, 61:10
**conclusory** [2] - 36:15, 36:18
**confer** [3] - 57:11, 57:15, 60:6
**configuration** [1] - 54:1
**configured** [1] - 9:9
**connect** [1] - 45:23
**connected** [2] - 45:23, 51:15
**connecting** [1] - 24:12
**connectivity** [1] - 56:2
**consider** [2] - 59:25, 60:10
**considered** [5] - 31:3, 31:5, 32:6, 43:12, 49:14
**consolidated** [2] - 64:8, 64:10
**constraints** [1] - 60:7
**construction** [14] - 31:24, 32:10, 32:15, 32:18, 32:23, 33:2, 33:11, 33:12, 33:23, 36:5, 38:14, 41:8, 61:9, 61:11
**Cont'd** [1] - 2:1
**content** [1] - 10:23
**contention** [2] - 52:6, 59:17
**context** [1] - 21:4
**continuation** [2] - 19:25, 50:1
**continue** [1] - 11:7
**contradict** [2] - 7:23, 15:21
**contradicted** [1] - 8:2
**contradicts** [3] - 9:5, 59:8, 60:1
**contrary** [2] - 38:25, 39:1
**contributory** [5] - 44:1, 44:4, 44:6, 46:22, 63:7
**control** [14] - 12:15, 29:18, 40:21, 45:9, 53:8, 53:24, 54:3, 57:18, 57:21, 57:22, 57:24, 58:21, 58:22, 61:2
**controlled** [1] - 54:5
**controller** [2] - 52:25, 53:2
**controlling** [20] - 12:14, 12:25, 27:13,

27:21, 34:16, 41:19, 41:21, 42:1, 50:2, 50:24, 52:23, 53:4, 53:10, 55:5, 55:11, 56:20, 57:6, 57:16, 58:6, 59:1
**controls** [3] - 19:10, 30:13, 55:17
**conventional** [12] - 7:6, 25:6, 51:9, 53:18, 57:10, 57:19, 58:25, 59:11, 59:18, 59:24, 60:5, 61:19
**conveying** [1] - 10:15
**conveys** [1] - 10:7
**COOKE** [37] - 2:2, 2:3, 2:25, 3:3, 3:7, 4:23, 5:3, 16:12, 16:16, 16:18, 16:24, 17:5, 17:7, 17:14, 17:17, 17:21, 17:24, 18:2, 18:6, 18:11, 18:17, 18:20, 19:21, 20:12, 20:16, 21:3, 22:25, 23:25, 26:11, 26:20, 28:18, 38:4, 38:8, 38:13, 38:16, 38:18, 64:15
**Cooke** [8] - 3:3, 3:11, 3:12, 4:23, 18:4, 30:12, 38:6, 64:15
**Cooke's** [1] - 29:19
**copies** [1] - 4:25
**COPLAN** [1] - 2:14
**CORBY** [1] - 2:3
**Corby** [2] - 3:11, 44:19
**correct** [6] - 4:11, 5:12, 16:9, 17:5, 46:10, 48:9
**correctly** [1] - 14:25
**correlate** [1] - 46:11
**correlation** [1] - 48:17
**costly** [1] - 54:22
**counsel** [10] - 2:20, 2:22, 3:17, 4:24, 30:25, 32:5, 38:4, 39:6, 41:24, 61:14
**Counsel** [3] - 2:5, 2:11, 2:16
**couple** [1] - 24:7, 30:22, 38:21
**coupled** [1] - 14:4
**course** [2] - 37:8, 42:14
**COURT** [78] - 1:1, 2:20, 3:2, 3:8, 3:14, 3:19, 3:24, 5:2, 5:4, 5:13, 7:24, 8:25, 9:2, 9:22, 11:1, 11:24, 13:13, 14:14, 16:1,

16:4, 16:10, 16:15, 16:17, 16:21, 17:1, 17:6, 17:10, 17:16, 17:18, 17:23, 18:1, 18:3, 18:8, 18:13, 18:19, 19:16, 20:8, 20:15, 20:21, 22:16, 23:13, 26:4, 26:17, 28:17, 28:19, 30:14, 30:18, 31:6, 31:21, 32:9, 32:14, 32:25, 37:19, 37:24, 38:6, 38:10, 38:14, 38:17, 41:14, 44:11, 44:18, 44:22, 44:24, 45:10, 46:5, 46:16, 47:4, 47:7, 47:12, 47:19, 47:24, 48:8, 48:12, 48:20, 49:4, 64:10, 64:14, 64:19

court [9] - 22:4, 23:9, 27:13, 27:15, 32:6, 32:22, 53:11, 58:7, 58:17
Court [12] - 1:20, 7:20, 15:23, 28:23, 30:19, 36:17, 42:8, 64:6, 64:8, 64:25, 64:25
Court's [3] - 15:10, 15:25, 64:6
court's [2] - 35:17, 53:7
cover [2] - 7:9, 11:10
cracking [1] - 17:25
create [1] - 15:12
created [2] - 10:9, 30:3
creates [1] - 13:22
creating [1] - 8:23
creation [1] - 6:25
critical [4] - 35:16, 35:17, 35:21, 36:14
current [1] - 48:8
cursers [1] - 24:18
cursor [3] - 27:9, 27:20, 28:2
custodial [2] - 30:23, 31:15
customizable [4] - 24:13, 24:25, 25:1, 39:11
cyber [1] - 10:16

**D**

Dale [1] - 64:24
damaged [1] - 44:4
damages [13] - 42:22, 43:25, 44:5, 44:6, 44:14, 44:15, 46:18,

46:24, 47:1, 47:21, 47:23, 48:7
data [1] - 40:23
Data [1] - 54:17
days [1] - 63:16
deal [2] - 37:25
dealt [3] - 12:13, 23:3, 31:3
decide [1] - 32:10
decided [2] - 43:15, 60:2
decider [6] - 33:15, 34:8, 34:9, 34:17, 37:16, 43:8
decision [6] - 6:4, 6:16, 13:6, 21:23, 30:5, 34:18, 35:15, 42:15, 53:1
decisions [3] - 6:15, 49:10, 58:22
deck [2] - 4:25, 5:12
declaration [10] - 25:25, 26:1, 26:6, 29:7, 30:25, 31:3, 58:1, 58:16, 59:5, 61:3
declarations [2] - 4:4, 26:9
deemed [1] - 27:17
Defendant [4] - 1:7, 1:13, 2:11, 2:16
defendants [1] - 18:25
Defendants [8] - 5:5, 12:3, 50:5, 50:25, 51:10, 55:22, 57:8, 64:6
Defendants ' [3] - 51:5, 51:7, 52:10
defendants ' [1] - 60:11
deficiencies [1] - 42:3
defined [1] - 6:8
definition [1] - 20:2
DELAWARE [1] - 1:2
Delaware [1] - 1:18
delay [1] - 4:13
deleting [1] - 10:8
deletion [2] - 8:21, 19:14
demands [3] - 43:25, 51:22, 52:2
demonstrate [1] - 35:5
demonstrates [1] - 21:25
denied [2] - 60:12, 61:21
deny [1] - 50:12
dependent [1] - 10:22
describe [6] - 15:15, 19:3, 19:4, 45:3,

45:4, 45:12
described [6] - 5:24, 10:10, 14:10, 43:20, 51:23, 54:24
describes [2] - 45:17, 45:18
description [6] - 6:18, 6:19, 10:12, 46:11, 46:12, 46:13
descriptions [2] - 36:15, 36:18
descriptor [1] - 46:6
detail [2] - 6:12, 14:9
determination [1] - 30:13
determine [4] - 7:1, 22:8, 30:3, 53:2
determining [1] - 53:5
device [54] - 5:20, 5:21, 5:22, 6:1, 6:2, 6:5, 6:21, 7:2, 7:7, 8:6, 10:2, 10:5, 12:23, 13:7, 14:2, 20:17, 20:18, 20:20, 21:16, 21:21, 22:8, 23:17, 23:19, 27:5, 27:11, 28:9, 28:14, 28:16, 29:4, 30:1, 30:5, 33:15, 34:15, 35:10, 39:24, 40:21, 41:6, 41:7, 45:9, 46:1, 46:2, 50:3, 50:4, 51:7, 52:5, 52:24, 53:17, 54:6, 55:6, 56:18, 56:21, 57:7, 57:21, 59:2
devices [13] - 6:9, 11:16, 33:15, 34:1, 36:25, 45:7, 46:3, 50:24, 53:24, 54:3, 57:16, 57:22, 58:6
difference [2] - 37:8, 60:25
differences [4] - 31:19, 33:22, 35:5, 43:21
different [29] - 9:6, 10:15, 10:22, 10:23, 14:13, 14:17, 14:20, 15:9, 18:21, 22:16, 22:23, 23:22, 25:6, 25:22, 28:8, 28:25, 29:18, 29:25, 31:4, 39:13, 39:18, 40:11, 40:15, 40:22, 41:5, 41:6, 43:11, 45:20, 53:15
differentiate [1] - 14:22
difficult [2] - 15:7,

31:10
diplomatic [1] - 26:22
direct [10] - 34:14, 41:12, 43:1, 44:3, 62:3, 62:10, 62:13, 63:1, 63:10, 63:11
directed [18] - 11:10, 12:22, 27:21, 30:11, 50:7, 51:6, 52:4, 52:20, 52:22, 53:4, 53:22, 54:13, 54:17, 55:2, 56:8, 56:20, 57:5, 61:16
directly [2] - 46:11, 63:6
disagree [1] - 32:13
disagreeing [1] - 32:21
Disc [9] - 43:2, 43:5, 43:6, 43:11, 43:14, 43:22, 62:11, 62:12, 62:25
discern [1] - 18:15
discuss [2] - 4:21, 64:3
discussed [5] - 15:20, 21:23, 35:25, 55:25, 63:24
discussing [1] - 49:12
discussion [4] - 5:17, 9:16, 9:17, 14:8
Disease [9] - 43:3, 43:5, 43:7, 43:12, 43:14, 43:22, 62:11, 62:12, 62:25
dismiss [16] - 4:1, 7:19, 15:23, 17:3, 26:7, 32:16, 50:5, 50:8, 58:10, 58:18, 59:18, 60:1, 62:1, 62:2, 63:14
dismissal [4] - 58:13, 59:14, 61:12, 63:22
dismissed [3] - 13:15, 63:1, 63:13
dismissing [1] - 61:13
dispute [5] - 15:18, 56:22, 56:25, 59:14, 61:11
disputes [1] - 61:7
distinction [1] - 31:15
distinctions [3] - 31:8, 60:21, 60:24
distinguished [2] - 13:19, 34:17
distributed [6] - 5:25, 12:25, 14:9, 29:13, 32:4, 36:2
DISTRICT [2] - 1:1, 1:2
district [1] - 46:23

District [3] - 1:20, 58:8, 64:25
done [1] - 53:13
down [3] - 25:9, 30:5, 38:4
downloaded [1] - 10:3
downloading [1] - 54:23
Dr [3] - 26:1, 58:1, 59:5
drafted [4] - 53:7, 53:17, 56:5, 56:9
drew [1] - 31:14
drivers [2] - 51:19, 51:24
during [4] - 31:1, 48:21, 55:14, 61:15
dynamic [1] - 41:1

**E**

e.g [3] - 52:14, 52:23, 54:21
easier [1] - 56:1
easily [1] - 54:23
easy [3] - 27:20, 27:22, 27:24
effectiveness [2] - 53:23, 57:22
effectuate [1] - 54:2
efficient [2] - 22:20, 56:2
efficiently [1] - 51:19
effort [1] - 50:25
eight [1] - 19:25
either [3] - 6:3, 42:5, 42:11
electric [2] - 12:14, 51:16
electricity [5] - 12:18, 13:1, 51:20, 51:22, 52:2
electronic [1] - 40:8
element [6] - 43:20, 43:21, 45:12, 45:15, 46:11
element -by-element [1] - 45:15
elements [15] - 5:19, 6:7, 14:6, 24:14, 35:17, 39:19, 41:3, 45:5, 48:18, 58:20, 59:9, 59:23, 60:4, 61:18, 63:19
eligibility [2] - 41:18, 50:13
elsewhere [2] - 21:19, 55:12
embedded [1] - 55:8
embedding [1] - 23:16

embodies [1] - 34:25
embodiments [4] -
6:12, 8:5, 8:8, 9:4
embody [1] - 62:23
emphasize [2] - 28:23,
49:7
emphasizes [2] - 7:18,
57:17
employee [1] - 21:12
employees [1] - 11:16
employer [2] - 10:15,
21:9
employer/employees
[1] - 21:6
employers [1] - 11:15
encompasses [1] -
18:6
end [3] - 17:19, 24:19,
29:20
ended [1] - 42:19
Enfish [5] - 12:1,
22:21, 54:7, 54:17,
55:1
enforcement [1] -
58:22
enforcer [6] - 33:16,
34:9, 34:10, 34:19,
37:16, 43:8
enforcing [1] - 25:20
Engines [1] - 54:17
enhancing [1] - 56:2
entire [2] - 21:4, 50:11
entities [1] - 56:3
entitled [1] - 46:23
entity [2] - 34:18, 53:1
environment [2] -
39:21, 40:18
equally [1] - 61:3
Ericsson [22] - 26:17,
26:24, 27:1, 27:3,
27:23, 28:7, 32:4,
32:13, 32:22, 34:11,
34:12, 34:15, 34:20,
41:18, 41:23, 41:25,
51:14, 52:17, 52:22,
55:24, 56:4
Ericsson's [2] - 34:18,
34:21
error [2] - 39:22, 39:23
ESQ [8] - 1:24, 2:3,
2:3, 2:8, 2:10, 2:14,
2:15, 2:15
essentially [3] - 31:7,
51:5, 60:19
establish [1] - 46:2
established [5] - 8:14,
8:18, 58:24, 9:9, 9:21
establishing [1] - 8:23
et [2] - 33:4, 41:20
etc [1] - 54:17

eventually [1] - 58:11
evident [1] - 56:11
exactly [4] - 7:8,
36:11, 41:19, 43:4
example [12] - 8:5,
8:11, 9:8, 11:17,
21:12, 21:14, 21:16,
22:13, 27:16, 31:15,
31:19, 40:17
examples [3] - 8:4,
8:19, 9:2
except [1] - 37:16
exclude [1] - 8:8
excuse [2] - 8:15,
25:11
execution [1] - 54:14
exemption [1] - 42:6
existed [5] - 7:1, 7:4,
39:9, 39:20, 39:21
existing [3] - 23:4,
23:7, 23:10, 24:14,
39:12, 39:15, 40:12,
40:13, 40:17
experienced [1] -
18:12
expert [8] - 25:25,
26:5, 26:9, 29:7,
29:8, 57:25, 59:5,
61:3
explain [2] - 41:3, 59:2
explained [2] - 51:17,
60:17
explains [1] - 59:6
explicitly [1] - 10:1
Express [3] - 42:8,
42:14, 42:24
extent [7] - 14:18,
15:21, 50:12, 60:13,
61:22, 63:2, 64:1
extremely [1] - 28:7
ey [1] - 40:9

## F

F.3d [3] - 51:11, 52:18,
54:12
facilitating [1] - 52:10
fact [10] - 23:11,
25:14, 26:8, 26:24,
35:20, 36:13, 36:20,
52:9, 55:18, 59:11
facts [3] - 35:16, 43:3,
48:2
factual [19] - 14:21,
14:22, 15:1, 15:12,
15:17, 24:9, 36:17,
39:5, 58:24, 59:12,
59:14, 59:19, 59:21,
60:2, 60:8, 60:13,
61:12, 61:22, 63:20

failed [5] - 28:4, 50:9,
62:14, 62:24, 63:11
failing [1] - 60:6
failure [2] - 62:1,
63:23
fairly [2] - 43:7, 43:19
fall [3] - 41:25, 54:9,
56:24
falls [1] - 38:7
far [4] - 35:7, 40:10,
41:2, 43:1
FARNAN [1] - 1:24
favor [5] - 32:11, 33:5,
59:20, 60:2, 61:12
feature [14] - 9:13,
17:8, 18:6, 18:20,
19:5, 24:25, 27:4,
27:5, 27:6, 27:17,
27:18, 58:4, 58:15,
59:2
features [7] - 9:9,
21:7, 22:9, 22:12,
23:5, 23:18, 39:24
February [1] - 1:15
Fed [3] - 51:11, 52:18,
54:12
Federal [10] - 7:21,
35:14, 37:9, 39:2,
42:15, 52:3, 52:6,
53:3, 54:7, 54:16
feedback [1] - 11:2
few [4] - 4:2, 16:19,
17:8, 38:19, 48:20,
52:20
fifteen [1] - 15:24
figure [1] - 14:17
figures [1] - 6:11
file [1] - 63:16
filed [5] - 4:1, 26:1,
48:4, 58:13, 64:7
filing [2] - 28:18,
47:21, 63:18
filter [3] - 24:12,
24:14, 25:1
filtering [6] - 14:6,
14:7, 24:18, 24:23,
39:19, 39:20
filters [4] - 24:13,
39:10, 39:11, 39:14
finally [1] - 4:18
finish [2] - 44:12,
44:14
FIRM [1] - 2:10
first [6] - 19:23, 24:8,
38:1, 42:4, 50:20,
54:25
fit [1] - 54:6
five [1] - 37:24
flow [1] - 59:7
focus [11] - 10:12,

15:10, 16:25, 25:12,
52:9, 53:9, 53:15,
55:3, 56:6, 56:15
focused [5] - 24:25,
31:16, 53:11, 55:25,
56:13
focuses [2] - 29:16,
54:11
focusing [2] - 25:2,
54:25
follow [3] - 4:11, 4:24,
24:18
followed [3] - 42:10,
49:9, 60:22
following [1] - 9:17
FOR [1] - 1:2
forecloses [1] - 15:5
foregoing [1] - 64:23
form [1] - 45:15
forth [4] - 35:13,
40:19, 62:12, 62:21
forward [2] - 10:18,
11:8, 45:21
frankly [1] - 34:1
FRIEDLANDER [1] -
2:14
Friedlander [2] - 3:22,
5:7
FRIEDMAN [1] - 2:2
Friedman [1] - 3:12
front [2] - 4:3, 20:14
full [1] - 49:9
function [2] - 13:5,
23:10
functional [3] - 53:8,
53:17, 56:5
functionality [9] - 7:3,
8:19, 39:15, 51:6,
53:16, 55:5, 55:11,
56:21, 57:6
functionally [1] -
34:22
functioning [1] - 55:3
functions [2] - 50:22,
57:11
fundamentally [1] -
34:22
future [1] - 9:16

## G

general [2] - 19:2,
56:17
generally [2] - 13:19,
45:17
generate [1] - 26:8
generic [9] - 7:9,
13:21, 36:10, 36:15,
36:16, 43:7, 51:8,
55:4, 57:9

generically [2] - 5:24,
43:19
geographic [1] - 35:9
GEORGE [1] - 2:8
George [3] - 3:16,
30:20, 41:16
gist [1] - 27:8
given [13] - 13:15,
13:16, 22:8, 31:11,
34:3, 34:24, 42:21,
44:7, 52:12, 60:6,
63:2
Global [1] - 49:19
grant [2] - 23:6, 47:12,
62:8
granted [4] - 10:2,
53:3, 53:6, 63:15
granting [2] - 23:9,
31:24
grids [1] - 51:22
grounds [2] - 13:19,
63:22
GRYPHON [1] - 1:6
Gryphon [32] - 2:12,
3:15, 3:16, 26:18,
30:20, 30:21, 44:25,
45:17, 45:18, 45:23,
46:4, 46:13, 49:24,
49:25, 50:7, 50:14,
50:16, 50:17, 50:23,
51:13, 52:16, 60:16,
60:19, 60:24, 61:7,
62:2, 62:6, 62:16,
62:22, 63:21, 64:17
Gryphon's [10] -
38:20, 43:17, 44:8,
52:21, 53:14, 61:14,
61:20, 62:1, 63:3,
64:6
guess [6] - 14:18,
18:11, 23:25, 26:11,
26:20, 33:9

## H

hack [2] - 23:11, 55:10
hackers [1] - 54:22
handset [1] - 21:15
harder [2] - 23:11,
55:10
hardware [1] - 54:2
Hawkins [1] - 64:24
hear [19] - 2:20, 3:2,
3:6, 4:15, 5:5, 16:10,
17:25, 18:1, 18:9,
18:12, 18:13, 30:14,
37:23, 38:1, 38:19,
41:14, 44:21, 47:19
hearing [5] - 31:1,
50:11, 64:9, 64:11,

64:21
**Hearing** [1] - 1:16
**heavily** [1] - 52:16
**held** [1] - 54:8
**help** [1] - 36:6
**helpful** [6] - 4:7,
14:19, 14:23, 17:23,
36:16, 49:5
**helps** [1] - 11:6
**hereby** [1] - 64:23
**high** [1] - 19:6
**highlight** [2] - 25:17,
25:20
**highlighted** [2] -
55:19, 56:13
**himself** [1] - 16:7
**hold** [1] - 27:21
**Holdings** [1] - 52:17
**Honor** [44] - 2:25,
3:13, 3:15, 3:18,
3:20, 4:23, 5:6, 5:12,
14:25, 16:9, 16:12,
16:14, 16:24, 18:11,
19:21, 22:25, 24:7,
25:8, 26:12, 26:14,
26:20, 30:16, 30:17,
31:13, 32:1, 32:12,
32:20, 33:9, 34:5,
37:18, 37:21, 37:23,
38:18, 40:4, 41:2,
41:16, 44:17, 44:19,
47:20, 48:14, 48:19,
64:4, 64:17
**HONORABLE** [1] -
1:20
**hopefully** [1] - 5:11
**horizontal** [1] - 28:1
**houses** [2] - 5:20, 6:3
**HTC** [1] - 54:12
**human** [11] - 7:8,
11:14, 11:18, 22:19,
23:23, 41:20, 51:8,
55:16, 55:20, 56:1,
56:14
**humans** [2] - 30:3,
53:13

## I

**i.e** [3] - 53:13, 53:21,
58:21
**idea** [25] - 7:6, 8:6,
10:6, 11:10, 12:4,
12:8, 13:14, 35:19,
36:8, 41:22, 50:21,
50:24, 51:1, 52:4,
52:20, 53:4, 53:10,
55:5, 56:8, 56:20,
57:2, 57:6, 57:16,
61:16

**ideas** [12] - 29:23,
31:17, 34:7, 34:10,
34:16, 35:1, 35:22,
37:4, 37:10, 37:17,
54:10
**identification** [1] -
48:16
**identified** [2] - 43:18,
62:24
**identifies** [1] - 45:18
**identify** [3] - 4:6, 45:3,
45:20
**IGS** [1] - 22:4
**immediately** [1] - 32:2
**implement** [2] - 10:15,
55:4
**implementation** [1] -
54:1
**implementations** [1] -
13:20
**implementing** [3] -
10:21, 50:3, 53:23
**implicate** [1] - 22:20
**important** [3] - 7:12,
19:24, 22:6
**importing** [1] - 63:6
**impose** [1] - 11:15
**improved** [4] - 24:3,
52:14, 55:9, 57:21
**improvement** [13] -
11:25, 22:17, 22:21,
22:23, 23:3, 23:15,
52:7, 53:20, 55:2,
55:16, 56:10, 56:16,
57:4
**improvements** [2] -
53:22, 54:8
**improves** [1] - 58:25
**improving** [4] - 23:21,
54:18, 54:20, 56:14
**impute** [1] - 39:24
**IN** [1] - 1:1
**inaccessible** [1] - 54:5
**inappropriate** [1] -
29:6
**Inc** [8] - 2:12, 2:17,
49:19, 51:11, 52:17,
54:12
**INC** [4] - 1:3, 1:6, 1:9,
1:12
**include** [6] - 8:13,
8:18, 8:20, 31:23,
58:23, 63:20
**included** [8] - 9:25,
30:23, 30:25, 34:6,
49:18, 52:24, 58:14,
58:15
**includes** [6] - 10:20,
19:13, 42:20, 43:20,
58:3, 59:21

**including** [5] - 18:21,
26:7, 49:18, 52:19,
52:25
**inconsistent** [1] - 8:22
**incorporate** [2] -
49:20, 59:5
**incorporated** [1] -
58:1
**indeed** [1] - 62:20
**indication** [1] - 53:8
**indicator** [1] - 56:8
**indirect** [3] - 62:3,
63:8, 63:12
**indistinguishable** [3]
- 34:23, 52:12, 52:21
**individual** [1] - 45:25
**induced** [1] - 63:7
**inducement** [5] - 44:1,
44:3, 44:5, 48:1,
48:8
**indulgence** [1] - 15:25
**ineligible** [3] - 35:1,
35:22, 50:7
**information** [3] -
40:19, 43:3, 52:1
**infringe** [2] - 63:3,
63:6
**infringed** [1] - 44:9
**infringement** [19] -
41:12, 42:22, 43:1,
43:16, 43:18, 44:1,
44:3, 46:23, 48:17,
50:8, 62:3, 62:11,
62:14, 63:1, 63:7,
63:8, 63:10, 63:12
**infringement /
indirect** [1] - 41:12
**infringing** [1] - 62:8
**innovation** [1] - 7:10
**Innovative** [1] - 49:18
**inquiry** [3] - 31:9,
58:12, 60:21
**instead** [4] - 23:5,
24:22, 24:24
**instructions** [2] -
10:20, 13:6
**insufficient** [2] - 26:8,
57:11
**intended** [2] - 9:24,
29:12
**intent** [1] - 44:16
**interact** [1] - 51:19
**interaction** [1] - 52:5
**interactions** [1] -
52:10
**interception** [2] -
34:20, 52:25
**interceptor** [1] - 27:17
**interconnectivity** [1] -
51:23

**interference** [1] -
55:13
**interfering** [1] - 57:23
**internal** [1] - 27:10
**internet** [4] - 12:24,
14:3, 14:5, 39:21
**interpreted** [1] - 29:11
**introductions** [2] -
2:24, 3:1
**invalidated** [2] -
28:14, 34:12
**invent** [1] - 24:11
**invention** [11] - 6:24,
15:15, 17:9, 19:2,
21:4, 51:24, 52:7,
53:19, 53:25, 55:22,
58:24
**inventions** [1] - 15:9
**inventive** [20] - 6:22,
13:2, 15:3, 15:12,
15:17, 25:4, 28:1,
29:24, 30:7, 35:18,
35:23, 36:7, 36:13,
36:20, 37:3, 37:14,
51:20, 57:12, 57:15,
60:6
**inventor** [1] - 24:11
**involved** [2] - 51:15,
54:13
**involves** [1] - 5:19
**involving** [1] - 42:22
**Iqbal** [1] - 63:15
**irrelevancies** [1] -
37:7
**irrelevant** [1] - 37:11
**ISP** [1] - 14:3
**issue** [29] - 15:18,
18:23, 18:24, 25:8,
26:8, 26:12, 31:20,
31:24, 32:10, 32:23,
33:2, 33:6, 33:11,
33:23, 34:25, 38:15,
41:8, 42:11, 43:13,
47:1, 47:22, 49:7,
49:21, 52:4, 55:24,
55:25, 56:6, 57:1,
63:23
**issues** [33] - 5:9,
14:16, 14:21, 15:1,
15:5, 15:12, 30:20,
30:21, 33:13, 36:18,
37:5, 37:22, 38:1,
38:2, 41:15, 42:3,
43:1, 44:6, 44:20,
46:21, 46:22, 48:22,
49:1, 50:10, 59:19,
60:2, 60:13, 60:14,
61:12, 61:22, 61:23,
63:15
**issuing** [2] - 49:6,

49:8
**itself** [7] - 6:14, 10:10,
11:13, 11:19, 21:25,
45:21, 57:21

## J

**judge** [1] - 27:24
**Judge** [5] - 1:20,
25:15, 25:24, 26:2,
38:8
**judgment** [2] - 60:12,
61:22
**jump** [3] - 4:17, 10:25,
18:23

## K

**Kajeet** [27] - 5:25,
7:11, 7:14, 7:18, 8:7,
8:20, 9:24, 10:17,
11:22, 12:21, 13:25,
14:8, 29:4, 30:24,
31:1, 32:5, 34:14,
34:21, 35:4, 36:6,
36:19, 42:4, 42:16,
43:25, 44:2, 44:7,
46:17
**KAJEET** [2] - 1:3, 1:9
**Kajeet's** [8] - 6:18,
12:22, 14:10, 15:3,
15:20, 34:13, 34:17,
34:19
**keep** [1] - 49:19
**keeping** [1] - 23:19
**keeps** [1] - 4:15
**KEVIN** [1] - 2:14
**Kevin** [1] - 3:21
**key** [1] - 54:15
**kind** [1] - 36:2
**kinds** [1] - 10:13
**King** [1] - 1:17
**knowledge** [2] - 44:8,
44:9
**known** [6] - 23:12,
39:13, 57:19, 59:10,
60:4, 60:5
**Knutson** [6] - 26:1,
30:25, 31:2, 58:1,
58:16, 59:5
**Kronstadt** [1] - 26:3
**Kumar** [1] - 3:17
**KUMAR** [3] - 2:10,
2:10, 3:18

## L

**label** [1] - 45:19
**lack** [1] - 51:17
**lacking** [1] - 63:17

**language** [6] - 8:9, 21:22, 30:13, 33:13, 34:3, 56:11
**largely** [8] - 53:7, 53:17, 54:11, 55:14, 55:19, 56:5, 56:6, 60:18
**last** [4] - 11:3, 20:12, 20:16, 28:5
**law** [12] - 13:16, 35:20, 36:18, 38:25, 47:4, 49:15, 49:16, 49:20, 50:11, 63:5, 63:25
**LAW** [2] - 2:7, 2:10
**layered** [1] - 27:25, 32:7
**least** [5] - 6:9, 7:16, 32:10, 33:1, 61:8
**leave** [5] - 41:9, 47:13, 60:12, 61:21, 63:2
**left** [1] - 37:24
**legal** [3] - 37:3, 37:7, 49:17
**legitimate** [1] - 36:1
**lens** [1] - 58:9
**less** [2] - 20:24, 48:17
**lessens** [1] - 38:25
**level** [3] - 14:9, 14:11, 19:6
**levels** [1] - 40:22
**liable** [1] - 63:21
**license** [4] - 22:9, 22:12, 23:6
**LIFELOCK** [1] - 1:12
**LifeLock** [3] - 2:17, 3:21, 5:8
**LifeLock's** [1] - 5:11
**light** [3] - 52:8, 60:8, 64:5
**limitation** [4] - 20:12, 20:13, 45:1, 62:17
**limitations** [6] - 25:14, 27:9, 43:8, 46:15, 59:17, 62:19
**limited** [4] - 6:13, 26:21, 48:9, 63:4
**limiting** [7] - 27:22, 50:22, 51:6, 53:13, 54:14, 56:3, 56:17
**limits** [1] - 43:3
**line** [12] - 3:23, 9:10, 9:11, 11:3, 11:6, 11:19, 12:1, 18:4, 48:25, 54:7, 55:1
**lines** [1] - 23:23
**linked** [1] - 57:2
**list** [1] - 39:3
**litigation** [1] - 10:9
**LLC** [1] - 49:19
**LLP** [1] - 1:24, 2:14

**local** [2] - 21:13, 21:15
**locate** [1] - 51:25
**located** [2] - 33:18, 33:20
**location** [6] - 21:1, 24:19, 24:23, 24:24, 25:18, 39:25
**locations** [1] - 33:22
**locator** [1] - 35:10
**logical** [1] - 34:2
**look** [21] - 6:14, 9:23, 10:21, 10:25, 12:19, 13:11, 13:23, 14:14, 19:4, 19:8, 20:9, 25:16, 33:13, 35:24, 36:11, 36:23, 39:2, 39:9, 45:13, 48:14, 48:21
**looked** [1] - 58:8
**looking** [3] - 4:8, 34:6, 57:3
**lose** [1] - 18:14
**low** [2] - 62:13, 62:15
**Ltd** [1] - 52:18
**lumped** [1] - 31:7
**lumps** [1] - 60:19

## M

**maintain** [1] - 38:10
**manage** [1] - 51:21
**management** [6] - 11:11, 17:9, 18:6, 18:20, 22:9, 51:2
**manager** [3] - 9:13, 45:7, 53:1
**managing** [2] - 34:14, 36:25
**manipulatable** [1] - 30:10
**manipulated** [1] - 20:24
**manipulating** [2] - 10:8, 19:20
**manipulation** [4] - 8:21, 19:14, 38:25, 39:24
**MANISH** [1] - 2:15
**Manish** [1] - 3:22
**manner** [1] - 57:20
**map** [1] - 62:19
**marking** [1] - 42:5, 42:6, 46:21, 47:5, 47:7, 47:9, 47:10, 47:16, 47:23, 63:23, 63:25
**Markman** [2] - 64:9, 64:11
**MARYELLEN** [1] - 1:20

**matches** [1] - 46:8
**matter** [1] - 50:7
**matters** [4] - 7:23, 20:5, 39:4, 46:13
**Mayo** [2] - 58:12, 60:21
**mean** [3] - 14:21, 22:16, 43:10
**meaning** [3] - 32:23, 33:24, 33:25
**meaningful** [1] - 60:25
**means** [2] - 42:19, 59:20
**measures** [1] - 47:16
**medium** [1] - 10:20
**meet** [7] - 37:3, 44:25, 45:5, 45:12, 46:14, 62:14, 62:17
**Mehla** [1] - 3:22
**MEHTA** [1] - 2:15
**memory** [1] - 21:17, 22:13, 22:15, 23:6, 23:7, 23:11, 23:12, 28:25, 29:1, 30:9
**mention** [1] - 40:5
**mentioned** [1] - 35:7, 45:24, 52:16
**merely** [1] - 53:10
**mesh** [1] - 45:18
**Mesh** [1] - 62:7
**mess** [1] - 21:18
**messing** [1] - 21:12
**met** [2] - 11:23, 22:4
**method** [6] - 5:19, 10:21, 46:20, 62:4, 63:3, 63:6
**methods** [4] - 50:2, 54:13, 54:21, 58:5
**Michael** [1] - 3:11
**microphone** [1] - 17:22
**middle** [1] - 17:19
**might** [6] - 9:12, 9:14, 10:13, 22:12, 25:24, 48:6
**MIKE** [1] - 2:3
**Mike** [3] - 3:3, 4:23, 64:15
**mimic** [1] - 11:20
**mimicking** [1] - 11:14
**mind** [1] - 41:20
**minimum** [2] - 38:16, 41:8
**minute** [1] - 4:10
**minutes** [1] - 15:24, 37:24, 48:20, 48:23, 52:20
**misspoke** [1] - 25:12
**misuse** [2] - 40:16
**Mobile** [3] - 42:8,

42:14, 42:24
**mobile** [2] - 27:5, 52:23
**model** [3] - 25:17, 43:19, 45:20
**modify** [2] - 29:2, 55:15
**modifying** [1] - 56:14
**module** [2] - 34:20, 52:25
**Moreover** [1] - 56:4
**moreover** [1] - 53:11
**morning** [8] - 2:20, 3:13, 3:14, 3:18, 3:19, 3:20, 3:24, 5:6
**most** [6] - 11:22, 25:17, 35:15, 42:9, 49:12, 51:12
**motion** [17] - 7:19, 15:23, 17:3, 26:7, 31:25, 32:16, 47:13, 56:24, 58:10, 58:18, 59:18, 59:25, 61:20, 62:1, 62:9, 63:14
**Motions** [2] - 1:16, 64:21
**motions** [7] - 4:1, 49:6, 49:11, 50:12, 60:11, 61:25, 64:2
**move** [7] - 11:8, 12:9, 13:12, 16:11, 17:21, 26:9, 40:14
**moved** [2] - 50:5, 50:8
**moves** [1] - 62:2
**moving** [5] - 7:11, 10:18, 11:12, 23:22, 40:18
**MR** [80] - 2:25, 3:3, 3:7, 3:13, 3:15, 3:18, 3:20, 4:23, 5:3, 5:6, 5:14, 8:3, 9:1, 9:6, 9:23, 11:8, 12:11, 13:18, 14:24, 16:3, 16:6, 16:9, 16:12, 16:16, 16:18, 16:24, 17:5, 17:7, 17:14, 17:17, 17:21, 17:24, 18:2, 18:6, 18:11, 18:17, 18:20, 19:21, 20:12, 20:16, 21:3, 22:25, 23:25, 26:11, 26:20, 28:18, 28:22, 30:16, 30:19, 31:13, 32:1, 32:12, 32:20, 33:9, 37:21, 38:3, 38:4, 38:8, 38:13, 38:16, 38:18, 41:16, 44:13, 44:19, 44:23, 45:2, 45:14, 46:10, 46:19, 47:6, 47:8,

47:15, 47:20, 48:2, 48:10, 48:14, 64:4, 64:13, 64:15, 64:17
**MS** [2] - 3:4, 3:9
**mumbling** [1] - 17:12
**must** [3] - 59:15, 60:2, 63:12
**mute** [3] - 11:4, 11:6, 18:4
**muted** [1] - 18:3

## N

**name** [1] - 43:19
**namely** [2] - 54:3, 61:1
**narrower** [1] - 15:21
**natural** [1] - 2:25
**neat** [2] - 10:14, 29:17
**necessarily** [2] - 15:12, 55:20
**necessary** [2] - 38:14, 61:9
**need** [16] - 4:21, 15:19, 15:22, 19:8, 26:8, 31:11, 31:22, 32:10, 32:19, 33:6, 38:23, 44:12, 48:2, 48:6, 48:20, 64:3
**needed** [1] - 39:17
**needs** [2] - 13:14, 51:20
**network** [20] - 5:23, 12:24, 14:1, 14:5, 14:7, 24:11, 24:12, 33:17, 33:25, 37:17, 40:10, 40:20, 51:15, 51:18, 51:20, 51:24, 52:5, 54:2, 54:3, 56:2
**network-connected** [1] - 51:15
**networking** [3] - 40:8, 40:14, 57:10
**networks** [2] - 24:11, 39:12
**never** [1] - 18:12
**new** [3] - 7:8, 22:23, 64:8
**next** [3] - 12:10, 16:11, 61:25
**nice** [2] - 23:10, 46:6
**non** [1] - 26:14
**non-precedential** [1] - 26:14
**nonabstract** [1] - 37:12
**nonconventional** [2] - 24:17
**none** [3] - 6:7, 10:23, 29:4

**nongeneric** [1] - 24:17
**nonobvious** [1] - 37:11
**nonvolatile** [1] - 21:17
**NOREIKA** [1] - 1:20
**Norton** [8] - 2:17, 3:21, 5:8, 5:11, 49:24, 50:14, 50:21, 64:5
**NORTON** [1] - 1:12
**Norton's** [1] - 38:20
**note** [3] - 7:12, 7:18, 63:16
**noted** [3] - 5:15, 11:21, 62:12
**notes** [2] - 48:21, 64:23
**nothing** [23] - 5:24, 8:9, 13:9, 19:17, 19:19, 20:25, 29:13, 29:14, 33:21, 34:7, 36:9, 36:23, 37:2, 37:15, 39:7, 39:9, 39:10, 39:11, 44:5, 51:7, 59:7, 59:24
**notice** [4] - 46:14, 46:22, 47:2, 48:6
**noting** [2] - 11:21, 58:7
**novel** [3] - 6:1, 37:8, 37:10
**nowhere** [2] - 48:15, 62:15
**number** [7] - 4:6, 18:21, 22:2, 26:24, 40:22, 43:19, 58:23
**numbers** [2] - 11:3, 45:20

### O

**o'clock** [1] - 11:18
**obtainable** [1] - 54:23
**obtained** [1] - 24:16
**obtuse** [1] - 43:7
**obviously** [3] - 15:9, 22:4, 36:22
**occasions** [1] - 62:12
**occurred** [1] - 63:10
**OF** [1] - 1:2
**offer** [1] - 50:18
**offered** [1] - 58:5
**offering** [1] - 63:5
**offers** [1] - 59:3
**OFFICE** [1] - 2:7
**Official** [1] - 64:25
**often** [2] - 4:13, 4:16
**omit** [1] - 25:19
**one** [49] - 4:24, 8:11, 8:13, 8:17, 8:22,

9:24, 10:4, 11:9, 11:23, 12:3, 12:4, 14:15, 14:19, 15:8, 16:1, 18:25, 19:25, 20:2, 20:12, 21:7, 22:3, 22:8, 22:17, 22:21, 23:2, 24:4, 24:8, 25:15, 25:23, 26:6, 26:25, 27:11, 28:9, 35:2, 35:20, 38:21, 40:6, 40:9, 41:17, 43:5, 53:3, 60:21, 60:23, 64:5, 64:9, 64:11
**Online** [1] - 2:12
**ONLINE** [1] - 1:6
**open** [1] - 42:19
**open-ended** [1] - 42:19
**openness** [1] - 42:19
**operate** [3] - 45:5, 53:24, 54:9
**operates** [3] - 22:18, 22:22, 54:18
**operating** [1] - 51:9
**operation** [3] - 53:20, 55:17, 56:15
**opinion** [2] - 49:6, 49:8
**option** [2] - 9:7, 34:4
**options** [1] - 9:13
**oral** [1] - 49:13
**order** [2] - 49:7, 49:21
**ordered** [4] - 59:10, 59:23, 60:4, 61:18
**orders** [1] - 49:18
**ordinarily** [1] - 55:9
**ordinary** [5] - 13:5, 32:22, 33:24, 33:25, 43:9
**original** [2] - 20:1, 20:2
**otherwise** [2] - 56:17, 57:15
**outside** [1] - 54:9
**override** [2] - 9:15, 9:19
**oversimplify** [1] - 19:1
**overstatements** [1] - 36:15
**own** [2] - 9:17, 9:20

### P

**p.m** [1] - 64:21
**page** [1] - 4:11
**paper** [1] - 31:13
**papers** [4] - 26:18, 31:12, 33:1, 47:11
**paragraph** [7] - 42:17,

45:16, 45:17, 45:24, 45:25, 46:1, 46:4
**paragraphs** [6] - 18:14, 36:21, 36:23, 45:3, 45:21, 48:15
**parallel** [1] - 25:4
**parent** [4] - 7:6, 10:14, 11:17, 21:8
**parents** [3] - 11:15, 21:5, 29:17
**part** [9] - 7:23, 12:9, 20:2, 26:20, 33:7, 33:8, 40:15, 44:8, 62:8
**particular** [22] - 5:18, 6:12, 7:2, 7:14, 8:8, 8:12, 8:20, 9:4, 12:23, 14:6, 15:2, 18:23, 18:24, 19:12, 22:6, 22:12, 29:3, 40:2, 41:3, 53:24, 54:19, 57:17
**particularly** [6] - 6:8, 20:6, 36:9, 52:8, 52:12, 58:18
**parties** [4] - 16:5, 31:12, 48:3, 60:18
**parts** [2] - 9:6, 39:18
**party** [3] - 8:13, 8:14, 49:12
**pass** [2] - 15:25, 60:23
**past** [5] - 46:17, 46:24, 47:1, 47:23, 48:7
**Patent** [65] - 5:9, 5:15, 13:9, 17:2, 22:1, 30:15, 30:22, 30:24, 32:3, 33:3, 33:8, 34:13, 35:3, 35:7, 38:7, 38:12, 42:7, 42:16, 42:21, 46:20, 47:1, 49:23, 49:24, 49:25, 50:1, 50:14, 50:16, 50:20, 51:1, 51:13, 52:11, 52:14, 52:19, 53:20, 54:7, 54:25, 55:23, 56:9, 56:19, 56:23, 57:5, 57:9, 57:13, 58:9, 58:20, 59:8, 60:10, 60:12, 60:15, 60:17, 61:1, 61:3, 61:4, 61:6, 61:7, 61:8, 61:10, 61:13, 61:14, 61:16, 61:17, 61:20, 62:4, 62:6
**patent** [23] - 6:24, 8:12, 10:10, 10:11, 10:17, 10:19, 11:13, 11:19, 14:11, 16:1, 16:11, 26:7, 26:16,

28:13, 29:16, 35:1, 42:5, 42:6, 44:9, 50:7, 50:13
**patent-ineligible** [1] - 50:7
**patentee** [2] - 32:7, 59:20
**Patents** [4] - 31:7, 31:18, 60:20, 60:23
**patents** [16] - 4:3, 4:9, 19:25, 27:1, 29:20, 31:4, 31:12, 34:21, 48:4, 48:6, 49:22, 50:1, 60:18, 60:24, 62:18
**pause** [1] - 4:16
**pay** [1] - 51:25
**Pazuniak** [8] - 3:16, 15:25, 16:7, 28:21, 30:20, 41:17, 44:11, 48:12
**PAZUNIAK** [17] - 2:7, 2:8, 3:15, 16:9, 30:16, 30:19, 31:13, 32:1, 32:12, 32:20, 33:9, 37:21, 38:3, 41:16, 44:13, 48:14, 64:17
**Pebblebrook** [1] - 39:1
**pending** [3] - 49:5, 49:11, 64:8
**people** [1] - 11:15
**perform** [2] - 22:19, 53:12
**performed** [1] - 41:20
**performing** [2] - 51:8, 57:10
**perhaps** [2] - 14:15, 22:19
**permission** [9] - 23:5, 23:9, 27:12, 27:19, 27:22, 28:16, 53:16, 54:14, 54:19
**permitted** [2] - 30:4, 40:25
**person** [3] - 4:14, 21:20, 43:9
**persuasive** [1] - 28:8
**phone** [8] - 3:4, 4:13, 4:18, 9:12, 11:4, 27:4, 27:5, 64:3
**phrase** [1] - 20:16
**piece** [1] - 40:14
**pieces** [2] - 24:18, 45:8
**PIERGIOVANNI** [3] - 1:24, 3:4, 3:9
**Piergiovanni** [2] - 3:5, 3:11

**place** [4] - 14:13, 23:16, 23:22, 41:6
**plain** [5] - 32:22, 33:24, 34:3, 42:9
**plainly** [2] - 34:10, 42:7
**plaintiff** [7] - 53:19, 54:6, 54:11, 57:13, 60:22, 62:6, 63:1
**Plaintiff** [35] - 1:4, 1:10, 2:5, 16:11, 26:18, 31:9, 31:22, 38:1, 38:6, 38:10, 44:20, 50:9, 52:13, 53:25, 55:14, 56:22, 57:17, 57:19, 57:24, 58:3, 58:10, 58:16, 59:21, 60:2, 61:2, 61:4, 62:14, 62:21, 63:2, 63:9, 63:10, 63:15, 63:18, 63:25, 64:16
**Plaintiff's** [10] - 12:9, 32:11, 33:5, 58:2, 59:15, 60:8, 61:11, 62:15, 63:17, 63:24
**plaintiff's** [2] - 58:23, 62:24
**Plaintiffs** [3] - 12:3, 12:5, 33:1
**platform** [4] - 34:16, 52:23, 52:24, 56:4
**plausible** [3] - 25:9, 25:11, 25:13, 58:24, 59:12, 59:21, 60:8, 63:21
**plausibly** [4] - 58:3, 58:19, 59:19, 63:9
**plead** [13] - 42:5, 42:11, 42:12, 44:8, 47:5, 47:8, 47:10, 47:14, 47:25, 63:11, 63:23, 63:25
**pleaded** [3] - 43:4, 47:7, 58:11
**pleading** [18] - 15:6, 15:18, 37:22, 42:3, 42:13, 42:20, 42:22, 42:24, 44:15, 49:17, 58:12, 59:15, 62:10, 62:13, 63:16, 63:17, 63:18, 64:1
**pled** [1] - 36:17
**plugging** [1] - 40:20
**point** [19] - 12:10, 19:16, 20:3, 20:4, 21:3, 21:6, 24:1, 24:7, 25:7, 25:21, 26:10, 26:11, 28:5, 35:2, 35:21, 36:14,

39:18, 43:14, 59:16
**pointed** [1] - 37:6
**pointing** [1] - 25:8
**points** [4] - 18:21,
24:7, 30:22, 57:25
**policies** [57] - 7:1, 7:4,
7:11, 7:13, 8:6, 8:7,
8:10, 8:13, 8:14,
8:15, 8:17, 8:18,
8:21, 8:23, 9:8, 9:18,
9:20, 9:21, 10:2,
10:3, 10:4, 10:8,
10:13, 10:23, 13:2,
13:3, 19:4, 19:11,
19:14, 19:18, 19:20,
20:10, 20:11, 21:10,
21:11, 24:24, 28:6,
28:25, 29:3, 29:17,
30:2, 38:22, 46:3,
50:22, 54:4, 55:11,
55:13, 57:18, 57:20,
57:24, 58:21, 59:1,
59:13, 61:2
**policy** [35] - 5:21, 6:3,
6:20, 6:25, 11:11,
19:10, 20:13, 20:17,
20:19, 20:20, 21:13,
21:14, 21:15, 21:18,
21:23, 21:24, 23:16,
25:18, 29:15, 33:15,
33:16, 34:8, 34:9,
34:17, 34:19, 38:11,
39:8, 40:21, 41:5,
51:2, 53:23, 54:3
**policy-based** [4] -
11:11, 51:2, 53:23,
54:3
**portion** [1] - 47:17
**portions** [1] - 59:16
**posit** [1] - 14:10
**position** [1] - 9:5
**positioning** [2] -
24:15, 26:12
**possibility** [1] - 15:5
**post** [2] - 44:6, 48:9
**post-suit** [2] - 44:6,
48:9
**potential** [1] - 9:18
**potentially** [3] - 34:1,
42:20, 51:21
**power** [1] - 51:22
**practice** [1] - 62:23
**pre** [5] - 43:25, 44:14,
44:15, 47:25, 48:1
**pre-suit** [5] - 43:25,
44:14, 44:15, 47:25,
48:1
**precedent** [1] - 8:15
**precedential** [1] -
26:14

**preclude** [4] - 7:13,
20:10, 31:24, 61:13
**precludes** [3] - 10:6,
19:19, 59:14
**precluding** [2] - 60:13,
61:23
**preface** [1] - 6:17
**preliminary** [1] - 30:22
**prepared** [1] - 49:5
**prerequisite** [1] - 63:8
**present** [1] - 47:21
**presents** [1] - 4:2
**pretty** [2] - 47:4, 63:17
**prevent** [3] - 9:15,
21:11, 55:12
**prevented** [2] - 29:2,
57:23, 61:12
**preventing** [1] - 10:7
**prevents** [1] - 21:1
**previously** [1] - 39:6
**printed** [1] - 4:25
**problem** [1] - 3:5
**problems** [3] - 54:21,
55:19, 56:12
**procedural** [1] - 25:24
**procedurally** [1] - 25:7
**proceed** [1] - 2:25
**proceeding** [1] - 64:23
**proceedings** [1] - 4:19
**process** [3] - 41:20,
49:9, 54:20
**processor** [1] - 34:2
**product** [8] - 42:8,
42:21, 42:23, 43:20,
45:19, 45:21, 63:6
**products** [13] - 43:16,
43:18, 44:25, 45:4,
46:6, 46:8, 46:14,
48:16, 62:7, 62:17,
62:19, 62:23, 63:3
**profiles** [2] - 46:2,
46:3
**prohibited** [2] - 4:20,
41:1
**properly** [3] - 36:17,
59:25, 60:10
**proposition** [1] -
33:10
**provide** [2] - 6:12,
52:1
**provider** [2] - 14:4,
39:22
**provides** [1] - 8:4
**providing** [1] - 51:21
**pull** [2] - 25:15, 38:4
**purported** [4] - 52:13,
56:10, 57:4, 59:7
**purportedly** [1] -
62:22
**purpose** [3] - 22:15,

23:8, 29:6
**purposes** [7] - 5:17,
7:14, 7:15, 16:22,
38:24, 40:6, 56:24
**pursuant** [1] - 50:5
**put** [10] - 23:6, 24:14,
26:6, 32:14, 39:13,
40:10, 45:2, 46:12,
46:13, 47:2
**putting** [1] - 39:8

## Q

**questioning** [1] - 40:5
**quick** [1] - 43:2
**quite** [2] - 7:9, 27:24
**quote** [1] - 41:18
**Qustodio** [1] - 26:2

## R

**raise** [1] - 37:5
**raised** [4] - 19:17,
24:8, 32:24, 33:1
**rather** [6] - 53:15,
55:3, 55:16, 56:7,
56:11, 56:17
**reach** [2] - 60:16,
63:23
**reaching** [2] - 52:5,
61:9
**read** [11] - 10:17, 12:7,
29:5, 29:9, 29:10,
31:22, 33:1, 33:3,
44:2, 49:15
**readily** [2] - 53:13,
56:10
**reading** [2] - 41:7,
45:11
**real** [4] - 6:15, 34:15,
36:25, 58:21
**real-time** [4] - 6:15,
34:15, 36:25, 58:21
**really** [24] - 7:15,
10:10, 10:12, 12:12,
14:12, 15:17, 16:22,
17:12, 18:10, 22:17,
23:14, 25:8, 27:10,
28:7, 28:24, 29:16,
30:13, 34:25, 35:6,
35:25, 36:6, 46:12,
46:15, 50:23
**realm** [1] - 54:9
**reason** [1] - 12:2
**reasons** [3] - 22:3,
43:5, 60:17
**receipt** [1] - 58:22
**receive** [2] - 19:12,
27:12
**received** [1] - 40:23

**receiving** [3] - 10:4,
27:19, 53:5
**recent** [1] - 35:15
**recently** [1] - 64:7
**recess** [1] - 49:3
**recitation** [2] - 45:16,
62:21
**recite** [3] - 32:3,
36:22, 57:14
**record** [5] - 4:8, 49:16,
50:11, 59:25, 61:17
**recording** [1] - 4:19
**reduced** [3] - 19:13,
21:19, 21:20
**refer** [2] - 4:6, 4:10
**reference** [1] - 58:2
**referred** [1] - 32:6
**referring** [1] - 9:3
**reflected** [1] - 31:17
**regarding** [2] - 5:9,
31:15
**regardless** [1] - 51:4
**regular** [2] - 22:13,
23:12
**rejected** [1] - 52:6
**rejects** [1] - 6:4
**related** [6] - 13:3,
31:4, 34:20, 46:22,
51:19, 60:11
**relates** [4] - 5:19, 6:9,
61:20, 63:14
**relating** [3] - 12:24,
13:21, 52:2
**relationships** [1] -
34:14
**relatively** [2] - 62:13,
62:15
**relevant** [4] - 35:13,
56:16, 62:10, 63:25
**relied** [3] - 30:23,
42:14, 51:13
**relies** [2] - 52:16,
58:16
**relying** [2] - 9:4, 26:23
**remain** [1] - 15:10
**remaining** [1] - 44:20
**remember** [3] - 19:24,
21:7, 40:15
**remind** [1] - 4:18
**Remote** [1] - 1:16
**remote** [57] - 5:20,
5:21, 6:2, 6:3, 7:11,
8:23, 12:14, 12:15,
12:16, 14:1, 15:16,
19:5, 19:18, 20:10,
20:11, 20:19, 20:22,
20:23, 21:1, 24:15,
24:19, 24:23, 24:24,
25:18, 28:7, 28:10,
30:1, 30:2, 31:20,

32:3, 33:2, 33:6,
33:7, 36:1, 36:5,
36:7, 37:6, 38:11,
38:23, 39:7, 39:14,
39:17, 40:8, 40:21,
41:4, 41:5, 45:7,
57:17, 58:4, 58:15,
58:21, 59:6, 59:13,
61:2, 61:6
**remotely** [4] - 6:21,
19:11, 54:5, 58:25
**render** [2] - 56:1,
63:20
**renders** [2] - 35:18,
52:11
**renew** [2] - 60:12,
61:21
**repeatedly** [3] - 37:9,
41:21, 54:8
**replead** [1] - 47:17
**reply** [1] - 28:20
**reported** [1] - 35:15
**Reporter** [1] - 64:25
**representative** [7] -
5:16, 35:4, 35:11,
50:15, 50:17, 51:3,
56:25
**representativeness**
[3] - 16:22, 50:19,
56:22
**representing** [1] -
3:16
**request** [9] - 6:2, 6:4,
6:16, 29:22, 30:1,
30:3, 53:5, 53:6,
53:16
**requesting** [1] - 25:19
**require** [3] - 6:20,
29:25, 37:6
**required** [9] - 7:16,
7:20, 36:2, 38:11,
39:23, 42:24, 43:23,
44:7, 62:25
**requirement** [5] -
33:19, 42:5, 61:1,
61:6, 61:8
**requires** [3] - 8:12,
44:15, 59:19
**requisite** [1] - 63:9
**resolution** [2] - 60:13,
61:23
**resolve** [6] - 33:5,
38:15, 59:19, 60:7,
61:11, 61:17
**resolving** [1] - 15:5
**resource** [2] - 7:2,
12:23
**resources** [9] - 18:22,
27:14, 27:22, 28:10,
28:11, 41:19, 41:22,

53:5, 53:10
**respect** [13] - 6:8, 9:13, 14:18, 19:2, 19:23, 46:19, 46:25, 47:2, 47:21, 47:22, 58:15
**respectfully** [2] - 23:25, 24:1
**respects** [1] - 63:18
**respond** [1] - 26:19
**response** [2] - 41:11, 58:13
**restricting** [1] - 44:5
**restrictions** [1] - 33:18
**result** [4] - 24:15, 24:16, 56:7
**resultant** [1] - 59:4
**review** [2] - 63:19, 63:25
**reviewing** [1] - 50:10
**rewrite** [1] - 37:6
**rise** [3] - 14:11, 56:23, 62:25
**rises** [1] - 38:7
**rooted** [1] - 55:19
**Rosemary** [2] - 3:5, 3:10
**ROSEMARY** [1] - 1:24
**roughly** [1] - 10:19
**Router** [1] - 62:7
**router** [2] - 45:19, 45:22
**routine** [6] - 57:19, 59:10, 59:18, 59:24, 60:5, 61:19
**Rule** [2] - 7:19, 50:6
**rule** [3] - 11:17, 48:22, 49:5
**ruled** [1] - 26:3
**rules** [7] - 7:1, 7:7, 13:2, 13:3, 13:6, 50:3
**ruling** [6] - 29:6, 41:25, 42:14, 49:1, 49:20, 61:25
**rulings** [4] - 49:7, 49:22, 64:2, 64:6
**run** [3] - 25:21, 54:15, 54:19
**running** [2] - 37:19, 46:17

**S**

**Safety** [1] - 2:12
**SAFETY** [1] - 1:6
**SANJEEV** [1] - 2:10
**Sanjeev** [1] - 3:17
**save** [2] - 29:5, 37:20
**schedule** [2] - 64:9,

64:11
**scheme** [1] - 14:7
**school** [1] - 21:9
**screen** [6] - 4:7, 5:1, 5:2, 5:10, 16:13
**scroll** [1] - 16:19
**second** [6] - 11:2, 20:4, 31:6, 35:21, 43:14
**seconds** [1] - 48:13
**Section** [9] - 15:5, 29:6, 49:16, 58:9, 58:13, 60:14, 60:19, 60:20, 61:23
**section** [2] - 32:5, 49:17
**secure** [1] - 22:20
**security** [19] - 10:16, 23:3, 23:18, 24:3, 25:2, 37:1, 38:24, 39:24, 45:18, 52:14, 53:1, 53:22, 54:20, 55:10, 56:10, 56:16, 57:22, 58:5
**Security** [1] - 62:7
**security-based** [1] - 56:10
**see** [13] - 5:9, 11:6, 13:24, 14:24, 16:13, 16:15, 23:2, 24:1, 28:2, 30:17, 33:14, 34:13, 48:2
**seeing** [1] - 5:11
**seek** [1] - 7:9
**seem** [3] - 33:4, 46:7, 55:7
**sell** [1] - 63:5
**selling** [1] - 63:5
**semaConnect** [1] - 51:11
**send** [2] - 12:17, 30:1
**sending** [2] - 25:19, 40:19
**sends** [2] - 6:4, 30:5
**sense** [4] - 6:7, 12:22, 14:18, 27:2
**sent** [1] - 6:16
**sentence** [1] - 17:20
**sentences** [2] - 18:14, 18:18
**separate** [5] - 20:18, 23:7, 31:5, 31:11, 36:5
**server** [46] - 5:20, 6:3, 6:17, 6:21, 7:11, 8:24, 10:3, 10:4, 12:16, 14:1, 14:3, 14:4, 15:16, 20:13, 20:19, 21:24, 21:25, 24:15, 25:18, 28:7,

28:10, 28:11, 28:15, 29:1, 29:15, 29:21, 30:1, 30:2, 31:20, 32:3, 33:2, 36:2, 36:5, 36:7, 36:8, 37:7, 38:22, 39:7, 39:14, 40:21, 41:4, 41:5, 45:7, 45:23
**service** [2] - 14:4, 39:21
**services** [3] - 27:6, 27:7, 62:7
**session** [1] - 10:24
**set** [8] - 7:1, 7:7, 9:8, 19:11, 21:10, 21:15, 35:13, 49:21
**sets** [4] - 4:5, 8:5, 62:12, 62:21
**setting** [3] - 9:17, 21:10, 46:2
**several** [1] - 62:12
**shall** [3] - 2:25, 63:4, 63:16
**share** [2] - 5:10, 16:12
**shocking** [1] - 26:22
**short** [1] - 18:17
**shortcomings** [1] - 55:21
**show** [2] - 4:7, 45:13
**shown** [1] - 19:9
**shows** [1] - 12:4
**side** [4] - 12:20, 13:23
**side-by-side** [2] - 12:20, 13:23
**signal** [1] - 12:17
**significant** [6] - 11:2, 31:19, 35:5, 47:16, 50:18, 52:8
**significantly** [1] - 35:19
**silent** [1] - 7:25
**similar** [8] - 9:12, 12:21, 24:2, 24:22, 30:6, 30:8, 57:2, 58:14
**similarly** [3] - 12:19, 13:11, 38:9
**Simio** [1] - 35:14
**simple** [1] - 43:6
**simplified** [1] - 19:6
**simply** [6] - 31:3, 34:24, 35:9, 44:2, 59:10, 61:19
**simultaneously** [1] - 40:25
**single** [1] - 34:2
**situation** [4] - 14:15, 22:6, 22:7, 23:14
**situations** [1] - 41:4
**skill** [1] - 43:9

**skip** [1] - 21:25
**slide** [21] - 4:10, 4:25, 5:12, 7:17, 11:9, 11:12, 12:20, 13:24, 19:9, 23:2, 28:3, 30:21, 32:2, 33:14, 34:6, 34:12, 35:3, 35:14, 41:18, 42:4, 43:24
**slides** [5] - 4:5, 4:6, 25:15, 25:16, 30:17
**software** [11] - 27:25, 32:7, 41:22, 45:7, 45:25, 54:2, 54:14, 54:15, 54:19, 55:9
**solutions** [1] - 54:4
**something** [1] - 53:14
**somewhat** [1] - 26:22
**sorry** [4] - 9:1, 11:7, 32:12, 45:24
**sort** [9] - 14:14, 17:11, 18:22, 27:18, 28:15, 37:22, 38:20, 41:13, 41:19
**sounds** [3] - 17:11, 17:20, 18:15
**space** [2] - 26:21, 28:11
**speaking** [1] - 11:6
**spec** [4] - 25:10, 25:12, 39:3, 40:15
**special** [2] - 29:1, 29:13, 29:14, 30:9
**specific** [21] - 5:24, 8:4, 13:20, 14:3, 19:10, 24:19, 25:9, 25:13, 30:21, 32:7, 33:19, 36:9, 39:25, 42:22, 46:5, 46:7, 48:15, 54:1, 54:4, 54:18, 59:3
**specifically** [11] - 14:6, 28:6, 37:15, 42:17, 44:7, 45:4, 45:22, 47:8, 47:10, 48:3, 62:2
**specification** [19] - 6:11, 7:25, 8:4, 8:9, 9:3, 9:5, 9:7, 10:12, 10:13, 15:14, 20:1, 20:2, 51:16, 51:23, 54:24, 55:19, 56:13, 59:16
**specificity** [1] - 43:22
**specified** [2] - 33:16, 43:17
**SpinCloud** [2] - 26:25, 28:8
**spot** [1] - 40:15
**squarely** [1] - 41:25

**stacks** [1] - 27:25
**stage** [7] - 15:6, 15:23, 25:24, 32:11, 40:2, 58:10, 60:11
**standard** [4] - 35:13, 35:16, 35:17, 37:3, 49:17, 62:10
**standards** [1] - 49:17
**start** [9] - 2:23, 4:14, 5:8, 16:21, 18:13, 30:21, 36:14, 38:18, 45:16
**starting** [1] - 9:11
**starts** [1] - 33:10
**state** [5] - 13:15, 13:16, 49:10, 50:9, 62:1
**statements** [1] - 36:16
**STATES** [1] - 1:1
**States** [1] - 1:20
**static** [1] - 11:5
**stating** [3] - 49:7, 50:23, 63:8
**station** [2] - 13:1, 13:7
**stations** [5] - 12:15, 12:16, 12:18, 51:16, 51:25
**statute** [4] - 47:9, 47:10, 47:17, 47:23
**stenographic** [1] - 64:23
**step** [33] - 11:9, 11:23, 13:15, 14:18, 14:19, 14:23, 18:25, 22:3, 22:20, 22:21, 23:1, 23:2, 24:4, 24:5, 24:6, 24:9, 25:23, 27:23, 29:24, 35:12, 36:6, 40:6, 53:3, 57:8, 58:11, 59:20, 60:3, 60:21, 60:23, 60:24, 61:10
**still** [8] - 11:4, 23:17, 28:4, 32:18, 36:8, 37:11, 37:15, 42:1
**stop** [1] - 11:1
**storage** [14] - 10:20, 19:5, 28:11, 28:12, 33:7, 38:11, 57:17, 58:4, 58:15, 58:21, 59:6, 59:13, 61:2, 61:6
**store** [2] - 22:12, 22:14
**stored** [9] - 6:20, 10:5, 20:13, 21:15, 21:19, 21:24, 54:4, 54:15, 55:12
**storing** [9] - 14:12, 20:16, 20:19, 21:24,

28:24, 29:14, 30:9,
57:20, 59:1
**straight** [1] - 24:6
**strategic** [1] - 12:5
**streamline** [1] - 50:25
**Street** [1] - 1:17
**stress** [1] - 31:18
**stressed** [1] - 31:1
**stretch** [1] - 6:7
**strong** [1] - 23:1
**structure** [2] - 7:15,
55:8
**structures** [1] - 34:3
**student** [1] - 40:17
**stuff** [2] - 39:13, 39:20
**subject** [2] - 20:24,
50:7
**submissions** [2] -
49:11, 49:14
**submit** [1] - 29:7
**submitted** [2] - 4:4,
4:5
**substantially** [1] -
57:2
**successful** [1] - 32:16
**Sudor** [1] - 3:12
**SUDOR** [1] - 2:2
**suffered** [1] - 51:17
**suffices** [1] - 22:1
**sufficient** [6] - 17:3,
40:1, 46:12, 46:13,
57:15, 58:17
**suggest** [3] - 31:2,
33:21, 58:4
**suggested** [2] - 50:23,
58:19
**suggesting** [2] - 53:9,
56:6
**suit** [8] - 43:25, 44:6,
44:14, 44:15, 47:25,
48:1, 48:9, 60:22
**sum** [1] - 56:19
**summarize** [2] - 5:17,
35:15
**summary** [2] - 60:12,
61:21
**supplies** [1] - 35:18
**supply** [1] - 35:22
**support** [7] - 25:10,
36:1, 36:13, 36:20,
57:24, 59:16, 59:22
**supposed** [1] - 29:13
**survive** [4] - 17:3,
17:4, 58:11, 58:18
**system** [16] - 5:19,
6:10, 8:11, 11:20,
12:14, 12:21, 12:25,
13:4, 13:10, 19:3,
27:14, 34:8, 40:12,
51:24, 52:23, 59:4

**Systems** [1] - 49:19
**systems** [4] - 50:1,
53:23, 58:25, 59:4

## T

**talks** [9] - 9:8, 9:17,
10:1, 10:13, 14:2,
14:12, 40:16, 46:1,
46:4
**TCL** [1] - 52:17
**technical** [2] - 7:10,
55:17
**technological** [3] -
52:13, 55:20, 56:14
**Technologies** [1] -
54:12
**Technology** [2] - 22:5,
52:17
**technology** [19] -
5:17, 12:1, 18:11,
22:18, 22:19, 22:22,
22:23, 22:24, 23:15,
23:21, 39:12, 52:7,
53:18, 54:9, 55:3,
55:4, 55:15, 56:1,
56:16
**telecommunication**
[1] - 27:14
**tendency** [1] - 18:25
**termed** [1] - 5:25
**terms** [6] - 17:8,
25:23, 43:10, 53:8,
53:17, 56:5
**test** [1] - 29:24
**text** [1] - 11:17
**texting** [1] - 7:3
**THE** [81] - 1:1, 1:2,
1:20, 2:10, 2:20, 3:2,
3:8, 3:14, 3:19, 3:24,
5:2, 5:4, 5:13, 7:24,
8:25, 9:2, 9:22, 11:1,
11:24, 13:13, 14:14,
16:1, 16:4, 16:10,
16:15, 16:17, 16:21,
17:1, 17:6, 17:10,
17:16, 17:18, 17:23,
18:1, 18:3, 18:8,
18:13, 18:19, 19:16,
20:8, 20:15, 20:21,
22:16, 23:13, 26:4,
26:17, 28:17, 28:19,
30:14, 30:18, 31:6,
31:21, 32:9, 32:14,
32:25, 37:19, 37:24,
38:6, 38:10, 38:14,
38:17, 41:14, 44:11,
44:18, 44:22, 44:24,
45:10, 46:5, 46:16,
47:4, 47:7, 47:12,

47:19, 47:24, 48:8,
48:12, 48:20, 49:4,
64:10, 64:14, 64:19
**themselves** [1] - 37:4
**theory** [1] - 25:11
**thereby** [1] - 60:5
**therefore** [8] - 7:19,
10:7, 42:21, 54:5,
61:8, 61:15, 61:21,
63:15
**third** [2] - 8:13, 8:14
**third-party** [2] - 8:13,
8:14
**thirty** [2] - 19:25,
48:13
**thirty-eight** [1] - 19:25
**thorough** [1] - 49:9
**thread** [1] - 28:23
**three** [3] - 4:5, 5:19,
27:25
**three-layered** [1] -
27:25
**threshold** [2] - 62:13,
62:25
**today** [13] - 16:23,
45:6, 49:4, 49:13,
49:20, 50:24, 51:10,
56:23, 60:8, 61:5,
61:14, 63:24, 64:3
**together** [9] - 13:22,
31:7, 31:14, 40:10,
45:8, 56:24, 60:18,
60:20
**took** [2] - 40:7, 48:21
**tool** [3] - 24:19, 24:23,
55:15
**tools** [2] - 53:21,
56:18
**totally** [1] - 43:7
**touch** [1] - 5:16
**touted** [3] - 10:11,
51:21, 52:13
**transcript** [1] - 64:23
**treat** [2] - 31:14, 50:14
**treated** [2] - 31:12,
38:9
**treats** [1] - 50:17
**tried** [1] - 27:23
**tries** [1] - 10:17
**Truckin** [1] - 49:19
**true** [3] - 7:22, 36:12,
64:23
**try** [7] - 17:21, 25:19,
29:4, 29:5, 39:22,
39:23, 48:23
**trying** [3] - 11:20,
22:7, 25:21
**Tuesday** [1] - 1:15
**tunnel** [1] - 18:16
**turn** [7] - 17:14, 21:17,

28:21, 32:1, 35:12,
42:2, 50:10
**turned** [1] - 12:16
**Turning** [1] - 60:15
**turning** [2] - 50:20,
57:8
**turns** [1] - 48:5
**twenty** [1] - 48:23
**two** [33] - 4:1, 4:3,
4:11, 13:15, 14:19,
14:23, 22:21, 23:1,
24:5, 24:6, 24:10,
26:1, 29:24, 31:4,
34:7, 34:21, 35:12,
35:16, 36:7, 40:6,
43:5, 43:21, 49:22,
57:8, 58:11, 59:20,
60:3, 60:18, 60:24,
61:10, 62:18, 64:7
**two-step** [1] - 29:24
**Twombly** [1] - 63:15
**type** [4] - 7:8, 10:16,
12:8, 23:7
**types** [3] - 10:23,
13:17
**typical** [2] - 22:11,
23:6, 36:10
**typically** [3] - 22:15,
23:8, 23:17

## U

**U.S** [3] - 49:23, 49:24,
64:25
**U.S.C** [1] - 62:22
**uncontradicted** [1] -
60:9
**unconventional** [5] -
57:14, 57:20, 58:4,
58:19, 59:3
**unconventionality** [3]
- 58:14, 59:6, 59:13
**under** [6] - 17:20,
29:24, 58:13, 59:9,
60:19, 63:4
**underlying** [2] - 63:9,
63:11
**understood** [4] - 7:24,
59:17, 59:24, 61:19
**Uniloc** [5] - 13:11,
26:13, 26:16, 26:25,
28:13
**unique** [9] - 6:22,
13:23, 29:3, 36:9,
39:7, 39:9, 39:10,
39:11
**unit** [1] - 21:13
**UNITED** [1] - 1:1
**United** [1] - 1:20
**unless** [3] - 11:6,

32:23, 41:10
**unlike** [1] - 55:1
**unpublished** [1] -
26:14
**up** [10] - 17:14, 23:2,
25:15, 29:16, 30:4,
37:18, 40:4, 44:12,
46:2, 46:8
**update** [1] - 10:4
**upheld** [1] - 26:16
**usage** [1] - 46:2
**useful** [1] - 10:14
**user** [42] - 5:20, 6:1,
7:13, 8:5, 8:6, 8:10,
8:15, 8:18, 8:21,
8:22, 9:9, 9:15, 9:17,
9:19, 9:21, 10:6,
10:8, 13:7, 14:2,
19:19, 20:10, 20:18,
20:25, 21:1, 21:11,
21:15, 23:17, 23:19,
25:1, 25:3, 25:17,
28:14, 29:2, 29:3,
30:1, 30:5, 30:10,
41:6, 46:2, 55:13,
57:23
**user's** [6] - 5:22, 6:5,
12:23, 46:1, 50:2,
55:6
**users** [4] - 9:7, 9:12,
11:16, 24:19
**uses** [1] - 40:25
**utility** [2] - 51:18, 52:1

## V

**various** [4] - 18:21,
51:4, 52:24, 56:2
**vehicle** [1] - 12:14
**vehicles** [2] - 51:16,
51:22
**venture** [1] - 24:14
**verification** [2] - 55:7,
55:9
**verifies** [1] - 54:19
**versions** [1] - 62:6
**vertical** [1] - 28:1
**via** [1] - 41:22
**viability** [1] - 33:12
**viable** [2] - 33:10,
33:23
**view** [7] - 12:12, 19:6,
51:7, 52:10, 52:21,
53:7, 53:14
**viewed** [2] - 19:11,
49:12, 55:2
**viewing** [2] - 56:11,
57:3
**virtue** [1] - 24:16
**volatile** [2] - 21:17,

30:10
**volume** [1] - 17:14
**Vowell** [3] - 3:11,
41:10, 44:19
**VOWELL** [14] - 2:3,
3:13, 44:19, 44:23,
45:2, 45:14, 46:10,
46:19, 47:6, 47:8,
47:15, 47:20, 48:2,
48:10
**vulnerabilities** [1] -
8:20
**vulnerability** [1] -
19:14

## W

**wait** [2] - 31:6
**wants** [1] - 37:23
**warranted** [1] - 63:22
**water** [1] - 17:20
**ways** [1] - 14:15
**website** [1] - 7:3
**whereas** [2] - 50:22,
55:10
**wherein** [1] - 8:17
**whole** [3] - 55:2,
56:12, 57:3
**WiFi** [2] - 45:18, 62:7
**Wilmington** [1] - 1:18
**win** [2] - 32:18, 33:8
**wireless** [1] - 27:5
**words** [5] - 18:9,
18:15, 34:21, 39:25,
45:10
**works** [2] - 13:4, 13:10
**worth** [1] - 58:7
**written** [4] - 7:16,
43:25, 49:6, 49:8
**wrote** [1] - 29:12

## Y

**years** [1] - 26:1
**yourself** [1] - 25:25

## Z

**Zoom** [1] - 4:2

## §

**§** [2] - 62:22, 63:4